1

2

3

4

5

6

7

8              UNITED STATES BANKRUPTCY COURT

9              FOR THE DISTRICT OF OREGON

10   IN RE                                          )
                                                    )        Bankruptcy Case
11   AMERIFLEX ENGINEERING LLC,                     )        No.  17-60837-tmr11
                                                    )
12                              Debtor.             )
     _____       )
                                                    )
13   AMERIFLEX ENGINEERING LLC,                     )        Adversary Proceeding
                                                    )        No. 17-6024-tmr
14                              Plaintiff,          )
                                                    )
15                  v.                              )
                                                    )
16   MICHAEL ZOLLER,                                )        MEMORANDUM OPINION
                                                    )
17                              Defendant.          )
     _____       )

18       Ameriflex Engineering LLC (Ameriflex) filed the instant adversary complaint seeking to subordinate

19   the unsecured claim of creditor Michael Zoller to all other claims and interests pursuant to 11 U.S.C.

20   § 510(b).[1]  The parties have each filed motions for summary judgment on the ultimate issue of application of

21   the statute.  They have supported their motions with concise statements of material facts, declarations

22   establishing material facts, and briefs in support of their positions.  Following oral argument on the motions,

23   the parties were given time to file supplemental memoranda addressing three new issues that arose during

24   oral argument.  Based on its review of the filed materials and its own legal research, the Court has

25   _____

26       [1] Unless otherwise indicated, all chapter, section, and rule references are to Title 11 of the United
     States Code and to the Federal Rules of Bankruptcy Procedures (FRBP).

MEMORANDUM OPINION-1

determined that entry of summary judgment is appropriate.  For the reasons outlined below, Ameriflex's

motion for summary judgment is partially granted, and Mr. Zoller's claim is subordinated below the other

non-priority, unsecured claims, but will remain senior in priority to the interest holders.

## Facts

The material facts are not disputed, as reflected in the consistency of the parties' statements and

supporting documents.  Ameriflex was formed as an Oregon limited liability company (LLC) in March 2008.

It originally had four members: RiverHawk Boats, Inc. (RiverHawk), which was owned by Mr. Zoller[2];

Pacific Diamond & Precious Metals, Inc. (PDPM); Cajon, Inc. (Cajon); and AERS, Inc. (AERS).  On the

date of formation, each member acquired a one-fourth interest in Ameriflex.  In December 2008, AERS

released its interest in Ameriflex and the interests of each of the three remaining members increased to one-

third.  Between March 2009 and January 2011, the three members amended the operating agreement several

times, settling on the agreement dated January 15, 2011, and signed on January 17, 2011, (Operating

Agreement).

On March 31, 2014, PDPM and Cajon voted to expel RiverHawk and Mr. Zoller from Ameriflex.

After Mr. Zoller invoked the buy-back process established in the Operating Agreement for purchasing a

dissociated member's interest, Ameriflex notified Mr. Zoller in May 2014 that it wished to purchase his

interest.  When the parties could not agree on a purchase price, Mr. Zoller initiated arbitration, as required by

the Operating Agreement for resolution of disputes arising out of or in connection with the agreement.  On

February 15, 2017, a three-member arbitration panel entered an award (Award), valuing Mr. Zoller's one-

third interest in Ameriflex at $1,500,000.  The Award concluded the arbitration and directed the parties to the

relevant provisions of the Operating Agreement to effectuate Ameriflex's purchase of Mr. Zoller's interest

---

[2] Mr. Zoller's ownership of RiverHawk and its assets have been the subject of unrelated litigation. The parties disagree as to how to characterize the contribution of assets and debts of RiverHawk and, by extension, Mr. Zoller at the time Ameriflex was formed.  However, they agree that, for present purposes, a reference to RiverHawk is a reference to Mr. Zoller, and that RiverHawk's claim against Ameriflex is properly asserted by Mr. Zoller.

MEMORANDUM OPINION-2

for the amount stated.  On February 28, 2017, he petitioned Jackson County Circuit Court to confirm the Award as a judgment of the court.[3]  He amended the petition on March 2, 2017.[4]  On March 22, 2017, before the circuit court could confirm the Award as a judgment, Ameriflex filed its bankruptcy petition.  Shortly thereafter, it filed this adversary proceeding.

## Issues

The threshold issue is whether Mr. Zoller's claim, based on an unconfirmed arbitration award, constitutes a claim for damages arising from the purchase or sale of a security of the debtor for purposes of subordination under § 510(b).  If it does, to what priority level does the "senior to or equal" language of § 510(b) require for subordination of Mr. Zoller's claim?

## Discussion

### FRCP 56(a) Standards

The parties' motions are brought under Fed. R. Civ. P. 56(a) (made applicable by FRBP 7056) on the assertion that there is no genuine issue as to any material fact and each are entitled to judgment as a matter of law.  The substantive law governing a claim or defense determines whether a fact is material.  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Material facts are such facts as may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  Inferences must be drawn in the light most favorable to the nonmoving party.  *T.W. Elec. Service, Inc.*, 809 F.2d at 631.

// // //

// // //

---

[3] Although this fact is not asserted or established in the adversary proceeding, the Court takes judicial notice of the Petition to Confirm an Arbitration Award as a Judgment of the Court, filed in Jackson County Circuit Court, Case No. 17CV08976, on February 28, 2017.  At the August 24, 2017, hearing on Mr. Zoller's Motion to Dismiss the main bankruptcy case, a copy of the Petition was entered into evidence without objection as Debtor's Exhibit C.

[4] The Court takes judicial notice of this fact for the reasons outlined in note 3. At the August 24, 2017, hearing on Mr. Zoller's Motion to Dismiss the main bankruptcy case, a copy of the Amended Petition was entered into evidence without objection as Debtor's Exhibit D.

MEMORANDUM OPINION-3

Because Mr. Zoller bases his proof of claim (Claim #8-1; filed 5/11/17) on the Award, the Court must determine the status of the Award before analyzing the applicability of § 510(b). Oregon law provides that, after a party files a petition to the circuit court for an order confirming an arbitration award, the court shall issue a confirming order unless, within 20 days, the other party requests that the arbitrator modify or correct the award or requests that the court vacate, modify, or correct the award. ORS § 36.700(1). Mr. Zoller filed his Amended Petition with the circuit court on March 2, 2017. Under Oregon law, Ameriflex had until March 27, 2017,[5] in which to request that the arbitrator modify or correct the award or, alternatively, petition the court to vacate, modify, or correct the award. All action involving the matter was complete except for the passage of the 20 days. When Ameriflex filed its bankruptcy petition on March 22, 2017, it invoked Title 11 and, by operation of § 108(b), acquired 60 days from that date in which to seek to modify or vacate the Award under Oregon law. It did not do so within the time allotted.

Ameriflex argues that § 108(c) is the applicable subsection and that it provides Ameriflex until 30 days after termination of the automatic stay under § 362 in which to contest or seek modification of the Award. Notwithstanding the fact that the Award specifies an amount that Ameriflex must pay to Mr. Zoller to purchase his interest, the Court does not agree that the arbitration or the resulting Award constitutes an "action . . . against the debtor," as the phrase is used in § 108(c). PDPM and Cajon voted to expel Mr. Zoller from Ameriflex, thereby triggering a series of procedures and deadlines in the Operating Agreement designed to effectuate Ameriflex's (or one of its remaining members') purchase of his interest. When the parties could not agree on a value or purchase price, the Operating Agreement mandated that the parties seek arbitration. It is irrelevant that Mr. Zoller, rather than Ameriflex, petitioned the panel to resolve the dispute. Either could have done so, with presumably identical results. The purpose was to bring to conclusion a course of action set in motion by the other members of the LLC, not Mr. Zoller. The fact that the panel

---

[5] This date assumes that the Amended Petition was served by mail, which, pursuant to Or. R. Civ. P. 10, adds 3 days to the prescribed period and extends the deadline due to falling on a weekend. Otherwise, the 20-day deadline would expire on March 22, 2017.

MEMORANDUM OPINION-4

determined the value of Mr. Zoller's interest to be much higher than Ameriflex anticipated or thought appropriate does not render the arbitration or the Award an "action against Ameriflex." Indeed, barring the unlikely outcome that the panel would determine a $0 value for Mr. Zoller's interest, presumably *any* award would have designated Mr. Zoller as "Award Creditor" and Ameriflex as "Award Debtor," because its purpose was to specify how much Ameriflex must pay to buy out Mr. Zoller. And, as discussed more thoroughly below, the Award simply fixed the dollar amount necessary for the parties to complete their obligations under the Operating Agreement, nothing more.

That said, supposing for a moment that the arbitration was an action against Ameriflex, the action was completed upon entry of the Award on February 15, 2017. The Ninth Circuit has ruled that "ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of a [judicial] proceeding" within the meaning of § 362(a), even if undertaken in a state judicial proceeding subsequent to a bankruptcy filing. *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1080 (9th Cir. 2000). Oregon law requires the circuit court to confirm an arbitration award upon the petition of a party absent a request by another party to modify or vacate the award. ORS § 36.700(1). No deliberation, discretion, or judicial involvement is necessary, rendering the act of confirmation of the award ministerial in nature. As such, it falls outside the ambit of § 362. The running of the 20 days seems comparable to the running of a redemption right following a foreclosure sale. *See In re Pineda - Pineda*, 510 B.R. 648, 653 (Bankr. D. Or. 2014) (Section 108(b) operates to extend the redemption period.).

The petition to confirm the Award and Mr. Zoller's right to seek entry of a confirming order was not stayed under § 362 by the bankruptcy filing. It was simply delayed 60 days by operation of § 108(b), which extended the time for debtor to file whatever pleading, demand, or notice it deemed appropriate under applicable nonbankruptcy law. That period has lapsed and Mr. Zoller is at liberty to request an order for relief from stay to allow the circuit court to enter an order confirming the Award as a judgment without challenge from Ameriflex. Counsel for Ameriflex represented that Ameriflex has no intention of objecting to Mr. Zoller's proof of claim or of otherwise contesting the Award. Indeed, where the mandatory

MEMORANDUM OPINION-5

arbitration provision of the Operating Agreement specifies that "[t]he parties further agree that the arbitrator's decision shall be final and nonappealable," neither can dispute that the Award is a final decision on the merits of the underlying issues. Therefore, the Award is final and nonappealable, notwithstanding the fact that it is unconfirmed.

The arbitration panel determined that the value of Mr. Zoller's one-third interest is $1.5 million and awarded him an additional $11,245.69 for costs to employ the arbitration panel. It specified a simple interest rate of 9% for both components of the Award. Mr. Zoller's general, unsecured proof of claim for $1,524,201.65 reflects those amounts and appears to account for the accrual of interest between the Award date and the petition-filing date. Absent an objection, the claim is deemed allowed pursuant to § 502(a). For the above reasons, the Court concludes that the Award and corresponding proof of claim form a sufficient basis for determining that Mr. Zoller has a liquidated, undisputed, non-priority, unsecured claim against Ameriflex for $1,524,201.65.

Section 510(b)

The subordination analysis begins with § 510(b), which provides in pertinent part:

> . . . a claim . . . for damages arising from the purchase or sale of . . . a security [of the debtor] . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

Section 510(b).[6]

*A Security of the Debtor*

The parties disagree about whether Mr. Zoller's membership interest in Ameriflex was a "security," as defined in the Bankruptcy Code, which seems like a material fact that would ordinarily preclude summary

---

[6] The statute lists three types of claims subject to subordination, including "a claim arising from rescission or a purchase or sale of a security of the debtor. . . ." Although Mr. Zoller discusses this type of claim in his pleadings, because Ameriflex does not advance it as a basis for subordinating Mr. Zoller's claim, the Court will not discuss that portion of the statute, which appears to be inapplicable in any event.

MEMORANDUM OPINION-6

1  judgment. However, Ninth Circuit caselaw sufficiently defines security for the Court to make a ruling in this

2  instance, even drawing inferences in a light most favorable to Mr. Zoller.

3  Defining "security," § 101(49) is the starting point of our inquiry. It lists fifteen types of assets

4  that are considered securities under the Code, including "transferable shares," "interest of a limited partner in

5  a limited partnership," and, as a residual category, any "other claim or interest commonly known as

6  'security,'" § 101(49)(viii), (xiii), (xiv). Because § 101(49) was enacted before the rise and widespread use

7  of the limited liability company as a business structure, it does not account for membership interests in this

8  type of entity. To fill the gap, the Ninth Circuit has stated that "an LLC interest either qualifies as a

9  transferable share or falls within the broad residual category." *In re Tristar Esperanza Properties, LLC*, 782

10  F.3d 492, 495 (9th Cir. 2015) (quoting *In re SeaQuest Diving, LP*, 579 F.3d 411, 418 (5th Cir. 2009)). *See*

11  *also In re Del Biaggio*, 834 F.3d 1003, 1008 n.2 (9th Cir. 2016) ("Interests in limited liability companies are

12  'securities' under the Bankruptcy Code."). The debtor in *Tristar Esperanza* was an LLC. 782 F.3d at 494.

13  Because Tristar and Jane O'Donnell, the creditor whose claim Tristar sought to subordinate, agreed that Ms.

14  O'Donnell's membership interest was a "security of the debtor," the court was not asked to determine

15  whether interests in LLCs fit within the § 101(49) definition. *Tristar Esperanza*, 782 F.3d at 495.

16  Nevertheless, the court affirmatively concurred with the parties' agreement, stating "[t]hey are correct." *Id*.

17  With this degree of specificity from the Ninth Circuit, even when viewed in the light most favorable to Mr.

18  Zoller, there is no meaningful factual dispute about whether Mr. Zoller's interest in Ameriflex is a security

19  under §§ 101(49) and 510(b). When Mr. Zoller purchased his membership interest in Ameriflex, he acquired

20  a security as defined in the Bankruptcy Code.

21  Mr. Zoller argues, first, that his claim does not meet the definition of a "security" and, second, that it

22  does not constitute one of the three types of claims that require subordination under § 510(b). Focusing on

23  the § 101(49) definition and out-of-circuit authority, Mr. Zoller argues that the Court must find that it is

24  "commonly known" in this District or in the Southern Oregon area that LLC membership interests are

25  securities. As discussed above, however, the Ninth Circuit has already ruled to the contrary, making an LLC

26  member interest a security either as a "transferable share" or within the broad general category of "other

MEMORANDUM OPINION-7

1    claim or interest." *See Tristar Esperanza*, 782 F.3d at 495; and *Del Biaggio*, 834 F.3d at 1008 n.2.  We do

2    not need to look beyond the Ninth Circuit rulings.

3        Additionally, Mr. Zoller's attempt to compare his LLC interest to common stock, which is treated

4    differently under § 510(b), does not need to be addressed due to the level of subordination treatment

5    provided below.  That said, the comparison fails in this context because the statute specifies an exception

6    only "if such security is common stock."  Nothing in the statute allows for an interpretation other than what

7    the statute specifies–an exception for common stock.

8    *Claim for Damages Arising from Purchase or Sale*

9        In the context of § 510(b), the term "damages" has broader application than compensation for an

10   injury or some other actionable wrongdoing.  *Tristar Esperanza*, 782 F.3d at 495.  It "sweeps broadly" and

11   "extends beyond . . . securities fraud claims." *Id*.  It also includes "ordinary breach of contract claims so long

12   as there is a sufficient nexus between the claim and the purchase [or sale] of securities." *Id*.

13       In analyzing whether Mr. Zoller's claim qualifies as a "claim for damages," the facts of *Tristar*

14   *Esperanza* are again helpful.  In that case, Ms. O'Donnell purchased a 15% membership interest in Tristar

15   for $100,000.  *Id*. at 494.  Three years later, she exercised her right to withdraw from the LLC, which elected

16   to purchase her interest pursuant to the valuation procedure of the operating agreement. *Id*.  The parties were

17   unable to agree on a value and Ms. O'Donnell initiated arbitration. *Id*.  The arbitrator ruled in her favor and

18   issued a "net award of damages" totaling $410,472.68, which Tristar failed to pay. *Id*.  Within four months of

19   the final award, Ms. O'Donnell obtained a state-court judgment against Tristar for $415,937.68. *Id*.  After it

20   filed bankruptcy, Tristar filed an adversary proceeding to subordinate her claim under § 510(b) and (c). *Id*.

21   Ms. O'Donnell argued that her claim was not one for "damages" because she did not seek a damages award

22   from the arbitrator, but simply a determination of the fair market value of her interest. *Id*. at 495.  Rejecting

23   that argument, the court pointed to the arbitrator's "award of damages" and reasoned that "O'Donnell's basic

24   claim is that Tristar failed to pay her the amount she was due under Tristar's operating agreement for the

25   purchase of her membership interest.  This is a claim for damages for Tristar's breach of contract." *Id*.

26   // // //

MEMORANDUM OPINION-8

1    Moreover, it noted, "[Ms.] O'Donnell herself never treated the arbitrator's award as a mere appraisal. . . .

2    She recorded the judgment and sought to attach the rents from Tristar's property to satisfy the judgment." *Id*.

3    The facts in Tristar are similar to those in this case, with a few notable distinctions. After Mr.

4    Zoller's dissociation from Ameriflex and its subsequent offer to purchase his interest, the parties could not

5    agree on a price. Pursuant to the Operating Agreement, Mr. Zoller brought the matter before the arbitration

6    panel, whose purpose was to determine a value of his interest. The resulting Award fixed a value of $1.5

7    million, which it designated "the purchase price," and then directed the parties back to Section 7.6 of the

8    Operating Agreement to effectuate the sale of Mr. Zoller's interest. The panel's classification of the award

9    amount as "the purchase price" rather than something similar to the "award for damages" in *Tristar*

10   *Esperanza*, along with its direction to the parties to simply complete the sale pursuant to the Operating

11   Agreement, highlight the panel's intent that the Award function in a more limited way than the arbitration

12   award in *Tristar Esperanza*. The "Award" section of the Award provides, in pertinent part:

13       1.    This arbitration panel concludes that the value of the 1/3 interest of Mike Zoller in
               Ameriflex Engineering LLC, *pursuant to the terms of the Operating agreement in*
14             *effect* (Ex 104) is $1.5 million. [Portion pertaining to offsets omitted.]
         2.    The stated amount of the ownership interest of Mike Zoller will be paid by
15             Ameriflex Engineering LLC, *according to all of the terms and conditions of*
               *section 7.6 of said operating agreemen*t.
16       3,    *Pursuant to the terms of the operating agreement (section 7.6.4)* the purchase
               "must be closed within 30 days" following the date the purchase price is
17             determined. The date of this Final Award will be considered the date the
               purchase price is determined.
18

19   (emphasis added.) The Award was issued on February 15, 2017. The panel did not make a finding that either

20   party had breached the Operating Agreement, nor did it ever employ the term "damages" in outlining the

21   Award. As stated, the panel intended that the parties use the Award to complete their respective obligations

22   under the Operating Agreement for the purchase of Mr. Zoller's interest. Consistent with the Operating

23   Agreement, the panel gave the parties 30 days – or until March 17, 2017 – to do so. When Ameriflex filed

24   its bankruptcy petition on March 22, 2017, the sale was not complete. While the parties might disagree

25   about who is at fault for the failure to comply with the 30-day sale deadline, the Court need not make that

26   determination to resolve the subordination issue. The fact remains that the Operating Agreement was

MEMORANDUM OPINION-9

breached when the parties failed to timely complete the sale. Even though the Award itself is not an award

of damages for breach of contract, as a final and non-appealable determination of what should have been

paid to Mr. Zoller for his interest, the Award became the functional equivalent of a damages award when

Ameriflex failed to purchase Mr. Zoller's interest within the required time. Where the term "damages" in §

510(b) has very broad application and includes claims for breach of contract involving a purchase or sale of a

security, the Court finds that Mr. Zoller's claim is a claim for damages as the term is used in § 510(b).

This conclusion is further supported by the caselaw defining "arising from" under § 510(b). "The

critical question . . . [is] whether the claim *arises from* the purchase or sale of a security." *Tristar Esperanza,*

782 F.3d at 497 (emphasis in original). "Section 510(b) does not ask what the claim *is*, but what it *arises*

*from*." *Id*. (emphasis in original). "Arises from" is defined in a similarly broad fashion:

> The word "arising" connotes, in ordinary usage, something broader than causation . . .
> "Arising out of" are words of much broader significance than "caused by." They are
> ordinarily understood to mean "originating from," "having its origin in," "growing out of" or
> "flowing from" or in short, "incident to, or having connection with . . . ,"

*Id*. at 497 (citing *Underwriters at Lloyd's of London v. Cordova Airlines, Inc*., 283 F.2d 659, 664 (9th Cir.

1960)). Although many subordination cases involve claims of fraud, the "arises from" phrase is broad

enough to encompasses claims for breach of contract. *In re American Wagering, Inc*., 493 F.3d 1067, 1072

(9th Cir. 2007). *See also In re Telegroup, Inc*., 281 F.3d 133, 142 (3d Cir. 2002) (in subordinating

shareholders' claims for the debtor-corporation's alleged breach of the stock purchase agreement, the court

stated: "[m]ore important than the timing of the actionable conduct, from a policy standpoint, is the fact that

the claims in this case seek to recover a portion of the claimants' equity investment."); *In re Betacom of*

*Phoenix, Inc*., 204 F.3d 823, 829 (9th Cir. 2001) (claim for damages for breach of a merger agreement was

subject to mandatory subordination).

Mr. Zoller argues that applicability of the "damages arising from the purchase or sale" language is

limited to two kinds of claims: an investment loss claim or a 10b-5 securities fraud claim. That is simply not

the law in the Ninth Circuit. As discussed above, Mr. Zoller's claim is one for damages from breach of

contract. And, more to the point, it arises from a determination of what he is entitled to be paid for the sale

MEMORANDUM OPINION-10

of his security to Ameriflex.  As such, his claim is subject to the mandatory subordination requirements of § 510(b).

*Level of Subordination*

The statute directs that a claim subject to § 510(b) "shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security. . . ."  "Considered as a whole, § 510(b) 'effectuates one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets.' This principle is broadly known as the absolute priority rule." *In re Del Biaggio*, 834 F.3d 1003, 1008 (9th Cir. 2016) (citing *In re American Wagering, Inc.*, 493 F.3d at 1071).  In application, it requires subordination below claims of the same *type* (generally, secured debt, unsecured debt, common stock, etc.) that are "senior to or equal [to]" the claim at issue. *Del Biaggio*, 834 F.3d at 1014-15 (citing *In re Lehman Bros. Inc.*, 808 F.3d 942, 946 (2nd Cir. 2015)) (emphasis added).  The Court looks to the Operating Agreement, Bankruptcy law, and Oregon law to determine priority.

Sections 7.3 and 7.4 of the Operating Agreement specify that a member "dissociates" from the company if expelled, with the date of expulsion being the "dissociation date." The parties agree that Mr. Zoller was expelled from Ameriflex on March 31, 2014, upon the vote of the other two members. Ameriflex concedes that, after Mr. Zoller was expelled, he no longer had the right to participate in the profits of the Debtor.  Upon expulsion, his rights regarding his interest in Ameriflex were limited to those outlined in the buy-back provisions of the Operating Agreement.  The Operating Agreement states that any appraisals "must determine the fair market value of the interest on the dissociation date," further emphasizing that his right to payment for his interest does not include post-dissociation profits or increases in value.  The $1.5 million appraisal upon which the Award is based determined the value of his interest on the date he was expelled.  Although his right to payment arose from his equity interest in Ameriflex, his interest was effectively converted to an unsecured claim upon his expulsion and the arbitration panel's determination of the purchase price.  His rights and his claim thus differ from an owner that retains equity or attempts to convert the equity into a claim in order to evaluate it in priority.  For these reasons, the Court concludes that

MEMORANDUM OPINION-11

1 Mr. Zoller does not have an ownership interest in Ameriflex. He has a general, unsecured claim. Applying

2 the mandate of § 510(b) to subordinate his claim to all those that are "senior to or equal," his claim must be

3 subordinated below the other non-priority, unsecured creditors.

4     Ameriflex argues that Mr. Zoller's claim should be further subordinated below the interests of the

5 remaining members of Ameriflex. It relies on *In re USA Commercial Mortg. Co.*, and the Bankruptcy

6 Appellate Panel's determination that the proofs of claim filed by the Appellants in that case must be

7 subordinated below all membership interest holders. 377 B.R. 608, 618 (9th Cir. BAP 2007). The critical

8 point, however, that distinguishes *USA Commercial Mortg. Co.* from this case is that, in the former, the

9 individuals asserting claims against the debtor were still members of the debtor on the date of filing. *Id*. at

10 611. They filed proofs of interest based on their equity ownership and also proofs of claim based on their

11 claims against the debtor for breach of contract and fraud relating to their purchase of the membership

12 interests. *Id*. The court took care to recognize that the proofs of claim and proofs of interest were not

13 duplicative nor filed inappropriately: "[a] proof of interest is based on mere equity ownership; a proof of

14 claim is based on a right to payment. . . . It is clear that Appellants are entitled to assert both claims and

15 interests, even though they cannot be paid on both." *Id*. at 614. Appellants conceded that any amounts

16 "receive[d] on their proofs of claim would serve to reduce the amount of their proof of interest." *Id*. at 616.

17 In determining that the proofs of claim should be subordinated below equity, the ruling emphasized

18 application of the plain language of the statute and the purpose it serves: "*shareholder* claimants will not be

19 allowed to elevate their *interests* from the level of equity to general claims." *Id*. at 617-18 (emphasis added).

20 The court did not subordinate the proofs of interest.

21     Mr. Zoller was not an equity interest holder on the date Ameriflex filed its bankruptcy. In fact, he

22 was expelled from Ameriflex nearly three years prior to the filing. That agreed fact supports a departure

23 from the approach taken in *USA Commercial Mortg. Co.* He has not filed a proof of interest; indeed, it

24 would be inappropriate for him to do so. Applying the language of the statute, the Court will subordinate

25 what he holds – a claim – to all "claims or interests that are senior to or equal" his claim. Equity interests are

26 junior in priority to unsecured claims. As such, § 510(b) does not require that Mr. Zoller's claim be

MEMORANDUM OPINION-12

subordinated below the interests of Ameriflex's members.  To subordinate his claim below equity, as

Ameriflex requests, would contravene the language and purpose of the statute.  It would effectively mean the

elevation of the interests of Ameriflex's current members above the level of a creditor's unsecured claim.  As

noted by the Ninth Circuit, "[s]hareholders expect to take more risk than creditors in return for the right to

participate in firm profits.  The creditor only expects repayment of a fixed debt." *Betacom of Phoenix*, 204

F.3d at 829.  Where Mr. Zoller's claim arose from his interest in Ameriflex, it is appropriate to subordinate

his claim below the other unsecured claims because he assumed the risk of ownership in return for the right

to share in the profits.  The remaining Ameriflex members, however, continue to enjoy that right and cannot

shift the risk of ownership to a former member that they chose to expel.  His interest has been liquidated and

the resulting claim must be paid before they retain their interests.

 The Court's unwillingness to subordinate Mr. Zoller's claim below equity pursuant to § 510(b)[7] is

consistent with Oregon law regarding priority and LLC membership interests.  ORS § 63.265(1) specifies

that a member ceases to be a member of the LLC upon expulsion (dissociation).  If the expelled member is

entitled to a distribution,[8] he or she "has the status of and is entitled to all remedies available to a creditor."

ORS § 63.225.  In other words, Oregon law provides that when an LLC becomes indebted to an expelled

member with respect to that member's terminated interest, the expelled member acquires the status of a

creditor.  The creditor-member's claim against the LLC is at parity with the LLC's other general, unsecured

creditors.  ORS § 63.229(4)(a), (5).  Upon the winding up of an LLC, assets must be distributed in the

following order: first, to creditors, including former members who are creditors; second, to members and

former members in satisfaction of the LLC's obligations under ORS §§ 63.200 or 63.249 (both inapplicable

in this case); and third, to members of the LLC.  ORS § 63.625.

---

 [7] At oral argument on the summary judgment motions, the Court questioned whether, in light of the
"notwithstanding subsections (a) and (b) of this section" language in § 510(c), it must consider equitable
subordination as part of the § 510(b) analysis and invited further briefing on that issue.  The Court holds that
equitable subordination under § 510(c) is not required as part of the § 510(b) subordination and, conversely,
that § 510(b) subordination does not prevent later equitable subordination.
 [8] The term "distribution" includes indebtedness by an LLC to a member in respect of that member's
interest.  ORS § 63.001(6).

MEMORANDUM OPINION-13

Although the statutes governing wind up and dissolution of an LLC are distinct and necessarily different from those applicable to reorganization under Title 11, LLCs are creatures of state law and the hierarchy reflected in ORS §§ 63.229(5) and 63.625 assist the Court in prioritizing creditors' claims and LLC members' interests in relation to one another. Section 510(b) is unique to bankruptcy, but its purposes are consistent with Oregon's hierarchy for marshalling limited assets between interested parties.

**Conclusion**

Ameriflex's summary judgment motion for declaratory judgment regarding mandatory subordination under § 510(b) will be granted in a manner consistent with this opinion. Mr. Zoller's motion for summary judgment is denied. The Court will prepare the appropriate order and judgment. Any proposed Chapter 11 Plan must reflect the hierarchy outlined herein.

This opinion constitutes the Court's findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated.

THOMAS M. RENN
Bankruptcy Judge

MEMORANDUM OPINION-14