Below is an order of the court.

THOMAS M. RENN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

In re

Ameriflex Engineering LLC,

Debtor.

Case No. 17-60837-tmr11

**ORDER CONFIRMING THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 AS MODIFIED**

Michael Zoller ("Zoller") as creditor in this case, filed a Third Amended Plan of Reorganization Dated November 13, 2018 as modified at the confirmation hearing and set forth below (the "Creditor Plan") which came on for hearing on December 12, 13, & 14, 2018. The Court having heard and considered the evidence introduced at the hearing, the arguments of counsel, and the records in this case, and having orally entered its findings of fact and conclusions of law, Now, Therefore,

IT HEREBY FINDS AND CONCLUDES that:

A. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Creditor Plan is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Page 1 of 11** ORDER CONFIRMING THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 AS MODIFIED

B. Notice of the confirmation hearing was provided to creditors and other parties in interest pursuant to Bankruptcy Rules 2002, 3017 and 3020, and such notice was reasonable, adequate, and sufficient in all respects.

C. The disclosure statement and ballots were transmitted and served in compliance with the Bankruptcy Code and the Bankruptcy Rules. Votes for acceptance of the Creditor Plan were solicited in good faith and in compliance with Sections 1125, 1126 and 1127 of the Bankruptcy Code and Rules 3017 and 3018 of the Bankruptcy Rules.

D. The Creditor Plan is modified as follows:

1. Article 4.9 of the Creditor Plan is stricken and replaced with the following:

> "Class 9 (General) Unsecured Claims). Class 9 is unimpaired. The holder of an Allowed Class 9 Claim will be paid the full amount of their Allowed General Unsecured Claim on the Effective Date or on the date the Class 9 Claim is Allowed.

2. Article 7.1 of the Creditor Plan is amended to add the following sentence at the end of the paragraph:

> BlueEarth shall have up to 60 days after the Effective Date to determine if the real estate lease with CamCo, LLC shall be assumed and assigned, or rejected.

3. Section 3(a) of the Agreement for Sale and Purchase of the Business Assets (Exhibit A to the Creditor's Plan) is amended to state:

> Buyer will pay the administrative expense claims on the terms set forth in Article 2.1 of the Creditor's Plan.

4. Section 3(b) of the Agreement for Sale and Purchase of the Business Assets (Exhibit A to the Creditor Plan) is amended to provide:

> Buyer will assume the secured claims and pay them in accordance with the Creditor's Plan as approved by the Confirmation Order.

5.     Section 3(c) of the Agreement for Sale and Purchase of the Business

Assets (Exhibit A to the Creditor Plan) is amended to provide:

> Buyer will pay the unsecured creditors in cash in full upon the Effective
> Date.

6.     Section 3(d) of the Agreement for Sale and Purchase of the Business

Assets (Exhibit A to the Creditor's Plan) is amended to add the following at the end:

> Buyer shall have up to 60 days after the Effective Date to
> determine if the real estate lease with CamCo, LLC shall be
> assumed and assigned, or rejected.

7.     Section 3(e) of the Agreement for Sale and Purchase of the Business

Assets (Exhibit A to the Creditor Plan) is amended to provide:

> Buyer will pay the claims for rejection of Contracts not otherwise
> assumed in full when they become Allowed Claims.

8.     Section 12 of the Agreement for Sale and Purchase of the Business Assets

(Exhibit A to the Creditor's Plan) is amended as follows:

> Delete all language after the third sentence.

E.     The Creditor Plan complies with the applicable provisions of the

Bankruptcy Code and satisfies Section 1129(a)(1) of the Bankruptcy Code.  The Creditor Plan

complies with the classification and other requirements of 11 U.S.C. §§ 1122 and 1123.

F.     Zoller has complied with all applicable provisions of the Bankruptcy

Code, Bankruptcy Rules, and Local Bankruptcy Rules, and has satisfied Section 1129(a)(2) of

the Bankruptcy Code.

G.     The Creditor Plan was proposed in good faith and not by any means

forbidden by law, and Section 1129(a)(3) of the Bankruptcy Code has been satisfied.

H.     Any payments made or to be made by Debtor, Zoller, or by any person

issuing securities or acquiring property under the Creditor Plan, for services or costs and

expenses in, or in connection with, this Case, or in connection with the Creditor Plan and incident to this Case, have been approved by, or are subject to the approval of, the Court as reasonable. Therefore, Section 1129(a)(4) has been satisfied.

I.      Zoller has disclosed the identity and affiliation of any individuals proposed to serve, after confirmation of the Creditor Plan, as a director or officer of Debtor, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy. Zoller has disclosed the identity of any insider that will be employed or retained by Reorganized Debtor and the nature of any compensation for such insider. Therefore, Section 1129(a)(5) has been satisfied.

J.      Section 1129(a)(6) is not applicable because no governmental regulatory commission has jurisdiction over the rates of Debtor.

K.      Section 1129(a)(7) has been satisfied because each holder of a Claim in an impaired class of claims has accepted the Creditor Plan or will receive or retain under the Creditor Plan on account of such Claim property of a value as of the Effective Date of the Creditor Plan that is not less than the amount such holder would receive or retain if Debtor was liquidated under Chapter 7.

L.      To the extent all impaired classes of claims have not accepted the Creditor Plan, proponent requested that Creditor's Plan be confirmed pursuant to 11 U.S.C. Section 1120(b)(1). In accordance with 11 U.S.C. § 1129(b)(1), the Court finds that the applicable requirements of 11 U.S.C. § 1129(b)(1), other than 11 U.S.C. § 1129(a)(8), are met with respect to Creditor's Plan. Creditor's Plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that are impaired and have not accepted Creditor's Plan. Creditor's Plan satisfies 11 U.S.C. § 1129(b)(1).

M.      Section 1129(a)(9) is satisfied because the Creditor Plan provides for payment in full of all priority claims in a manner and within the timeframes specified by Section 1129(a)(9).

N.      At least one class of impaired claims has accepted the Creditor Plan and Section 1129(a)(10) is satisfied.

O.      Section 1129(a)(11) is satisfied because the evidence introduced in support of the Creditor Plan demonstrates that the Creditor Plan is feasible and that confirmation of the Creditor Plan is not likely to be followed by the liquidation (other than the liquidation of assets set out in the Creditor Plan) or the need for further financial reorganization of Debtor.

P.      Zoller shall be responsible for timely payment of U.S. Trustee fees incurred pursuant to 28 USC § 1930(a)(6) until the case is closed, converted or dismissed (including payment of any such fees incurred in any partial quarter during which this case is closed, converted or dismissed). After confirmation, the Reorganized Debtor shall file with the Court a monthly financial report for each month, or portion thereof, that the case remains open. The monthly financial report shall include a statement of all disbursements made during the course of the month, whether or not pursuant to the Plan.  All U.S. Trustee fees, including any such fees accrued in any partial quarter, shall be paid as a condition precedent prior to case closure.

Q.      Sections 1129(a)(13) – (16) do not apply to the Creditor Plan.

R.      The modification to the Creditor Plan made at the confirmation hearing and by this order do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.  Therefore, the Creditor Plan, as modified, is deemed to be accepted by all creditors who have previously accepted the Creditor Plan.  The modifications do not impact, alter, modify or adversely change the treatment of any other class of creditors under the Creditor Plan and, therefore, no additional notice, disclosure, balloting or hearings need to be held in connection therewith, and all provisions of Section 1125 are deemed to have been complied with.

Now, therefore,

IT IS HEREBY ORDERED that:

1.      The Creditor Plan is confirmed in all respects pursuant to 11 U.S.C. § 1129.  Capitalized terms used but not defined in this Order shall have the meaning assigned to them in the Creditor Plan.  A copy of the Creditor Plan as modified herein is attached hereto as **Exhibit A**.

2.      All objections have either been overruled or are addressed in this Order.

3.      Creditor's proposed modifications to the Creditor Plan do not adversely change the treatment of the claim of any Creditor or Interest Holder that has not accepted the modification.

4.      Except as otherwise expressly provided in the Creditor Plan or this Order, upon the Effective Date, all property and assets of the estate of Debtor shall revest in Reorganized Debtor or vest in BlueEarth Marine, LLC ("BlueEarth"), in each case as provided in the Creditor Plan, free and clear of all Claims, liens, encumbrances, charges, and other interests arising on or before the Effective Date.

5.      All actions contemplated by the Creditor Plan are authorized and approved in all respects (subject to the provisions of the Creditor Plan), and Reorganized Debtor, and its agents and officers, are hereby authorized and directed to take all actions, and enter into and execute all documents, reasonably necessary or appropriate to effectuate the Creditor Plan and to consummate the transactions contemplated by the Creditor Plan.

6.      To the extent provided in Section 1141 of the Bankruptcy Code, and except as otherwise specifically provided in the Creditor Plan or this Order, the distributions and rights provided in the Creditor Plan and this Order shall be in complete satisfaction, discharge, and release of all liens, security interests, encumbrances and Claims, whether known or unknown, against Debtor that arose prior to the Effective Date.

7.     Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Creditor Plan, or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by the Creditor Plan, or the revesting, transfer, or sale of any real property of Debtor or Reorganized Debtor pursuant to, in implementation of, or as contemplated by the Creditor Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

8.     Any administrative expense claim or application for professional fees or reimbursement of expenses shall be filed within 30 days from the Effective Date or be barred.

9.     This Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

10.     If there is any conflict between the Creditor Plan and this Order, the terms of this Order shall control.

11.     To the extent any provision designated herein as a finding of fact is more properly characterized to be a conclusion of law, it shall be so deemed, and vice versa.

12.     Attached hereto to the Creditor Plan as Exhibit 1 is the Agreement for Sale and Purchase of Business Assets ("Asset Purchase Agreement") setting forth the terms and conditions upon which BlueEarth shall acquire all Debtor's Assets, except those specifically retained by Reorganized Debtor ("Purchased Assets").

13.     The terms and conditions of the Asset Purchase Agreement, as may be amended, are approved in their entirety.  Debtor is directed by the Court (and if Debtor fails to do so, shall be sanctioned by the Court) to consummate, perform under, and implement the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and to take all further action as may be reasonably requested by BlueEarth for the purpose of assigning, transferring, granting, conveying, and conferring to BlueEarth, or reducing to BlueEarth's

possession, the Purchased Assets, and to otherwise perform and cause Debtor to perform all of its obligations under the Asset Purchase Agreement. To the extent Debtor fails to perform such actions, they shall, in any event, be deemed performed, and any such documents may be executed by Reorganized Debtor and deemed effective as if executed by Debtor.

14. The sale of the Purchased Assets shall be free and clear of all liens, claims, encumbrances, charges, and other interests, except as otherwise specifically provided in the Creditor Plan.

15. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. The Confirmation Order shall be effective as a determination that all liens shall be and are, without further action by any person or entity, released with respect to the Purchased Assets, except as otherwise provided in the Creditor Plan.

16. The assumed executory contracts and leases shall be deemed assumed by Debtor and assigned and transferred to, and remain in full force and effect for the benefit of, BlueEarth in accordance with their respective terms, notwithstanding any provision in any such agreement, including provisions of the type described in 11 U.S.C. § 365(b)(2), (e)(1) and (f)(1), which prohibits, restricts, or conditions such assignment or transfer. The non-debtor party to each assigned agreement shall be deemed to have consented to such assignment under 11 U.S.C. § 365(c)(1)(B), and BlueEarth shall enjoy all of the rights and benefits of each assigned agreement as of the Effective Date without the necessity of obtaining such non-debtor party's written consent to the assumption and assignment thereof.

17. Subject to the terms of the Creditor Plan with respect to cure amounts, all defaults and other obligations of Debtor under the assigned agreement arising or accruing prior to the Effective Date will be cured as of the Effective Date in accordance with the terms of the Asset Purchase Agreement such that BlueEarth shall have no liability or obligation with respect

to any default or obligation arising or accruing under any assigned agreement prior to the Effective Date. Each non-debtor party to an assigned agreement is forever barred, estopped, and permanently enjoined from asserting against BlueEarth or its property or affiliates, or any thereof, any breach or default arising prior to the Effective Date under any assigned agreement, any claim of lack of consent relating to the assignment thereof, or any counterclaim, defense, setoff, right of recoupment, or other matter arising prior to the Effective Date for such assigned agreement or with regard to the assumption and assignment thereof pursuant to the Asset Purchase Agreement or the Confirmation Order. Upon entry of this Order, BlueEarth shall be deemed in compliance with all terms and provisions of the assumed and assigned executory contracts and leases.

18. The consideration provided by BlueEarth for the Purchased Assets under the Asset Purchase Agreement and the Creditor Plan is fair and reasonable.

19. The transactions contemplated by the Asset Purchase Agreement are undertaken by BlueEarth in good faith and, accordingly, the reversal or modification on appeal of the authorization provided in the Confirmation Order to consummate the sale shall not affect the validity of the sale to BlueEarth. BlueEarth is a good faith purchaser of the Purchased Assets, and is entitled to all the benefits and protections afforded by 11 U.S.C. § 363(m) as made applicable through this Order.

20. The Asset Purchase Agreement and the transaction contemplated thereby may be specifically enforced against, and are binding upon, and are not subject to rejection or avoidance by any person or entity, including Debtor, Debtor's owners, Reorganized Debtor, or any Chapter 7 or Chapter 11 trustee subsequently appointed in the Bankruptcy Case.

21. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transfer of the Purchased Assets to BlueEarth.

22. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by BlueEarth in accordance with

the terms thereof consistent with the Creditor Plan without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on Debtor's estate.

23. Reorganized Debtor shall be comprised of the post-confirmation debtor, which will consist of all remaining Assets of Debtor not transferred to BlueEarth which are claims being retained by Reorganized Debtor as described in Schedule 1.1(k) to the Asset Purchase Agreement. Reorganized Debtor shall investigate and, where appropriate, assert objections to Claims and/or causes of action against Creditors, Claims, or Equity Security Holders. All pre-petition and post-petition causes of action held by the Debtor, and all Chapter 5 avoidance claims, shall be held by and may be pursued by Reorganized Debtor (or BlueEarth to the extent provided for in the Asset Purchase Agreement of the Creditor Plan). To the extent any recoveries are received, they will be used to offset or reduce the payment obligations of BlueEarth on those Claims as otherwise set forth in the Asset Purchase Agreement and this Creditor Plan. Any affirmative recovery beyond offset or claim reduction shall be retained by Reorganized Debtor.

24. Notwithstanding any provision to the contrary in the Creditor Plan, all rights, claims and causes of action, whether equitable or legal, of the Debtor, Debtor in Possession or Reorganized Debtor against all persons arising under Sections 544, 545, 547, 548 and 549 of the Bankruptcy Code, or under any other applicable non-bankruptcy law for the recovery of avoidable fraudulent conveyances or other transfers, are reserved for Reorganized Debtor and Zoller who may commence adversary proceedings against persons or entities to realize upon causes of action retained.

25. Upon entry of the Confirmation Order, all actions contemplated by the Creditor Plan shall be automatically authorized and approved by Debtor in all respects (subject to the provisions of the Creditor Plan), including, without limitation, the execution, delivery, and performance of all documents and agreements relating to the Creditor Plan, including the Asset

Purchase Agreement.  Upon entry of the Confirmation Order, the appropriate officers of Debtor

are authorized and directed to execute and deliver the agreements, documents, and instruments

contemplated by the Creditor Plan, including an executed Asset Purchase Agreement, in the

name of and on behalf of Debtor.  The failure to do so will not impact the validity at the sale, but

shall subject Debtor and its members to contempt of Court for failure to follow the Court's

Confirmation Order.

26.     This Order is a Final Order.  There shall be no stay of this Order under

Bankruptcy Rule 3020(e).

# # #

I certify that I have complied with the requirements of LBR 9021-1(a).  Counsel for the Debtor,
PDPM, SSR, LLC, Wells Fargo Commercial Distribution Finance, LLC, and the United States
Trustee have approved the form of the order.  No objections were received.

Presented by:

THE LAW OFFICES OF KEITH Y. BOYD

By */s/ Keith Y. Boyd*_____
    Keith Y. Boyd, OSB #760701
    724 S. Central Avenue, Suite 106
    Medford, OR  97501
    Telephone:  541-973-2422
    Facsimile: 541-973-2426
    Email:  keith@boydlegal.net
    *Of Attorneys for Creditor Michael Zoller*

Keith Y. Boyd, OSB No. 760701
Email: keith@boydlegal.net
The Law Offices of Keith Y. Boyd
724 S. Central Ave., Suite 106
Medford, OR 97501
Telephone: 541-973-2422
Facsimile: 541-973-2426

Of Attorneys for Michael Zoller

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 17-60837-tmr11 |
| Ameriflex Engineering, LLC, | THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 |
| Debtor. | |

## TABLE OF CONTENTS

ARTICLE 1   DEFINITIONS ...................................................................................3

ARTICLE 2   UNCLASSIFIED CLAIMS .................................................................10

ARTICLE 3   CLASSIFICATION ............................................................................11

ARTICLE 4   TREATMENT OF CLASSIFIED CLAIMS AND EQUITY SECURITY HOLDERS.........................................................................................13

ARTICLE 5   DISPUTED CLAIMS, OBJECTIONS TO CLAIMS, SETTLEMENT ..17

ARTICLE 6   MEANS FOR EXECUTION OF PLAN .................................................19

ARTICLE 7   EXECUTORY CONTRACTS AND UNEXPIRED LEASES................25

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 1 of 33**

ARTICLE 8    EFFECT OF CONFIRMATION .............................................................26

ARTICLE 9    RETENTION OF JURISDICTION..........................................................27

ARTICLE 10   ADMINISTRATIVE PROVISIONS ......................................................29

ARTICLE 11   MISCELLANEOUS PROVISIONS .......................................................30

Michael Zoller ("Zoller"), as Creditor in this Case, proposes the following Plan of Reorganization ("Plan") pursuant to Section 1129(a) of Title 11 of the United States Code with respect to Ameriflex Engineering, LLC ("Debtor"). This Plan provides the terms upon which Debtor will restructure its business and provide payments to its creditors. The Plan provides for the sale of all tangible and certain intangible assets to BlueEarth Marine, LLC ("BlueEarth") with the remaining intangible assets staying with Reorganized Debtor. All Allowed Secured and Unsecured Claims will be paid in full. All Level One Subordinated Claims will be paid in full. All Level Two Subordinated Claims and existing equity security holders will receive nothing under the Plan and the equity security holders' interests will be cancelled. Upon confirmation, new equity in Reorganized Debtor will be issued to Z Marine, LLC as the assignee of the Zoller Claim. Creditors will be paid from the sale to BlueEarth and its subsequent business operations as set forth in this Plan. The Disclosure Statement provided herewith will assist you in understanding this Plan and making an informed judgment concerning how to vote. However, the terms of this Plan, not what is contained in the Disclosure Statement, shall control and be binding on the parties if this Plan is confirmed by the bankruptcy court.

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 2 of 33**

## ARTICLE 1

### DEFINITIONS

Definitions of certain terms used in this Plan are set forth below. Other terms are defined in the text of this Plan or the text of the Disclosure Statement. In either case, when a defined term is used, the first letter of each word in the defined term is capitalized. Terms used and not defined in this Plan or the Disclosure Statement shall have the meanings given in the Bankruptcy Code or Bankruptcy Rules, or otherwise as the context requires. The meanings of all terms shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Captions and headings to articles, sections, and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code, shall have the meaning ascribed to such term in the Bankruptcy Code.

Article 1.1    "Administrative Expense Claim" means any Claim entitled to the priority afforded by Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

Article 1.2    "Allowed" means, with respect to any Claim, proof of which has been properly and timely Filed or, if no Proof of Claim was so Filed, which was or hereafter is listed on the Schedules as liquidated in amount and not disputed or contingent, and, in either case, a Claim as to which no objection to the allowance thereof, or motion to estimate for purposes of allowance, shall have been Filed on or before any applicable period of limitation that may be fixed by the Bankruptcy Code, the Bankruptcy Rules, and/or the Bankruptcy Court, or as

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 3 of 33**

to which any objection, or any motion to estimate for purposes of allowance, shall have been so Filed, to the extent allowed by a Final Order.

Article 1.3    "Allowed Secured Claim" means an Allowed Claim that is secured by a lien, security interest, or other charge against or interest in property in which Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as set forth in the Plan or, if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code or, if applicable, Section 1111(b) of the Bankruptcy Code) of the interest of the holder of such Claim in Debtor's interest in such property or to the extent of the amount subject to setoff, as the case may be.

Article 1.4    "Allowed Unsecured Claim" means an Allowed Claim that is not an Allowed Secured Claim or an Allowed Administrative Expense Claim.

Article 1.5    "Assets" means all of Debtor's legal and equitable interests in property and claims held or acquired at any point prior to the Effective Date.

Article 1.6    "Asset Purchase Agreement" means the Agreement for Sale and Purchase of Business Assets whereby BlueEarth Marine, LLC shall acquire all of Debtor's Assets, except those expressly retained by Reorganized Debtor as attached hereto as Exhibit 1, as may be amended or modified in or prior to the entry of the Confirmation Order.

Article 1.7    "Avoidance Actions" means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, in law (including, without limitation, Sections 506(c), 510, 542, 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code or equivalent provisions of applicable non-bankruptcy law), equity, or otherwise.

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 4 of 33**

Article 1.8 "Bankruptcy Case" means the case under Chapter 11 of the Bankruptcy Code with respect to Debtor, pending in the District of Oregon, administered as *In re Ameriflex Engineering, LLC,* Case No. 17-60837-tmr11.

Article 1.9 "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended from time to time, set forth in Sections 101 et seq. of Title 11 of the United States Code.

Article 1.10 "Bankruptcy Court" means the United States Bankruptcy Court for the District of Oregon, or such other court that exercises jurisdiction over the Bankruptcy Case or any proceeding therein, including the United States District Court for the District of Oregon, to the extent the reference to the Bankruptcy Court or any proceeding therein is withdrawn.

Article 1.11 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075, Title 28, of the United States Code, and the local rules and standing orders of the Bankruptcy Court.

Article 1.12 "Business Day" means a day other than a Saturday, Sunday, any legal holiday as defined in Bankruptcy Rule 9006(a), or any other day on which banks in Portland, Oregon are authorized or required by law to be closed.

Article 1.13 "BlueEarth" means BlueEarth Marine, LLC, or one or more of its assigns, the proposed purchaser of Debtor's Assets under the Asset Purchase Agreement attached hereto.

Article 1.14 "Camco" means Camco, LLC.

Article 1.15 "Cash" means lawful currency of the United States of America and equivalents, including, without limitation, checks, wire transfers, and drafts.

Article 1.16 "Claim" means (a) any right to payment from Debtor arising before the Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated,

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 5 of 33**

fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or

unsecured; or (b) any right to an equitable remedy against Debtor arising before the Effective

Date for breach of performance if such breach gives rise to a right of payment from Debtor,

whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent,

matured, unmatured, disputed, undisputed, secured, or unsecured.

Article 1.17    "Class" means one of the classes of Claims defined in Article 3

hereof.

Article 1.18    "Collateral" means any property in which Debtor has an interest

that is subject to a lien or security interest securing the payment of an Allowed Secured Claim.

Article 1.19    "Common Units" means common LLC equity units in Reorganized

Debtor issued under this Plan and as more fully described in an Amended and Restated Limited

Liability Company Agreement to be prepared upon Confirmation.

Article 1.20    "Confirmation Date" means the date on which the Confirmation

Order is entered on the docket by the Clerk of the Bankruptcy Court.

Article 1.21    "Confirmation Order" means the order of the Bankruptcy Court

confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

Article 1.22    "Creditor" means any entity holding a Claim against Debtor.

Article 1.23    "Debtor" means Ameriflex Engineering, LLC as Debtor and

debtor-in-possession in the Bankruptcy Case.

Article 1.24    "Deficiency Claim" means the portion of a Secured Claim that is

unsecured, which will be treated as an Unsecured Claim.

Article 1.25    "Disclosure Statement" means Debtor's Disclosure Statement as

amended, modified, restated, or supplemented from time to time, pertaining to the Plan.

Article 1.26    "Disputed Claim" means a Claim with respect to which a Proof of Claim has been timely Filed or deemed timely Filed under applicable law, and as to which an objection, timely Filed, has not been withdrawn on or before the Effective Date or any date fixed for filing such objections by order of the Bankruptcy Court, and has not been denied by a Final Order.

Article 1.27    "Effective Date" means the first day after entry of the Confirmation Order and after which the conditions to effectiveness set forth in Section 6.9 have been waived or satisfied.

Article 1.28    "Entity" shall have the meaning ascribed to it by Section 101(15) of the Bankruptcy Code.

Article 1.29    "Equity Security" shall have the meaning ascribed to it in Section 101(16) of the Bankruptcy Code with respect to any Equity Security Holder of Debtor.

Article 1.30    "Equity Security Holder" means a holder of an Equity Security of Debtor prior to the Confirmation Date.

Article 1.31    "Filed" means filed with the Bankruptcy Court in the Bankruptcy Case.

Article 1.32    "Final Order" means an order or judgment entered on the docket by the Clerk of the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties that has not been reversed, stayed, modified, or amended, and as to which the time for filing a notice of appeal, or petition for certiorari or request for certiorari, or request for rehearing, shall have expired and is no longer subject to remand, retrial, modification, or further proceedings of any kind or nature.

Article 1.33    "General Unsecured Claim" means an Unsecured Claim that is not subordinated either as a Level One Subordinated claim or Level Two Subordinated claim.

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 7 of 33**

Article 1.34    "Insider" shall have the meaning ascribed to it by Section 101(31) of the Bankruptcy Code.

Article 1.35    "Level One Subordinated Claim" means the subordinated claim of Zoller or any other Allowed Claim subordinated on a *pari passu* basis with the Zoller Claim.

Article 1.36    "Level Two Subordinated Claim" means any Allowed Claim that is subordinated to a priority level below the Zoller claim.

Article 1.37    "Other Priority Claim" means any Claim for an amount entitled to priority in right of payment under Sections 507(a)(3), (4), (5), (6), or (7) of the Bankruptcy Code.

Article 1.38    "Petition Date" means March 22, 2017, the date on which Debtor commenced this Bankruptcy Case.

Article 1.39    "Plan" means this Plan of Reorganization, as amended, modified, restated, or supplemented from time to time.

Article 1.40    "Prime Rate" means the prime interest rate published by the Wall Street Journal.

Article 1.41    "Priority Tax Claim" means a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to priority but for the secured status of the Claim.

Article 1.42    "Pro Rata" means the ratio of an Allowed Claim in a particular Class to the aggregate amount of all Allowed Claims, or Claims that could become Allowed Claims, in that Class.

Article 1.43    "Rejection Claim" means a Claim entitled to be filed as a result of a debtor rejecting an executory contract in this Bankruptcy Case.

Article 1.44    "Reorganized Debtor" means Debtor from and after the Effective Date.

Exhibit A

Article 1.45    "Restated Operating Agreement" means the restated Operating Agreement of Debtor, which shall modify and amend Debtor's Operating Agreement consistent with the terms of this Plan to prohibit the issuance of non-voting Equity Securities to the extent required by Section 1123(a)(6) of the Bankruptcy Code and shall govern Reorganized Debtor consistent with the terms of this Plan.

Article 1.46    "Sale Proceeds" means the cash proceeds received from the sale to BlueEarth.

Article 1.47    "Scheduled Amounts" means the Claim amounts as set forth in Debtor's Schedules.

Article 1.48    "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by Debtor pursuant to Section 521 of the Bankruptcy Code, as amended, modified, restated, or supplemented from time to time.

Article 1.49    "Secured Claim" means any Claim against Debtor held by any entity, including, without limitation, an affiliate or judgment creditor of Debtor, to the extent such Claim constitutes a secured Claim under Sections 506(a) or 1111(b) of the Bankruptcy Code. The unsecured portion, if any, of such Claim shall be treated as an Unsecured Claim.

Article 1.50    "Unsecured Claim" means a Claim that is not an Administrative Claim, a Secured Claim, a Priority Tax Claim, or an Other Priority Claim.

Article 1.51    "Unsecured Creditor" means a holder of an Allowed Unsecured Claim.

Article 1.52    "Zoller Claim" means the Claim filed by Michael Zoller as Claim No. 8 in the amount of $1,524,201.65 Allowed as a subordinated Claim.

## Article 2

### UNCLASSIFIED CLAIMS

Article 2.1    Administrative Expense Claims. Each holder of an Allowed Administrative Expense Claim shall be paid in full in Cash on the later of (a) the Effective Date; or (b) the date on which such Claim becomes Allowed, unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute, or regulation governing such Claim); provided, however, that Administrative Expense Claims representing obligations incurred in the ordinary course of business by Debtor during the Bankruptcy Case shall be paid by BlueEarth in the ordinary course of business and in accordance with any terms and conditions of the particular transaction, and any agreements relating thereto.

Article 2.2    Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall be paid in full amount of its Allowed Priority Tax Claim as allowed by 11 U.S.C. § 1129(a)(9)(C) and (D) in equal amortizing monthly payments of principal and interest at the non-default rate determined under applicable non-bankruptcy law or, if there is no such defined rate, then at a rate equal to the Prime Rate plus 1% fixed as of the Confirmation Date, or such other rate as determined by the Bankruptcy Court, or the date the Claim is Allowed, commencing on the 12th day of the first full month following the Effective Date or the date the Claim is Allowed over a period ending March 20, 2022, unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute, or regulation governing such Claim).

Article 2.3    Bankruptcy Fees. Fees payable by Debtor under 28 U.S.C. § 1930, or to the Clerk of the Bankruptcy Court, will be paid in full in Cash on the Effective Date. After

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 10 of 33**

confirmation, Reorganized Debtor shall continue to pay quarterly fees of the Office of the United States Trustee and to file monthly reports with the Office of the United States Trustee until this Bankruptcy Case is closed by the Court, dismissed, or converted, except as otherwise ordered by the Court. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases. The monthly financial report shall include a statement of all disbursements made during the course of the month by Reorganized Debtor whether or not pursuant to the Plan.

## Article 3

### CLASSIFICATION

For purposes of this Plan, Claims (except those treated under Article 2) are classified as provided below. A Claim is classified in a particular Class only to the extent such Claim qualifies within the description of such Class, and is classified in a different Class to the extent such Claim qualifies within the description of such different Class.

Article 3.1 _Class 1 (PDPM)_. Class 1 consists of the Allowed Secured Claim of Pacific Diamond & Precious Metals, Inc. ("PDPM").

Article 3.2 _Class 2 (Camco)_. Class 2 consists of the Allowed Secured Claim of Camco, LLC other than the vehicle loan treated as Class 4.

Article 3.3 _Class 3 (First Interstate Bank)_. Class 3 consists of the Allowed Secured Claim of First Interstate Bank, as successor in interest to Bank of the Cascades ("First Interstate").

Article 3.4 Class 4 (Camco vehicle loan). Class 4 consists of the allowed secured claim of Camco for the "Consumer Car Loan Agreement" dated January 8, 2016 between Camco and Debtor regarding the 2015 Dodge 1500 4-door pick-up truck, VIN 1C6RR6FT7FS762313 ("Dodge 1500 pick-up truck").

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 11 of 33**

Case 17-60837-tmr11   Doc 472   Filed 11/13/18
Case 17-60837-tmr11   Doc 529   Filed 12/14/18

Article 3.5 Class 5 (Rogue Credit Union Loan). Class 5 consists of the Allowed Secured Claim of Rogue Credit Union or its successor or assignes ("Rogue") for the "Loan Agreement and Consumer Credit Disclosure Statement ("Rogue Loan Agreement") signed June 3, 2005 between Phillip Cam (who entered into the agreement on behalf of Ameriflex Engineering, LLC) and Rogue Credit Union regarding the 2015 Dodge RAM 3500 pick-up truck, VIN 3C63RRGL5FG648761 ("Dodge RAM 3500").

Article 3.6 Class 6 (Wells Fargo Commercial Distribution Finance, LLC). Class 6 consists of the Allowed Claim of Wells Fargo Commercial Distribution Finance, LLC.

Article 3.7 Class 7 (Wells Fargo Capital Finance Canada). Class 7 consists of the Allowed Claim of Wells Fargo Capital Finance Corporation Canada.

Article 3.8 Class 8 (Northpoint Commercial Finance). Class 8 consists of the Allowed Claim of Northpoint Commercial Finance.

Article 3.9 Class 9 (General Unsecured Claims). Class 9 consists of all Allowed General Unsecured Claims.

Article 3.10 Class 10 (Level One Subordinated Claims). Class 10 consists of the Allowed Level One Subordinated Claim of Zoller and any other claim that may be subordinated to the same extent as the Zoller Claim, including any claims subordinated to this level by objections to claims or causes of action pursued by Reorganized Debtor.

Article 3.11 Class 11 (Level Two Subordinated Claim). Class 11 consists of the Allowed Level Two Subordinated claims including any claims subordinated to this level by objections to claims or causes of action pursued by Reorganized Debtor.

Article 3.12 Class 12 (Equity Security Holders). Class 12 consists of all Equity Securities held by Equity Security Holders of Debtor prior to the Confirmation Date.

**Article 4**

**TREATMENT OF CLASSIFIED CLAIMS AND EQUITY SECURITY HOLDERS**

Article 4.1    Class 1 (PDPM).  Class 1 is impaired.  The holder of a Class 1 Claim that becomes an Allowed Secured Claim and not subordinated will be treated as follows:  PDPM will retain its lien on the assets acquired by BlueEarth under the Asset Purchase Agreement to the same extent PDPM held a valid, perfected, security interest in those assets in the hands of the Debtor as of the Petition Date provided, however, that the collateral may be moved to another location.  PDPM will be paid the full amount of its Allowed Class 1 Secured Claim in equal monthly payments of principal and interest for 60 months, commencing on the first day of the first full month following the Effective Date, and the first day of each month thereafter until paid.  Interest shall accrue at the non-default contract rate of 6% per annum.

Article 4.2    Class 2 (Camco).  Class 2 is impaired.  The holder of a Class 2 Claim that becomes an Allowed Secured Claim and not subordinated will be treated as follows:  Camco will retain its lien position on the assets acquired by BlueEarth under the Asset Purchase Agreement with the same priority it had as of the Petition Date if its Claim is an Allowed Secured Claim; provided, however, that the collateral may be moved to another location.  Camco will be paid the full amount of its Allowed Secured Class 2 Claim in equal monthly payments of principal and interest for 60 months, commencing on the first day of the first full month following the Effective Date and the first day of each month thereafter until paid.  Interest shall accrue at the non-default contract rate, provided it is no greater than 6% per annum.

Article 4.3    Class 3 (First Interstate Bank).  Class 3 is not impaired.  The holder of a Class 3 Claim that becomes an Allowed Second Claim will be paid in full on the Effective Date.

Exhibit A
Page 13 of 118

Article 4.4     Class 4 (Camco vehicle loan).  Class 4 is impaired.  The holder of the Class 4 claim that becomes an Allowed Secured Claim and not subordinated will be treated as follows:  Title to the 2015 Dodge 1500 pick-up truck will be transferred to BlueEarth in accordance with the Asset Purchase Agreement.  Camco will retain its lien position on the 2015 Dodge 1500 pick-up truck with the same priority it had as of the Petition Date if its Claim is an Allowed Claim.  Camco will be paid pursuant to the terms set forth in the "Consumer Car Loan Agreement" dated January 8, 2016, between Debtor and Camco which provides for monthly installments of $451.56 on the first day of each month and ending on December 1, 2021 and other terms as provided therein which are incorporated herein by this reference, provided however that all of Debtor's obligations thereunder shall be binding upon and performed by BlueEarth.

Article 4.5     Class 5  (Rogue Credit Union Loan).  Class 5 is impaired.  The holder of the Class 5 claim that becomes an Allowed Secured Claim and not subordinated will be treated as follows:  Title to the 2015 Dodge RAM 3500 will be transferred to BlueEarth in accordance with the Asset Purchase Agreement.  Rogue will retain its lien position on the 2015 Dodge RAM 3500 with the same priority it had as of the Petition Date.  Rogue will be paid pursuant to the terms set forth in the Rogue Loan Agreement which provides for monthly installments of $547.00 per month with a final payment amount of $467.83 and other terms as provided therein which are incorporated herein by this reference, provided however that all of Debtor's obligations thereunder shall be binding upon and performed by BlueEarth.

Article 4.6     Class 6 (Wells Fargo Commercial Distribution Finance, LLC).
Class 6 is impaired.  As part of the consideration for the Asset Purchase Agreement and assets acquired therein, BlueEarth will assume the obligations to Wells Fargo Commercial Distribution

Finance, LLC and perform all duties and obligations under existing arrangements from and after the Effective Date until such time as they are terminated or replaced in accordance with the terms of the Stipulation on Motion of Secured Creditor Wells Fargo Commercial Distribution Finance, LLC and Wells Fargo Capital Finance Canada, LLC for modification of the automatic stay [ECF No. 443] which provides that the vendor agreement shall terminate with no further notice effective December 31, 2018 unless the parties mutually agree otherwise. Wells Fargo Commercial Distribution Finance, LLC shall retain its security interest and lien upon the assets acquired by BlueEarth to the same extent and with the same priority as granted under the agreements.

      Article 4.7    <u>Class 7 (Wells Fargo Capital Finance Canada, LLC).</u> Class 7 is impaired. During the bankruptcy proceeding, Wells Fargo Capital Finance Canada, LLC and Debtor continued to perform under various vendor agreements. As partial consideration under the Asset Purchase Agreement and the assets acquired thereunder, BlueEarth will assume the vendor agreements and perform all duties and obligations therein from and after the Effective Date pursuant to the terms of the Stipulation on Motion of Secured Creditor Wells Fargo Commercial Distribution Finance, LLC and Wells Fargo Capital Finance Canada, LLC for modification of the automatic stay [ECF No. 443] which provides that the vendor agreement shall terminate with no further notice effective December 31, 2018 unless the parties mutually agree otherwise. Wells Fargo shall retain its security interest and lien upon the assets acquired by BlueEarth to the same extent and with the same priority as granted under the vendor agreements.

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 15 of 33**

Exhibit A
Page 15 of 118      Case 17-60837-tmr11   Doc 472   Filed 11/13/18
                             Case 17-60837-tmr11   Doc 529   Filed 12/14/18

Article 4.8    Class 8 (Northpoint Commercial Finance).    Class 8 is impaired.
During the bankruptcy proceeding, Northpoint Commercial Finance ("Northpoint") and Debtor
have continued to perform under the vendor agreement entered into pre-petition. As partial
consideration under the Asset Purchase Agreement and the assets acquired therein, BlueEarth
will assume the Northpoint vendor agreement and perform all duties and obligations thereunder
from and after the Effective Date. Northpoint will retain its security interest and lien upon the
assets acquired by BlueEarth to the same extent and with the same priority as provided for under
the vendor agreement.

Article 4.9    Class 9 (General Unsecured Claims). Class 9 is impaired. The
holder of an Allowed Class 9 Claim will be paid the full amount of their Allowed General
Unsecured Claim within 45 days after the Effective Date or on the date the Class 9 Claim is
Allowed.

Article 4.10    Class 10 (Level One Subordinated Claims). Class 10 is impaired.
Allowed Class 10 claims shall be satisfied in full through issuance of Common Units in
Reorganized Debtor equal in number to the Allowed amount of their Class 10 Claims. Zoller
will assign his Claim to Z Marine, LLC ("Z Marine"). Z Marine, as holder of a Class 10 Claim,
shall be satisfied in full by conversion of the full amount of the Class 10 Claim into 1,524,201
Common Units in Reorganized Debtor.    Any other holder of a Claim that becomes an Allowed
Class 10 Claim shall be satisfied in full by conversion of the full amount of their Class 10 Claim
into an equal number of Common Units in Reorganized Debtor.    The conversion rate shall be
one Common Unit for each full dollar of Allowed Claim.

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13,
2018 - **Page 16 of 33**

Exhibit A
Page 16 of 118

Article 4.11    Class 11 (Level Two Subordinated Claims).  Class 11 is impaired. Class 11 has no claimants this time but could result in Claims based on objections to Claims and causes of action

brought by Reorganized Debtor.  The holder of a Claim that becomes an Allowed Class 12 Claim will receive no distributions under the Plan.

Article 4.12    Class 12 (Equity Security Holders).  Class 12 is impaired.  All existing Equity Securities shall be cancelled as of the Effective Date and Equity Security Holders will not receive or retain anything under the Plan.  New equity will be issued in Reorganized Debtor to Z Marine and any other Allowed Class 10 Claimant.

## Article 5
## DISPUTED CLAIMS, OBJECTIONS TO CLAIMS, SETTLEMENT

Article 5.1    Disputed Claims; Objections to Claims; Settlement.  Only Claims that are Allowed shall be entitled to distributions under the Plan.  BlueEarth and Reorganized Debtor shall have the right to contest and object to any Claims and previously Scheduled Amounts, including, without limitation, those Claims and Scheduled Amounts that are specifically referenced herein; are not listed in the Schedules; are listed therein as disputed, contingent, and/or unliquidated in amount; or are listed therein at a different amount than BlueEarth or Reorganized Debtor believe is validly due and owing and BlueEarth and Reorganized Debtor shall have the right to object or assert claims against equipment lessors, to the extent appropriate, including claims based on ownership of equipment presently identified as leased equipment.  Unless otherwise ordered by the Bankruptcy Court, all objections to Claims

and Scheduled Amounts (other than Administrative Expense Claims of professionals) shall be Filed and served upon counsel for Zoller, Debtor, BlueEarth and the holder of the Claim objected to on or before the later of (a) 60 days after the Effective Date or (b) 60 days after the date (if any) on which a Proof of Claim is Filed in respect of a Rejection Claim or Deficiency Claim. The last day for filing objections to Administrative Expense Claims shall be set pursuant to a further order of the Bankruptcy Court. All Disputed Claims shall be resolved by the Bankruptcy Court, except to the extent that (a) BlueEarth or Reorganized Debtor may otherwise elect consistent with the Plan and the Bankruptcy Code, or (b) the Bankruptcy Court may otherwise order.

Article 5.2    Subsequent Allowance of Disputed Claims. The holder of a Disputed Claim that becomes Allowed in full or in part subsequent to the Effective Date shall receive the distribution they would have received after the Effective Date had the Claim been Allowed at that time. Until a Disputed Claim is Allowed or disallowed, BlueEarth shall hold any distribution that would have been due to the holder in respect of such Disputed Claim.

Article 5.3    No Distributions on Unspecified Claims. Any Claim that is in an unspecified or unknown amount, contingent, or unliquidated, as of the Effective Date, as provided in such Creditor's filed proof of claim or, if none is filed, Debtor's bankruptcy Schedules, shall receive nothing under the Plan.

Article 5.4    De Minimis Post-Effective Date Payments. If a Cash payment to be made to a holder of an Allowed Claim after the Effective Date would be $20 or less in the aggregate, no such payment will be made to the holder of such Claim unless and until the aggregate distribution on account of such Claim would be at least $20 at a subsequent distribution date.

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 18 of 33**

## Article 6

### MEANS FOR EXECUTION OF PLAN

Article 6.1    Sale to BlueEarth. Attached hereto as Exhibit 1 is the Asset Purchase Agreement setting forth the terms and conditions upon with BlueEarth shall acquire all Debtor's Assets, except those specifically retained by Reorganized Debtor ("Purchased Assets"). The sale to BlueEarth is contingent upon approval by the Bankruptcy Court of this Plan and the proposed Asset Purchase Agreement, and entry of a Confirmation Order containing the following provisions, or such other provisions as deemed acceptable to BlueEarth:

Article 6.1.1    The terms and conditions of the Asset Purchase Agreement, as may be amended, are approved in their entirety. Debtor is directed by the Court (and if Debtor fails to do so, shall be sanctioned by the Court) to consummate, perform under, and implement the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and to take all further action as may be reasonably requested by BlueEarth for the purpose of assigning, transferring, granting, conveying, and conferring to BlueEarth, or reducing to BlueEarth's possession, the Purchased Assets, and to otherwise perform and cause Debtor and its subsidiaries to perform all of their obligations under the Asset Purchase Agreement. To the extent Debtor fails to perform such actions, they shall, in any event, be deemed performed, and any such documents may be executed by Reorganized Debtor and deemed effective as if executed by Debtor.

Article 6.1.2    The sale of the Purchased Assets shall be free and clear of all liens, claims, encumbrances, charges, and other interests, except as otherwise specifically provided in the Plan.

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 19 of 33**

Article 6.1.3    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. The Confirmation Order shall be effective as a determination that all liens shall be and are, without further action by any person or entity, released with respect to the Purchased Assets, except as otherwise provided in the Plan.

Article 6.1.4    The assumed executory contracts and leases shall be deemed assigned and transferred to, and remain in full force and effect for the benefit of, BlueEarth in accordance with their respective terms, notwithstanding any provision in any such agreement, including provisions of the type described in 11 U.S.C. § 365(b)(2), (e)(1) and (f)(1), which prohibits, restricts, or conditions such assignment or transfer. The non-debtor party to each assigned agreement shall be deemed to have consented to such assignment under 11 U.S.C. § 365(c)(1)(B), and BlueEarth shall enjoy all of the rights and benefits of each assigned agreement as of the Effective Date without the necessity of obtaining such non-debtor party's written consent to the assumption and assignment thereof.

Article 6.1.5    Subject to the terms of the Plan with respect to cure amounts, all defaults and other obligations of Debtor under the assigned agreement arising or accruing prior to the Effective Date will be cured as of the Effective Date in accordance with the terms of the Asset Purchase Agreement such that BlueEarth shall have no liability or obligation with respect to any default or obligation arising or accruing under any assigned agreement prior to the Effective Date. Each non-debtor party to an assigned agreement is forever barred, estopped, and permanently enjoined from asserting against BlueEarth or its property or affiliates, or any thereof, any breach or default arising prior to the Effective Date under any assigned

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 20 of 33**

agreement, any claim of lack of consent relating to the assignment thereof, or any counterclaim, defense, setoff, right of recoupment, or other matter arising prior to the Effective Date for such assigned agreement or with regard to the assumption and assignment thereof pursuant to the Asset Purchase Agreement or the Confirmation Order. Upon entry of the Confirmation Order and assumption and assignment of the assigned agreements, BlueEarth shall be deemed in compliance with all terms and provisions of the assumed and assigned executory contracts and leases.

Article 6.1.6     The consideration provided by BlueEarth for the Purchased Assets under the Asset Purchase Agreement and the Plan is fair and reasonable.

Article 6.1.7     The transactions contemplated by the Asset Purchase Agreement are undertaken by BlueEarth in good faith and, accordingly, the reversal or modification on appeal of the authorization provided in the Confirmation Order to consummate the sale shall not affect the validity of the sale to BlueEarth. BlueEarth is a good faith purchaser of the Purchased Assets, and is entitled to all the benefits and protections afforded by 11 U.S.C. § 363(m) as made applicable through the Confirmation Order.

Article 6.1.8     The Asset Purchase Agreement and the transaction contemplated thereby may be specifically enforced against, and are binding upon, and are not subject to rejection or avoidance by any person or entity, including Debtor, Debtor's owners, Reorganized Debtor, or any Chapter 7 or Chapter 11 trustee subsequently appointed in the Bankruptcy Case.

Article 6.1.9     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transfer of the Purchased Assets to BlueEarth.

Article 6.1.10   The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by BlueEarth in

accordance with the terms thereof and this Plan without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on Debtor's estate.

Article 6.2    Reorganized Debtor.  Reorganized Debtor shall be comprised of the post-confirmation debtor, which will consist of all remaining Assets of Debtor not transferred to BlueEarth which are claims being retained by Reorganized Debtor as described in Schedule 1.1(k) to the Asset Purchase Agreement.  Reorganized Debtor shall investigate and, where appropriate, assert objections to Claims and/or causes of action against Creditors, Claims, or Equity Security Holders.  All pre-petition and post-petition causes of action held by the Debtor, and all Chapter 5 avoidance claims, shall be held by and may be pursued by Reorganized Debtor. To the extent any recoveries are received, they will be used to offset or reduce the payment obligations of BlueEarth on those Claims as otherwise set forth in the Asset Purchase Agreement and this Plan.  Any affirmative recovery beyond offset or claim reduction shall be retained by Reorganized Debtor.

Article 6.3    New Equity in Reorganized Debtor.  On the Effective Date, all Existing Equity Securities will be deemed canceled in Reorganized Debtor and new equity will be issued to Z Marine in full satisfaction of Z Marine's $1,524,201 Class 10 Claim.  Z Marine will be issued 1,524,201 Common Units of Reorganized Debtor.  Other Creditors with Allowed Level One Subordinated Claims will be issued one Common Unit of Reorganized Debtor for each full dollar of Allowed Claim.

Article 6.4    Restated Operating Agreement.  Upon the Effective Date, Reorganized Debtor shall adopt an Amended and Restated Limited Liability Company Agreement of Ameriflex Engineering, LLC.  The rights, preferences, and privileges of Common Unit holders will be set out in the LLC Agreement.  After the Effective Date, Reorganized

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 22 of 33**

Exhibit A
Page 22 of 118

Debtor may further amend the LLC Agreement in accordance with its terms and applicable state law, provided it is consistent with the Plan as set forth in the Confirmation Order.

Article 6.5     Reservation and Prosecution of Claims.  Notwithstanding any provision to the contrary in this Plan, all rights, claims and causes of action, whether equitable or legal, of the Debtor, Debtor in Possession or Reorganized Debtor against all persons arising under Sections 544, 545, 547, 548 and 549 of the Bankruptcy Code, or under any other applicable non-bankruptcy law for the recovery of avoidable fraudulent conveyances or other transfers, are reserved for Reorganized Debtor (and BlueEarth to the extent provided for in Section 5.1 above).  During the pendency of the Case, Zoller, Reorganized Debtor, or BlueEarth (if after Confirmation) may commence adversary proceedings against persons or entities to realize upon causes of action retained.

Article 6.6     Setoffs.  BlueEarth may, but shall not be required to, set off against any Claim and the distributions to be made pursuant to the Asset Purchase Agreement or the Plan in respect of such Claim, any claims of any nature whatsoever that BlueEarth or Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim BlueEarth or Reorganized Debtor may have against such holder.

Article 6.7     Company Action.  Upon entry of the Confirmation Order, all actions contemplated by the Plan shall be automatically authorized and approved by Debtor in all respects (subject to the provisions of the Plan), including, without limitation, the execution, delivery, and performance of all documents and agreements relating to the Plan, including the Asset Purchase Agreement.  Upon entry of the Confirmation Order, the appropriate officers of Debtor are authorized and directed to execute and deliver the agreements, documents, and instruments contemplated by the Plan, including an executed Asset Purchase Agreement, in the

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 23 of 33**

name of and on behalf of Debtor. The failure to do so will not impact the validity at the sale, but shall subject Debtor and its members to contempt of Court for failure to follow the Court's Confirmation Order.

      Article 6.8    Event of Default; Remedy. Any material failure by BlueEarth or Reorganized Debtor to perform any term of this Plan, which failure continues for a period of 30 days following receipt by BlueEarth or Reorganized Debtor of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an event of Default. Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all rights and remedies granted by law, this Plan, or any agreement between the holder of such Claim and BlueEarth or Reorganized Debtor. An Event of Default with respect to one Claim shall not be an Event of Default with respect to any other Claim.

      Article 6.9    Conditions Precedent to Effectiveness of Plan. Unless waived by Debtor, the following conditions must occur and be satisfied for the Plan to become effective, and are conditions precedent to the Effective Date:

      Article 6.9.1    The Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to BlueEarth, which shall, among other things, provide that any and all executory contracts and unexpired leases assumed pursuant to the Plan shall remain in full force and effect for the benefit of BlueEarth notwithstanding any provision in any such contract or lease, or in applicable law (including those described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer, or that enables or requires termination or modification of such contract or lease; and

      Article 6.9.2    All documents, instruments, and agreements, including, but not limited, to the Asset Purchase Agreement, each in form and substance satisfactory to BlueEarth, provided for or necessary to implement this Plan, shall have been executed and

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 24 of 33**

Exhibit A
Page 24 of 118   Case 17-60837-tmr11   Doc 472   Filed 11/13/18
                Case 17-60837-tmr11   Doc 529   Filed 12/14/18

delivered by the parties thereto, unless such execution or delivery has been waived by the party to be benefitted thereby.

## Article 7

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Article 7.1    Assumption and Rejection.  In accordance with Section 365(a) of the Bankruptcy Code, all executory contracts of Debtor listed on Schedule 1.1(c) of the Asset Purchase Agreement, as may be modified or amended in or prior to entry of the Confirmation Order, shall be assumed and assigned to BlueEarth as of the Effective Date.  Except as set forth therein, all other executory contracts listed on Schedule 5.5 of the Asset Purchase Agreement that are not assumed or otherwise subject to a prior Bankruptcy Court order or pending motion before the Bankruptcy Court, are rejected.  To the extent executory contracts and unexpired leases are not listed on Schedule 5.5 to the Asset Purchase Agreement, BlueEarth shall have 30 day after receipt of such contract to determine if it shall be assumed and assigned or rejected. BlueEarth shall promptly pay all amounts required under Section 365 of the Bankruptcy Code to cure any defaults for executory contracts and unexpired leases being assumed and shall perform its obligations from and after the Effective Date in the ordinary course of business.  Entry of the Confirmation Order shall constitute approval of the assumption and assignment of executory contracts and unexpired leases as set forth in this section.  BlueEarth believes that no cure payments under Section 365(b)(1)(A) will be due upon assumption.

Article 7.2    Assignment.  Except as may be otherwise provided in this Plan, the Confirmation Order, or other Order of the Bankruptcy Court, all executory contracts that Debtor assumed shall be deemed assigned to BlueEarth as of the Effective Date. The Confirmation Order shall constitute an order authorizing such assignment of assumed executory contracts, and no further assignment documentation shall be necessary to effectuate such assignment.

Article 7.3    Objections. Any party to an unexpired lease or executory contract who believes it has a claim against the Debtor is required under the Plan to file any claim for arrearage required to be cured by Section 365(b)(1) of the Bankruptcy Code and any objections to the assumption. Failure to assert such arrearage or to file any objections on or before 7 days prior to the Confirmation Date shall constitute an agreement to the assumption as set out herein and a conclusive acknowledgment that no defaults or claims exist under said contract (on the part of the Debtor) that require a cure.

Article 7.4    Rejection Claims. Except as previously ordered by the Bankruptcy Court, any Rejection Claims must be Filed no later than 30 days after entry of an order rejecting the executory contract or unexpired lease, to the extent it is a contract or lease not identified on Schedule 5.5 to the Asset Purchase Agreement, or Filed 20 days after entry of the Confirmation Order with respect to all other rejected contracts. Any such Rejection Claim not Filed within such time shall be forever barred from asserting such Claim against BlueEarth, Reorganized Debtor, its property, estate, and any guarantors of such obligations. Each Rejection Claim resulting from such rejection shall constitute a General Unsecured Claim.

## Article 8

## EFFECT OF CONFIRMATION

Article 8.1    Injunction. The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy Code. Except as otherwise provided in the Plan, prior order of the Bankruptcy Court, or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding of any kind against Debtor or Reorganized Debtor that was or could have been commenced before the entry of the BlueEarth Confirmation Order; (b) the enforcement,

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 26 of 33**

attachment, collection, or recovery against BlueEarth or Reorganized Debtor, or their respective

assets of any judgment, award, decree, or order obtained before the Petition Date; and (c) any act

to obtain possession of or to exercise control over, or to create, perfect, or enforce a lien upon, all

or any part of the assets of BlueEarth or Reorganized Debtor; (d) asserting any setoff, right of

subrogation or recoupment of any kind against any obligation due to BlueEarth, Reorganized

Debtor, or its property; and (e) proceeding in any manner in any place whatsoever that does not

conform to, does not comply with, or is inconsistent with the provisions of the Plan or the

Confirmation Order.

## Article 9

## RETENTION OF JURISDICTION

Article 9.1    Notwithstanding entry of the Confirmation Order or the Effective

Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction over all matters

arising out of or relating to this Chapter 11 Case pursuant to and for the purposes set forth in

Section 1127(b) of the Bankruptcy Code to:

Article 9.1.1    classify the Claim or Equity Security of any Creditor or

Equity Security Holder, reexamine Claims or Equity Securities that have been owed for voting

purposes, and determine any objections that may be Filed to Claims or Equity Security Holders;

Article 9.1.2    determine requests for payment of Claims entitled to

priority under Section 507(a) of the Bankruptcy Code, including compensation and

reimbursement of expenses in favor of professionals employed at the expense of the bankruptcy

estate;

Article 9.1.3    avoid transfers or obligations to subordinate Claims under

Chapter 5 of the Bankruptcy Code;

Article 9.1.4    approve the assumption, assignment, or rejection of an executory contract or an unexpired lease pursuant to this Plan;

Article 9.1.5    resolve controversies and disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

Article 9.1.6    implement the provisions of this Plan and enter orders in aid of confirmation and/or the discharge, or the effect of such discharge, provided to Debtor;

Article 9.1.7    determine the validity, priority, or extent of any Claims or Claims of lien;

Article 9.1.8    adjudicate adversary proceedings, applications, contested matters, or other litigation matters pending on the Effective Date or hereafter commenced in this Bankruptcy Case;

Article 9.1.9    order and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

Article 9.1.10    hear and determine any applications to modify the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan or related documents, or in any order of the Bankruptcy Court, including the Confirmation Order;

Article 9.1.11    ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

Article 9.1.12    hear and determine any issue arising out of or related to the execution of the Asset Purchase Agreement and transfer and delivery of the Assets described therein to BlueEarth;

Article 9.1.13    hear and determine objections to or requests for estimations of Claims, including any objections to the classification of any Claim, and to allow, disallow, and/or estimate any Claim in whole or in part;

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 28 of 33**

Article 9.1.14 hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code; and enter a final decree closing this Bankruptcy Case.

## Article 10

## ADMINISTRATIVE PROVISIONS

Article 10.1    Modification of the Plan. Zoller may alter, amend, or modify the Plan pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the time the Bankruptcy Court has signed the Confirmation Order. After such time, and prior to substantial consummation of the Plan, Reorganized Debtor may, so long as the treatment of holders of Claims and Equity Security under the Plan is not adversely affected, institute proceedings in Bankruptcy Court to remedy any defect or omission, or to reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of the Plan.

Article 10.2    Revocation or Withdrawal of Plan

Article 10.2.1  Right to Revoke. Zoller reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.

Article 10.2.2  Effect of Withdrawal or Revocation. If Zoller revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against Debtor or any other Entity, or to prejudice in any manner the rights of Zoller or any Entity in any further proceeding involving Debtor.

Article 10.3    Nonconsensual Confirmation. Zoller shall request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the

requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except Subsection 1129(a)(8), are met.

## Article 11

### MISCELLANEOUS PROVISIONS

Article 11.1    Revesting. Except for the Assets transferred to BlueEarth, and as otherwise expressly provided herein, on the Effective Date all remaining property and assets of the estate of Debtor shall revest in Reorganized Debtor free and clear of all claims, liens, encumbrances, charges, and other interests of Creditors arising on or before the Effective Date, and Reorganized Debtor may operate, from and after the Effective Date, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.

Article 11.2    Cancellation of Documents Evidencing Claims. As of the Effective Date (subject to resolution of any objection to the Claim if a Disputed Claim), any note, agreement, instrument, judgment, or other document evidencing an Allowed Secured Claim or Allowed Unsecured Claim in any Class shall be deemed cancelled, null, and void, except for the right, if any, to receive distributions under this Plan; provided, however, that nothing herein shall affect the liability of any Entity other than Debtor on, or the property of any Entity other than Debtor for, such Claim.

Article 11.3    Rights of Action. Except as otherwise expressly provided herein, any claims, rights, interests, causes of action, defenses, counterclaims, crossclaims, third-party claims, or rights of offset, recoupment, subrogation, or subordination, including, without limitation, claims under Section 550(a) of the Bankruptcy Code or any of the sections referenced therein (including, without limitation, any and all Avoidance Actions) accruing to Debtor, shall remain assets of Reorganized Debtor. Reorganized Debtor may pursue such rights of action, as appropriate, in accordance with its best interests and for its benefit.

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 30 of 33**

Article 11.4    Governing Law. Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal laws are applicable, the laws of the State of Oregon shall govern the construction and implementation of the Plan, and all rights and obligations arising under the Plan.

Article 11.5    Withholding and Reporting Requirements. In connection with the Plan and all instruments issued in connection therewith and distributions thereon, Debtor and Reorganized Debtor shall comply with all withholding, reporting, certification, and information requirements imposed by any federal, state, local, or foreign taxing authorities, and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification, and information requirements. As soon as practicable after the Effective Date. Entities entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as BlueEarth may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable BlueEarth to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

Article 11.6    Time. Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of the next succeeding day that is a Business Day.

Article 11.7    Section 1146(c) Exemption. Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan; or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan; or the revesting, transfer, or sale of any real property of Debtor

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 31 of 33**

or Reorganized Debtor pursuant to, in implementation of, or as contemplated by the Plan; shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any city, county, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax, or similar tax.

Article 11.8    Severability. In the event any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan. To the extent any provision of the Plan would, by its inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the Confirmation Order, the Bankruptcy Court, on the request of Zoller, may modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to confirmation of the Plan existing by reason of such provision.

Article 11.9    Binding Effect. The provisions of the Plan shall bind Debtor, BlueEarth, Zoller, Reorganized Debtor, and all Creditors and Equity Security Holders, and their respective successors, heirs, and assigns.

Article 11.10    Retiree Benefits. On or after the Effective Date, to the extent required by Section 1129(a)(13) of the Bankruptcy Code, Reorganized Debtor shall continue to pay all retiree benefits (if any) as that term is defined in Section 1114 of the Bankruptcy Code, maintained or established by Debtor prior to the Effective Date, without prejudice to Reorganized Debtor's rights under applicable non-bankruptcy law to modify, amend, or terminate the foregoing arrangements.

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 32 of 33**

Article 11.11   <u>Recordable Order</u>.  The Confirmation Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

Article 11.12   <u>Plan Controls</u>.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other instrument or agreement contemplated to be executed pursuant to the Plan, the provisions of the Plan shall control and take precedence.

Article 11.13   <u>Effectuating Documents and Further Transactions</u>.  Debtor and Reorganized Debtor shall execute, deliver, file, or record such contracts, instruments, assignments, and other agreements or documents, and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Article 11.14   <u>Timing of Actions</u>.  Notwithstanding anything to the contrary herein, any action required by the Plan to be taken on the Effective Date shall be made or taken on the Effective Date or as soon as practical thereafter, but in any event within 20 days of the Effective Date.

DATED this 13th day of November, 2018.

THE LAW OFFICES OF KEITH Y. BOYD

By:   /s/ Keith Y. Boyd
Keith Y. Boyd, OSB #760701
Of Attorneys for Creditor Michael
Zoller

THIRD AMENDED CREDITOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2018 - **Page 33 of 33**

# AGREEMENT FOR
# SALE AND PURCHASE OF BUSINESS ASSETS

This Agreement for Sale and Purchase of Business Assets (the "Agreement") is between BlueEarth Marine, LLC, an Oregon limited liability company ("Buyer"), and Ameriflex Engineering LLC, an Oregon limited liability company ("Seller").

## Background

A.    Seller operates a business engaged in manufacturing and selling heavy-gauge, all-welded aluminum boats. Seller's principal place of business is 1385 Antelope Road, White City, Oregon 97503. Seller owns equipment, inventory, contract rights, leasehold interests, accounts receivables, cash and cash equivalents, intangible assets, boat designs and other intellectual property, and miscellaneous assets used in connection with the operation of its business.

B.    On or about March 22, 2017, Seller filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court, District of Oregon (the "Bankruptcy Court"), Case No. 17-60837-tmr11 (the "Bankruptcy Case").

C.    Buyer desires to acquire substantially all the assets used, useful, or intended to be used, in the operation of Seller's business. Michael Zoller ("Zoller") is proposing a Plan of Reorganization, as may be amended, revised, or supplemented ("Creditor Plan") in the Bankruptcy Case which provides for the sale of substantially all of Debtor's assets to Buyer as set forth herein and in the Creditor Plan pursuant to an order entered by the Bankruptcy Court approving the Creditor Plan (the "Confirmation Order"), including the consummation of the transactions contemplated in this Agreement (the "Transactions"). Capitalized terms used but not defined in this Agreement have the meanings given in the Creditor Plan.

## SECTION 1.
## ASSETS PURCHASED; LIABILITIES ASSUMED

1.1.    **Assets Purchased**. Subject to the terms and conditions set forth in this Agreement. the Creditor Plan, and the Confirmation Order, effective upon Closing (defined below) Seller hereby sells to Buyer and Buyer hereby purchases from Seller all of Seller's assets used, useful, or intended to be used, in the operation of Seller's business (the "Assets"), in each case free and clear of all mortgages, pledges, liens, security interests, claims, charges, or other encumbrances or restrictions of any kind, including any claims that such Assets are fixtures owned by Seller's landlord (collectively, "Liens") other than those specifically identified on attached Schedule 1.1 as set forth in the Creditor Plan or Confirmation Order (the "Permitted Liens"): The Assets include without limitation the following:

Exhibit 1 - Page 1 of 85

(a)     All equipment, tools, furniture, and fixtures owned by Seller, together with any replacements or additions to the equipment made before the Closing, including without limitation those listed on attached Schedule 1.1(a);

(b)     All inventories of supplies, raw materials, parts, and finished goods owned by Seller, together with any replacements or additions to the inventories made before the Closing, including without limitation those listed on attached Schedule 1.1(b);

(c)     All Seller's rights under the contracts to which Seller is a party that are listed on attached Schedule 1.1(c) or as such list may be amended pursuant to the Creditor Plan or in the Confirmation Order (the "Contracts");

(d)     All of Seller's interest, if any, in any leasehold improvements installed by Seller on the premises that are the subject of any lease agreement, including without limitation those listed on attached Schedule 1.1(d);

(e)     All Seller's rights under purchase orders (both purchases of supplies and sales of boats), a current list of which is attached as Schedule 1.1(e), together with those entered into in the ordinary course of business before the Closing;

(f)     Seller's name and goodwill;

(g)     All patents, trademarks, trade names, copyrights, service marks, and domain names of Seller, all registrations for them, all applications pending for them, all goodwill connected with the use of and symbolized by the foregoing, and all other proprietary rights and intangible property of Seller, including trade secrets, inventions, technology, software, operating systems, customer lists, customer relationships, customer agreements, customer understandings, cost data and reports, drawings, blueprints, boat and other manuals, parts, drawings, modifications, corrections, warning and other labels, signs, engineering and lofting files, CNC designs and programs, extrusions, assembly drawings, research and design, lifting programs, boat designs, instruction books, know-how, formulae, slogans, processes, and operating rights and all other similar items, including the right to sue for misappropriation or infringement ("Intellectual Property"), all tangible and intangible embodiments of the foregoing, and all such items acquired by Seller or coming into existence on or before the Closing Date, including without limitation all items listed on attached Schedule 1.1(g);

(h)     To the extent transferable, all approvals, authorizations, consents, licenses, permits, franchises, tariffs, orders, and other registrations of any federal, state, or local court or other governmental department, commission, board, bureau, agency, or instrumentality held by Seller and required or appropriate for

Exhibit 1 - Page 2 of 85

the conduct of the business of Seller ("Permits"), and all such items granted or received on or before the Closing Date;

(i) All employee procedures, policy manuals, and OSHA-related information;

(j) All accounts receivable and other receivables of Seller arising on or before the Closing Date, a partial list of which is attached as Schedule 1.1(j), other than to the extent that those receivables have been collected by Seller in the ordinary course of business before the Closing Date;

(k) All choses in action, causes of action, lawsuits, claims, rights of recovery and setoff, warranty rights, and other rights of Seller against third parties, and all such items arising or acquired on or before the Closing Date, except as provided on attached Schedule 1.1(k), which will be retained by the Reorganized Debtor pursuant to the Creditor Plan;

(l) All prepaid and deferred items of Seller, including without limitation, prepaid rent, prepaid insurance, prepaid taxes, unbilled charges and deposits relating to the business of Seller and all other such items;

(m) All correspondence, engineering, and manufacturing records, service records, warranty records, sales records, and all other similar documents and business records;

(n) All data center information, backups, cloud services accounts, and similar rights;

(o) All assignable rights to all telephone lines and numbers, email addresses, websites, social media accounts, and similar rights used in the conduct of the business of Seller;

(p) All rights, claims, and causes of action, whether equitable or legal, of Seller (including as debtor-in-possession and the reorganized debtor) relating to the Assumed Liabilities described in Section 3, subject to Section 1.4 regarding joint ownership of certain of those claims;

(q) All other tangible or intangible assets of Seller not specifically identified herein, but excluding any preference claims under 11 U.S.C. § 547 or other avoidance claims under the Bankruptcy Code which will be held by Reorganized Debtor pursuant to the Creditor Plan; and

(r) All cash, cash equivalents, rebates, deposits, holdbacks, credits, deposits, prepayments, incentives, and other similar rights.

Exhibit 1 - Page 3 of 85

1.2. **Assumed Liabilities**. Subject to the terms and conditions set forth in this Agreement, the Creditor Plan, and the Confirmation Order, Buyer will assume the following liabilities that are not subject to discharge or disallowance in the Bankruptcy Case (collectively, the "Assumed Liabilities"):

(a) All liabilities described in Section 3 below;

(b) All unfilled orders from customers of Seller, which are listed on attached Schedule 1.2(b);

(c) Payment for purchase orders listed on attached Schedule 1.2(c) for inventory items that have been placed by Seller before the Closing but that will not be delivered until after the Closing;

(d) All rebates owed to customers of Seller as of the Closing, which are listed on attached Schedule 1.2(d);

(e) Seller's obligations under the Contracts listed on Schedule 1.1(c);

(f) Liabilities or obligations of Seller, described on attached Schedule 1.2(f), to employees; and

(g) Each customer claim under a boat sale warranty (i) that is valid and timely under the express terms of the warranty, and (ii) with respect to which Seller delivers to Buyer at Closing a completed warranty card or other valid warranty registration information.

Notwithstanding the foregoing, the Creditor Plan and Confirmation Order may instead provide that Buyer pay the amount of the Assumed Liabilities to the Reorganized Debtor for the Reorganized Debtor to pay the Assumed Liabilities directly to creditors.

1.3. **Liabilities Not Assumed**. Except for the Assumed Liabilities or as otherwise set forth in the Creditor Plan or Confirmation Order, Buyer will not assume and will not be liable for any liabilities of Seller, known or unknown, contingent or absolute, accrued or other to the extent such liability is not represented by an Allowed Claim in the Bankruptcy Case. Without limiting the generality of the foregoing and except as otherwise provided above, Buyer will not be responsible for any of the following:

(a) Liabilities, obligations, or debts of Seller, whether fixed, contingent, or mixed, and whether based on events occurring before or after the Closing, including without limitation those based on tort, contract, statutory, or other claims or involving fines or penalties payable to any governmental authority;

Exhibit 1 - Page 4 of 85

(b)     Liabilities, obligations, or debts of Seller for any federal, state, or local tax, including without limitation federal income taxes, state income and excise taxes, state and local real property taxes, and federal, state, and local withholding and payroll taxes; securities;

(c)     Liabilities or obligations of Seller relating to issuances of any securities;

(d)     Liabilities or obligations of Seller incurred in connection with distributions to members or any company dissolution, and all other obligations to Seller's members; and

(e)     Liabilities or obligations of Seller under any environmental law.

1.4.    **Claims Objections**. The Reorganized Debtor and Buyer will jointly have the right to assert all of Seller's rights, claims, causes of action, affirmative defenses, and other theories of relief of any kind whatsoever, whether equitable or legal, relating to the Assumed Liabilities described in Section 3, including without limitation the right to assert such rights as claims objections in the Bankruptcy Case. The Reorganized Debtor and Buyer will cooperate with one another in the assertion of such claims. The Buyer will retain the benefit of any claims reductions or offsets, but Reorganized Debtor will have the right to receive any affirmative recovery under such claims to the extent they exceed the Assumed Liabilities.

## SECTION 2.
## ALLOCATION OF PURCHASE PRICE

Following Closing, Buyer will allocate the Purchase Price among the Assets in accordance with the Internal Revenue Code, and Buyer and Seller will be bound by that allocation in reporting the transactions contemplated by this Agreement to any governmental authority (including without limitation the Internal Revenue Service).

## SECTION 3.
## PURCHASE PRICE

The purchase price for the Assets (the "Purchase Price") consists of the Buyer's performance under and payment of all Allowed Claims in full either directly or through the Reorganized Debtor, as set forth in the Creditor Plan as modified or approved in the Confirmation Order, *but in each case* solely to the extent such claims are Allowed Claims as defined in the Creditor Plan and are not Level 2 Subordinated or lower, including the following:

Exhibit 1 - Page 5 of 85

(a)     Buyer will assume the administrative-expense claims and pay them in cash in full in accordance with their terms, either upon confirmation or when they are allowed by the Bankruptcy Court (if later).

(b)     Buyer will assume the secured claims listed on attached Schedule 3(b) and pay them in accordance with the Creditor Plan as approved by the Confirmation Order.

(c)     Buyer will pay the unsecured claims in cash in full within forty-five days after Closing.

(d)     Buyer will assume the executory contracts listed on Schedule 1.1(c) to the extent such contracts are Allowed and deemed valid and binding, subject to such list being modified as set forth in the Creditor Plan or Confirmation Order, and will pay and perform pursuant to the terms of those contracts.   Buyer intends to exercise the buyout options upon the Closing Date for those contracts so referenced on Schedule 1.1(c).

(e)     Buyer will pay the claims for rejection of Contracts not otherwise assumed in full within forty-five days after Closing.

## SECTION 4.
## OTHER AGREEMENTS

At the Closing, (a) Seller will execute a Bill of Sale; and (b) Seller will deliver such other instruments and documents as may be reasonably requested to convey the Assets to Buyer (collectively, with the Creditor Plan and the Confirmation Order, the "Related Agreements").

## SECTION 5.
## SELLER'S REPRESENTATIONS AND WARRANTIES

Seller represents and warrants to Buyer as follows:

5.1.    **Company Existence.** Seller is a limited liability company duly organized and legally existing under the laws of the state of Oregon and is qualified to do business in every jurisdiction in which its conduct of business requires it to. Seller has all requisite corporate power and authority and all material licenses, permits, and authorizations necessary to own and operate the Assets and to carry on its business as now conducted.

5.2.    **Authorization.** The execution, delivery, and performance of this Agreement and all other agreements contemplated by this Agreement to which Seller is a party have been duly authorized by Seller or ordered pursuant to the Confirmation Order. This Agreement and the Related Agreements, when approved by the Bankruptcy Court in the Confirmation Order, will constitute

Exhibit 1 - Page 6 of 85

the legal, valid, and binding obligation of Seller enforceable against Seller in accordance with their respective terms except as the enforceability thereof may be limited by the application of bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally or judicial limits on the right of specific performance. The execution and delivery by Seller of this Agreement and the Related Agreements to which Seller is a party, and the fulfillment of and compliance with the respective terms hereof and thereof by Seller, do not and will not (a) conflict with or result in a breach of the terms, conditions, or provisions of, or constitute a default under, any Contract; (b) result in the creation of any Lien on the Assets; (c) result in a violation of the charter or operating agreement of Seller or any law, statute, rule, or regulation to which Seller is subject; (d) result in a violation of any order, judgment, or decree to which Seller is subject; or (e) require any authorization, consent, approval, exemption, or other action by or notice to any court or administrative or governmental body, other than approval required by the Court in Seller's bankruptcy.

5.3. **Brokers and Finders**. Seller has not employed any broker or finder in connection with the transactions contemplated by this Agreement, or taken action that would give rise to a valid claim against any party for a brokerage commission, finder's fee, or other like payment.

5.4. **Transfer Not Subject to Encumbrances or Third-Party Approval**. The execution and delivery of this Agreement and the Related Agreements by Seller, and the consummation of the contemplated transactions, will not result in the creation or imposition of any valid Lien on any of the Assets, and will not require the authorization, consent, or approval of any third party, including any governmental subdivision or regulatory agency, except the Confirmation Order.

5.5. **Contracts**.

(a) Attached as Schedule 5.5 is a correct and complete list of each of the Debtor's contracts and leases, written or oral, including all modifications, amendments, extensions, and waivers. All such contracts are contained within the Bates-stamped document ranges identified in that schedule, and no other contractual provisions, waivers, or modifications exist.

(b) No power of attorney or similar authorization given by Seller is currently in effect or outstanding. No Contract limits the freedom of Seller to compete in any line of business or with any person.

(c) Each of the Contracts is valid, binding, and enforceable by Seller in accordance with its terms and is in full force and effect. There is no pending or threatened proceeding that would interfere with the quiet enjoyment of any leasehold of which Seller is the lessee or sublessee. All other parties to the

Exhibit 1 - Page 7 of 85

4901127000409344744B

Case 17-60837-tmr11   Doc 472   Filed 11/13/18
Case 17-60837-tmr11   Doc 529   Filed 12/14/18

Contracts have been or will be given notice in the Bankruptcy Case of the assumption or rejection of their contract. Neither Seller nor any counterparty is in breach or violation of any of the Contracts, nor do any facts or circumstances exist that—with the passage of time, notice, or both—would give rise to any such breach or violation.

(d)     With respect to each Contract that is a customer order assumed by Buyer under Section 1.2(a), attached Schedule 1.2(a) describes the total purchase price to be paid by the customer and the amounts received to date.

5.6.     **Litigation**. Except as provided on Schedule 5.6, no action, suit, proceeding, order, investigation, or claim is pending or, to the best of Seller's knowledge, threatened against Seller or its property, at law or in equity, or before or by any governmental department, commission, board, bureau, agency, or instrumentality; Seller is not subject to any arbitration proceedings under collective bargaining agreements or otherwise or, to the best of Seller's knowledge, any governmental investigations or inquiries; and, to the best knowledge of Seller, no basis exists for any of the foregoing.

5.7.     **Compliance with Laws**. Seller has at all relevant times conducted its business in compliance with its articles of incorporation and bylaws, and is and has been in compliance with all applicable laws and regulations. Seller is not in violation of any applicable laws or regulations, other than violations that singly or in the aggregate do not and, with the passage of time, will not have a material adverse effect. Seller is not subject to any outstanding order, writ, injunction, decree, or judgment and Seller has not been charged with, or threatened with a charge of, a violation of any provision of federal, state, or local law or regulation. Seller has, and has provided Buyer with copies of, all Permits necessary to operate its business.

5.8.     **Boat Sale Log**. The boat sale log attached to Schedule 5.8 accurately reflects Seller's boat sales for the period covered.

5.9.     **Absence of Certain Changes**. Since January 1, 2018, and except for the pendency of the Bankruptcy Case, Seller has operated its business in the ordinary course of business and has not experienced any material adverse change in its business or customer relationships. In that time Seller has not modified its policies or practices for collection of accounts receivable.

5.10.     **Labor Matters**.

(a)     Seller is not a party or otherwise subject to any collective bargaining or other agreement governing the wages, hours, or terms of employment of its employees.

Exhibit 1 - Page 8 of 85

Exhibit A
Page 41 of 118

(b)　　　There is no (i) unfair labor practice complaint against Seller pending before the National Labor Relations Board or any other governmental authority; (ii) labor strike, slowdown, or work stoppage actually occurring or, to the best knowledge of Seller, threatened against Seller; (iii) representation petition regarding Seller's employees pending before the National Labor Relations Board; or (iv) grievance or any arbitration proceeding pending arising out of or under collective bargaining agreements applicable to Seller.

(c)　　　Seller has not experienced any primary work stoppage or other organized work stoppage involving its employees in the past two years.

5.11.　**Employment Claims**. Except as disclosed on Schedule 5.11, no claim is pending or, to Seller's knowledge, threatened by or on behalf of any of its employees under any federal, state, or local labor or employment laws or regulations.

(a)　　　**Employee Benefits**. Complete and accurate copies of all pension, retirement, profit sharing, deferred compensation, bonus, commission, incentive, life insurance, health and disability insurance, hospitalization, and all other employee benefit plans or arrangements (including, without limitation, any contracts or agreements with trustees, insurance companies, or others relating to any such employee benefit plans or arrangements) established or maintained by Seller (the "Plans") are attached as Schedule 5.11(a). None of the Plans is a defined benefit pension plan under Title IV of the Employee Retirement Income Security Act of 1974 (ERISA), as amended. Seller has operated all of the Plans in accordance with their terms and all applicable laws. No Plan is unfunded or underfunded.

(b)　　　**Employment Agreements**. Each of Seller's employees is an "at-will" employee and no written employment, commission, or compensation agreement of any kind exists between Seller and any of its employees. Seller has provided all of Seller's employment or supervisory manuals or handbooks, employment or supervisory policies, and written information generally provided to employees (such as applications or notices).

(c)　　　**Documentation of Payroll**. Attached as Schedule 5.11(c) is a list of the names, titles, and hire dates of all persons on Seller's payroll, together with a statement of amounts paid to each during Seller's most recent fiscal year and amounts paid for services from the beginning of the current fiscal year to the Closing, and a schedule of all employee bonus arrangements and other material compensation or personnel benefits or policies in effect.

(d)　　　**Severance**. Seller has no severance pay plan, policy, practice, agreement, or obligation with any of its employees.

Exhibit 1 - Page 9 of 85

AGREEMENT FOR SALE AND PURCHASE OF BUSINESS ASSETS
PAGE 9

Exhibit A
Page 42 of 118
00019700001093472\v8

Case 17-60837-tmr11　Doc 472　Filed 11/13/18
Case 17-60837-tmr11　Doc 529　Filed 12/14/18

5.12. **Tangible Assets**.

(a) **Real Property**. The only real property owned or leased by Seller is the leased facility located at 1385 Antelope Road, White City, Oregon (the "Real Property").

(b) **Personal Property**. A complete and accurate list of all the tangible personal property owned by Seller (the "Tangible Personal Property") is attached as Schedule 5.12(b). The Assets include all the assets, properties, and rights owned or used by Seller in its business.

(c) **Real Property Improvements**. All of Seller's interest in any of the improvements to the Real Property are included in the Assets.

5.13. **Title to and Condition of Assets**.

(a) Seller owns (and at Closing Buyer will acquire) all the Assets free and clear of all Liens other than the Permitted Liens, subject to entry of the Confirmation Order.

(b) Seller has (and at Closing Buyer will acquire) good and marketable title to the Assets.

(c) All Tangible Personal Property has been maintained and operated in accordance with manufacturers' specifications and prudent industry practices, is in a good state of maintenance and repair, ordinary wear and tear excepted, and is adequate for the conduct of Seller's business after the Closing in substantially the same manner as conducted before the Closing.

(d) There are no defects or liabilities affecting any of the Tangible Personal Property that might detract from the value of the property or assets, interfere with any present or intended use of any of the property or assets, or affect the marketability of the property or assets.

5.14. **Intellectual Property**.

(a) Schedule 1.1(g) lists all Intellectual Property owned by Seller. Seller owns or has (and upon Closing, Buyer will own and have) adequate, valid, exclusive, and enforceable rights to use all of its Intellectual Property, free and clear of all Liens. Seller is not bound by any outstanding judgment, injunction, order, or decree restricting the use of its Intellectual Property, or restricting the licensing thereof to any person or entity.

(b) Seller's prior and current use of its Intellectual Property has not and does not infringe, violate, dilute, or misappropriate the intellectual property of any person or entity and there are no claims pending or threatened by any person or

Exhibit 1 - Page 10 of 85

entity with respect to the ownership, validity, enforceability, effectiveness, or use of Seller's Intellectual Property. No person or entity is infringing, misappropriating, diluting, or otherwise violating any of Seller's Intellectual Property, and Seller has not made or asserted any claim, demand, or notice against any person or entity alleging any such infringement, misappropriation, dilution, or other violation.

(c)     Seller has obtained valid invention assignments from each of its employees contributing in any way to Seller's Intellectual Property.

5.15. **Environmental Conditions**.

(a)     **Definitions**. As used in this Agreement,

(i)     "Environmental Law" means any federal, state, or local statute, ordinance, or regulation pertaining to the protection of human health or the environment and any applicable orders, judgments, decrees, permits, licenses, or other authorizations or mandates under such statutes, ordinances, or regulations; and

(ii)     "Hazardous Substance" means any hazardous, toxic, radioactive, or infectious substance, material, or waste as defined, listed, or regulated under any Environmental Law.

(b)     **Compliance**. Seller, Seller's business, and the Assets are in compliance with all Environmental Laws and Seller has all Permits required under Environmental Laws in connection with the construction, ownership, or operation of the Assets and Seller's business. Seller is not aware of and has not received notice of any past, present, or anticipated future events, conditions, activities, investigation, studies, plans, or proposals that (i) would interfere with or prevent compliance by Seller, Seller's business, or the Assets with any Environmental Law or (ii) may give rise to any common-law or other liability, or otherwise form the basis of a claim, action, suit, proceeding, hearing, or investigation, involving Seller, Seller's business, or the Assets and related in any way to Hazardous Substances or Environmental Laws.

(c)     **Hazardous Substances**. No Hazardous Substance has been disposed of, spilled, leaked, or otherwise released on, in, under, or from, or otherwise come to be located in the soil or water (including surface water and groundwater) on or under, the Real Property or any other real property owned, leased, or occupied by Seller in connection with Seller's business now or in the past. None of the Assets have incorporated into them any asbestos, urea formaldehyde foam insulation, polychlorinated biphenyls (in electrical equipment or otherwise), lead-based paint, or any other Hazardous Substance that is prohibited, restricted, or regulated when present in buildings, structures, fixtures, or equipment. All wastes generated in connection with Seller's business are and have been transported to and disposed of at an authorized waste disposal facility in

Exhibit 1 - Page 11 of 85

AGREEMENT FOR SALE AND PURCHASE OF BUSINESS ASSETS
PAGE 11

Exhibit A
040197/00001/9344734v5
Page 44 of 118     Case 17-60837-tmr11     Doc 472     Filed 11/13/18
Case 17-60837-tmr11     Doc 529     Filed 12/14/18

compliance with all Environmental Laws. Seller is not liable under any
Environmental Law for investigation, remedial, removal, or other response costs,
natural resources damages, or other claims (including administrative orders)
arising out of the release or threatened release of any Hazardous Substance at the
Real Property or any other facility, and no basis exists for any such liability.

(d)     **Environmental Records**. Seller has disclosed and made
available to Buyer true, complete, and correct copies or results of any reports,
studies, analyses, tests, monitoring, correspondence with governmental agencies, or
other documents in the possession of or initiated by Seller or otherwise known to
Seller and pertaining to the existence of Hazardous Substances, to compliance with
Environmental Laws, or to any other environmental concern relating to the Assets
or Seller's business.

5.16.  **Receivables**. Each of Seller's receivables (including accounts
receivable, loans receivable, and advances) listed on Schedule 1.1(i), and each of
the receivables arising before Closing, has arisen and will arise only from bona
fide transactions in the ordinary course of Seller's business and will be fully
collected when due, without resort to litigation and without offset or
counterclaim.

5.17.  **Inventories**. Seller's inventories, whether finished goods, work in
process, or raw materials, shown on Schedule 1.1(b) or thereafter acquired are
all items of a quality usable or saleable in the ordinary and usual course of
Seller's business, except for inventory items that are obsolete or not usable or
saleable in the ordinary course of business and that have been written down to
an amount not in excess of realizable market value or for which adequate
reserves or allowances have been provided. The values at which inventories are
carried reflect an inventory valuation policy consistent with Seller's past practice
and in accordance with generally accepted accounting principles consistently
applied.

5.18.  **Accuracy of Representations and Warranties**. None of the
representations or warranties of Seller contain or will at Closing contain any
untrue statement of a material fact, or omits or will at Closing omit or misstate
a material fact necessary in order to make Seller's statements in this Agreement
not misleading.

SECTION 6.
REPRESENTATIONS OF BUYER

Buyer represents and warrants to Seller as follows:

6.1.  **Corporate Existence**. Buyer is a limited liability company duly
organized and legally existing under the laws of the state of Oregon. Buyer has
all requisite corporate or individual power and authority to enter into this

Exhibit 1 - Page 12 of 85

Agreement and the Related Agreements and to perform its obligations under them.

6.2. **Authorization**. The execution, delivery, and performance of this Agreement and the Related Agreements have been duly authorized and approved by the members of Buyer. This Agreement and the Related Agreements constitute valid and binding agreements of Buyer, enforceable in accordance with their terms, except as enforceability may be limited by bankruptcy, reorganization, insolvency, or similar laws affecting the enforcement of creditors' rights or by the application of general principles of equity.

6.3. **Brokers and Finders**. Buyer has not employed any broker or finder in connection with the transactions contemplated by this Agreement and has taken no action that would give rise to a valid claim against any party for a brokerage commission, finder's fee, or other like payment.

6.4. **No Conflict with Other Instruments or Agreements**. The execution, delivery, and performance by Buyer of this Agreement and the Related Agreements will not result in a breach or violation of, or constitute a default under, Buyer's Articles of Organization or Operating Agreement or any material agreement to which Buyer is a party or by which Buyer is bound.

6.5. **Governmental Authorities**. Except for approval by the Bankruptcy Court, (a) Buyer is not required to submit any notice, report, or other filing with any governmental or regulatory authority in connection with Buyer's execution and delivery of this Agreement and the Related Agreements and the consummation of the purchase and (b) Buyer is not required to obtain any consent, approval, or authorization of any governmental or regulatory authority in connection with Buyer's execution, delivery, and performance of this Agreement and the Related Agreements and the consummation of the purchase of the Assets.

6.6. **Accuracy of Representations and Warranties**. None of the representations or warranties of Buyer contains or will at Closing contain any untrue statement of a material fact, or omits or will at Closing omit or misstate a material fact necessary in order to make Buyer's statements contained herein not misleading.

## SECTION 7.
## COVENANTS OF SELLER

7.1. **Seller's Operation of Business Before Closing**. Between the date of this Agreement and the Closing, Seller will:

Exhibit 1 - Page 13 of 85

AGREEMENT FOR SALE AND PURCHASE OF BUSINESS ASSETS
PAGE 13

Exhibit A
0401997/00001/9344734v5
Page 46 of 118     Case 17-60837-tmr11   Doc 472   Filed 11/13/18
Case 17-60837-tmr11   Doc 529   Filed 12/14/18

(a)     Continue to operate the business that is the subject of this Agreement in the usual and ordinary course and in conformity with all applicable laws, ordinances, regulations, rules, or orders, and will use its best efforts to preserve its business organization and to preserve the continued operation of its business with its customers, suppliers, and others having business relations with Seller;

(b)     Not assign, sell, lease, encumber, pledge, or otherwise transfer any interest in or dispose of any of the Assets, whether now owned or hereafter acquired, except for sales of inventory in the normal and ordinary course of business and in connection with its normal operations;

(c)     Maintain all the Assets in their present condition, ordinary wear and tear excepted, and maintain the quality and quantity of inventory at levels normally maintained;

(d)     Provide updates to Buyer of any schedules attached to this Agreement; and

(e)     Notify Buyer promptly in the event of any material change in the Assets, Seller's business, or the financial condition of Seller, or of any breach of a representation or warranty provided in this Agreement.

7.2.     **Employee Matters**. Before the Closing, Seller will not, without Buyer's prior written consent, enter into any material agreement with its employees, increase the rate of compensation or bonus payable to or to become payable to any employee, or effect any changes in the management, personnel policies, or employee benefits, except in accordance with existing employment practices. Seller will undertake all action necessary or appropriate to permit Buyer, if Buyer so desires, to take over Seller's pension and profit-sharing plan as a successor employer, and will cooperate with Buyer with respect to this undertaking.

7.3.     **Assumption of Name**. At the Closing, Seller will take all action necessary or appropriate to permit Buyer to legally commence using the assumed business names RH Boats, RH Aluminum Boats, River Hawk Boats, Fish-Rite Boats, and Ultrasport Boats, including without limitation executing assignments of assumed business name registrations.

7.4.     **Conditions**. Seller will use its best efforts to effectuate the Transactions and to fulfill all the conditions of their obligations under this Agreement and the Related Agreements, and will do all acts and things as may be required to carry out their respective obligations under this Agreement and the Related Agreements.

Exhibit 1 - Page 14 of 85

7.5.  **Confidentiality**. Following Closing, Seller will keep strictly confidential, not disclose to any other party, and not use for any purpose any Intellectual Property or other information related to Seller's business or the Assets, except information that is generally available to the public.

7.6.  **Schedules**. Each of the schedules attached to this Agreement may be modified by Buyer at any time prior to the Closing.

## SECTION 8.
## COVENANTS OF BUYER

8.1.  **Conditions**. Buyer will use reasonable efforts to effectuate the Transactions and to fulfill all the conditions of Buyer's obligations under this Agreement and the Related Agreements, and will do all acts and things as may be required to carry out Buyer's obligations and to consummate this Agreement and the Related Agreements.

8.2.  **Confidential Information**. If for any reason the sale of Assets contemplated by this Agreement is not consummated, Buyer will promptly return to Seller and will not disclose to third parties any confidential information received from Seller in the course of investigating, negotiating, and performing the transactions contemplated by this Agreement. If the Closing occurs and Buyer acquires the Assets, then the existing Nondisclosure and Confidentiality Agreement between Seller and Buyer will automatically terminate.

## SECTION 9.
## CONDITIONS PRECEDENT TO BUYER'S OBLIGATIONS

The obligation of Buyer to purchase the Assets is subject to the fulfillment, before or at the Closing, of each of the following conditions, any one or portion of which may be waived in writing by Buyer:

9.1.  **Bankruptcy Court Approval**. This Agreement must be approved by the Bankruptcy Court as presented and without modification, unless otherwise agreed by Buyer on terms satisfactory to Buyer in its sole discretion. The Bankruptcy Court must have entered the Confirmation Order approving the Transactions in form and substance satisfactory to Buyer in its sole discretion.

9.2.  **No Changes**. The Assets must be in the same condition, ordinary wear and tear excepted, and be of the same quality and quantity, sufficient to conduct Seller's business after the Closing in the same manner as conducted before the Closing. Buyer must be satisfied in its sole discretion with any changes or updates to the schedules to this Agreement provided by Seller. There shall not have occurred any event, occurrence, fact, condition or change that is, or could reasonably be expected to become, individually or in the aggregate,

Exhibit 1 - Page 15 of 85

materially adverse to (a) the business, results of operations, condition (financial or otherwise), prospects, or assets of the Business, (b) the value of the Assets, or (c) the ability of Seller to consummate the Transactions on a timely basis.

9.3.    **Due Diligence**. Buyer must be satisfied in its sole discretion with its due diligence review of Seller's business, including without limitation its communications with Seller's suppliers, customers, and other business relations.

9.4.    **Independent Contractor Agreement**. Buyer must have entered into an independent contractor agreement with Michael Zoller on terms satisfactory to Buyer in its sole discretion.

## SECTION 10.
## CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER

The obligations of Seller to consummate the transactions contemplated by this Agreement and the Related Agreements are subject to the fulfillment, before or at the Closing, of the sole condition that the Bankruptcy Court has entered the Confirmation Order.

## SECTION 11.
## BUYER'S ACCEPTANCE

Buyer represents and acknowledges that it has entered into this Agreement on the basis of its own examination, personal knowledge, and opinion of the value of the business and the representations and warranties made by Seller in this Agreement. Buyer has not relied on any representations made by Seller other than those specified in this Agreement. Buyer further acknowledges that Seller has made no agreement or promise to repair or improve any of the leasehold improvements, equipment, or other personal property being sold to Buyer under this Agreement and that Buyer takes all such property in an "as is" condition, except as otherwise provided in this Agreement.

## SECTION 12.
## RISK OF LOSS

The risk of loss, damage, or destruction to any of the Assets will be borne by Seller before the Closing. In the event of such loss, damage, or destruction, Seller, to the extent reasonable, will replace the lost property or will repair or cause to repair the damaged property to its condition before the damage. If replacement, repairs, or restorations are not completed before the Closing, then the purchase price will be adjusted by an amount agreed on by Buyer and Seller that will be required to complete the replacement, repair, or restoration after the Closing. Buyer may also, at its sole option and notwithstanding any other provision of this Agreement, and on notice to Seller, rescind this Agreement and declare it to be of no further force and effect, in which event there will be no closing of this Agreement and all the

Exhibit 1 - Page 16 of 85

terms and provisions of this Agreement will be deemed null and void. If, before the Closing, any Real Property that is the subject of the leases mentioned in Section 5.12(a) is damaged or destroyed, then Buyer may rescind this Agreement in the manner provided above unless arrangements for repair satisfactory to all parties involved are made before the Closing.

## SECTION 13.
## INDEMNIFICATION AND SURVIVAL

13.1. **Survival of Representations and Warranties**. All representations and warranties made in this Agreement will survive the Closing of this Agreement. The representations and warranties in this Agreement will terminate two years after the Closing Date, and such representations or warranties will thereafter be without force or effect, except for any claim with respect to which notice has been given to the potentially indemnifying party before such expiration date.

13.2. **Seller's Indemnification**.

13.2.1 Seller agrees to indemnify, defend, and hold Buyer, its successors, and assigns harmless from and against any and all claims, liabilities, obligations, costs, expenses, and reasonable attorney fees (collectively, "Damages") arising out of or related to:

(a)     Any breach or inaccuracy of any representation or warranty of Seller made in this Agreement or any Related Agreement;

(b)     Any failure by Seller to perform any covenant required to be performed by it pursuant to this Agreement or any Related Agreement; and

(c)     Any liability or obligation of Seller arising out of or in connection with the ownership, use, condition, maintenance, or operation of Seller's business or the Assets by Seller or its members on or before the Closing, except for the Assumed Liabilities.

13.3. **Buyer's Indemnification**. Buyer agrees to defend, indemnify, and hold harmless Seller from and against all Damages arising out of or related to:

(a)     Any breach or inaccuracy of any representation or warranty of Buyer made in this Agreement or any Related Agreement;

(b)     Any failure by Buyer to perform any covenant required to be performed by it pursuant to this Agreement or any Related Agreement; and

(c)     Any Assumed Liability.

Exhibit 1 - Page 17 of 85

AGREEMENT FOR SALE AND PURCHASE OF BUSINESS ASSETS
PAGE 17

Exhibit A
(2~~~~~~~~~344734v5

Page 50 of 118    Case 17-60837-tmr11    Doc 472    Filed 11/13/18
Case 17-60837-tmr11    Doc 529    Filed 12/14/18

## SECTION 14.
## CLOSING

14.1. **Time and Place**. The Transactions will be consummated (the "Closing") effective immediately and automatically, without further action by any party, upon entry of the Confirmation Order in the Bankruptcy Case (the date the Confirmation Order is entered, the "Closing Date").

14.2. **Obligations of Seller at Closing**. Upon the Closing, Seller will deliver to Buyer the following:

      (a)     Bills of sale, assignments, properly endorsed certificates of title, and other instruments of transfer, in form and substance reasonably satisfactory to counsel for Buyer, necessary to transfer and convey all of the Assets to Buyer;

      (b)     Physical possession of (i) the tangible personal property included in the Assets, and (ii) IT hardware containing the intangible personal property included in the Assets; and

      (c)     Such other certificates and documents as may be called for by the provisions of this Agreement.

14.3. **Buyer's Obligations at Closing**. Upon the Closing, Buyer will deliver to Seller any certificates and documents as may be called for by the provisions of this Agreement.

## SECTION 15.
## RIGHTS AND OBLIGATIONS SUBSEQUENT TO CLOSING

Reorganized Debtor will retain all of Seller's records and provide copies to Buyer as requested by Buyer.

## SECTION 16.
## TERMINATION OF AGREEMENT

16.1. **Right of Parties to Terminate**. Prior to Closing:

      (a)     This Agreement may be terminated by Buyer if Seller breaches any of its obligations under this Agreement in any material respect and fails to cure such breach following written notice of at least 10 days.

      (b)     This Agreement may be terminated by Seller if Buyer breaches any of its obligations under this Agreement in any material respect and fails to cure such breach following written notice of at least 10 days.

      (c)     This Agreement may be terminated by Buyer if the Closing fails to occur on or before December 31, 2018.

Exhibit 1 - Page 18 of 85

AGREEMENT FOR SALE AND PURCHASE OF BUSINESS ASSETS
PAGE 18

Exhibit A
4836-0461-9001/9344734v5
Page 51 of 118     Case 17-60837-tmr11   Doc 472   Filed 11/13/18
                         Case 17-60837-tmr11   Doc 529   Filed 12/14/18

16.2. **Effect of Termination**. If Buyer decides to terminate this Agreement pursuant to Section 16.1, it will promptly give written notice to Zoller of such decision. In the event of a termination of this Agreement, the parties to this Agreement will be released from all liabilities and obligations arising under this Agreement with respect to the matters contemplated by this Agreement, other than for damages arising from a breach of this Agreement.

## SECTION 17.
## MISCELLANEOUS PROVISIONS

17.1. **Amendment**. This Agreement may be modified (only with Buyer's consent) pursuant to the terms set forth in any modification of the Creditor Plan or as set forth in the Confirmation Order.

17.2. **Assignment**. Neither party may assign this Agreement or delegate its duties without the prior written consent of the other party, which will not be unreasonably withheld. Any attempt to assign without the other party's consent will be void and will give the non-assigning party the right to immediately cancel and terminate this Agreement. Notwithstanding the foregoing, Buyer may assign this Agreement to one or more affiliated entities, and Buyer may direct which entity takes title to which Assets at the Closing, although any such assignment will not relieve Buyer of its obligations under this Agreement.

17.3. **Attorney's Fees**. In any dispute arising out of or relating to this Agreement, the prevailing party will be entitled to recover its reasonably incurred attorney's fees and other expenses, including without limitation paralegal fees, deposition recording and transcription fees, expert witness fees, and copying costs, together with all other amounts provided by law, including in any appellate or bankruptcy proceeding.

17.4. **Binding Effect**. This Agreement will be binding on and inure to the benefit of the parties and their respective heirs, personal representatives, successors, and permitted assigns.

17.5. **Counterparts**. This Agreement may be executed in counterparts. Signatures delivered electronically will be effective as originals.

17.6. **Entire Agreement**. This Agreement and the Related Agreements represent the entire agreement between the parties as to their subject matter and supersede all prior agreements, representations, or negotiations.

17.7. **Interpretation**. This Agreement has been presented to and approved by the Bankruptcy Court. No rule of construction or interpretation that disfavors the drafting party will apply to the interpretation of this Agreement. Instead, this Agreement will be interpreted according to the fair meaning of its terms.

Exhibit 1 - Page 19 of 85

17.8.  **Governing Law**. This Agreement will be governed by and construed according to the laws of the State of Oregon, without reference to its conflict-of-laws principles.

17.9.  **No Third-Party Beneficiaries**. This Agreement is for the sole benefit of the parties and their successors and permitted assigns. This Agreement is not intended to, and will not, confer any right upon any other person or entity except as set forth in the Creditor Plan or Confirmation Order.

17.10.  **No Waiver**. No waiver will be effective unless it is in writing, signed by the waiving party. An effective waiver will be limited to the circumstances described, and will not be deemed a waiver of any other circumstance not expressly identified in the written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise or delay in exercising any right will be a waiver, nor will any single or partial exercise of any right prevent any other or further exercise of that or any other right.

17.11.  **Notices**. Any notice, waiver, or consent required or permitted under this Agreement must be in writing and will be effective upon the earliest of: (a) personal delivery; (b) one business day after being deposited with an overnight courier (such as UPS or FedEx); or (c) three business days after being deposited with the U.S. Postal Service, certified mail, return receipt requested; in each case addressed as follows:

**To Buyer:**

BlueEarth Marine, LLC

_____

_____

Attn: Travis Hamlyn

**To Seller:**

Ameriflex Engineering, LLC

_____

_____

Attn: Michael Zoller

*with a copy to:*

Tonkon Torp LLP
888 SW Fifth Ave., Ste. 1600
Portland, OR 97204
Attn: Tim Conway

*with a copy to:*

The Law Offices of Keith Y. Boyd
724 S Central Ave Ste 106
Medford, OR 97501

17.12. **Severability**. Each provision of this Agreement is severable. If any provision is unenforceable, then the Agreement will be reformed to the narrowest extent necessary to render it enforceable consistent with the parties' original intentions.

Exhibit 1 - Page 20 of 85

040197/00001/9344734v5

17.13. **Venue; Jury Waiver**. All disputes arising out of or relating to this Agreement will be subject to the exclusive jurisdiction of the Bankruptcy Court or, if the Bankruptcy Case is closed, then the State and Federal courts in Portland, Oregon. The parties waive any right to trial by jury in any such proceedings.

\* \* \* \*

**Attachments**:
Schedule 1.1—Permitted Liens
Schedule 1.1(a)—Equipment
Schedule 1.1(b)—Inventory
Schedule 1.1(c)—Assumed Contracts and Leases
Schedule 1.1(d)—Leasehold Improvements
Schedule 1.1(e)—Purchase Orders
Schedule 1.1(g)—Intellectual Property
Schedule 1.1(i)—Accounts Receivable
Schedule 1.1(k)—Retained Claims
Schedule 1.2(b)—Pending Customer Orders
Schedule 1.2(c)—Pending Inventory Orders
Schedule 1.2(d)—Dealer Rebates
Schedule 1.2(f)—Obligations to Employees
Schedule 5.5—List of All Contracts and Leases
Schedule 5.6—Litigation
Schedule 5.8—Boat Sale Log
Schedule 5.11(c)—Employee Roster
Schedule 5.12(b)—Tangible Personal Property

*[Signature page follows]*

Exhibit 1 - Page 21 of 85

Exhibit A
Page 54 of 118

00110700/60/93472348

DocuSign Envelope ID: 0D5B290E-468C-4AEE-A0BC-176AFAB7B298

**BUYER:**     BLUEEARTH MARINE, LLC

By: _Travis Hamlyn_____

Name: Travis Hamlyn

Title: President


**SELLER:**     AMERIFLEX ENGINEERING LLC

By: _____

Name:

Title:


Exhibit 1 - Page 22 of 85

## SCHEDULES

These Schedules are part of the Agreement for Sale and Purchase of Business Assets (the "Agreement") between BlueEarth Marine, LLC, an Oregon limited liability company ("Buyer"), and Ameriflex Engineering LLC, an Oregon limited liability company ("Seller"). Capitalized terms used but not defined in these Schedules have the meanings given in the Agreement or the Creditor Plan. References to documents labeled "AMRFLX" mean the documents with such labels that were produced from Debtor to Buyer.

Exhibit 1 - Page 23 of 85

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 1

040197/00001/9438588v2

Exhibit A
Page 56 of 118    Case 17-60837-tmr11    Doc 472    Filed 11/13/18
Case 17-60837-tmr11    Doc 529    Filed 12/14/18

## Schedule 1.1—Permitted Liens

The following are the Permitted Liens, but solely to the extent set forth in the Creditor Plan as approved by the Confirmation Order in the Bankruptcy Case:

| Filing No. | Secured Party |
|---|---|
| 8825905 | Wells Fargo Commercial Distribution Finance, LLC |
| 89200780 | First Interstate Bank, as successor to Bank of the Cascades |
| 89913557 | Pacific Diamond & Precious Metals, Inc. |
| 89913564 | CAMCO, LLC |
| 2015 Dodge 1500 Vehicle Title | CAMCO, LLC |
| 2015 Dodge Ram 3500 Vehicle Title | Rogue Credit Union |

Exhibit 1 - Page 24 of 85

040197/00001/9438588v2

## Schedule 1.1(a)—Equipment

The equipment assets include items on attached AMRFLX003039–003042. Without limiting the foregoing, the "Assets" also include:

1. all assets visible in the attached photographs that are expressly identified in the Photo Reference Sheet attached as Appendix A (the "Photo Reference Sheet")

2. all assets visible in the videos on the attached thumb drive that are expressly identified in the Video Summary attached as Appendix B (the "Video Summary");

3. all assets on Schedule 1.1(d) and 5.12(b);

4. assets identified on the "2017 Personal Property Owners Report" attached as Appendix C;

5. assets or photos attached as AMRFLX002515;

6. one 100 CFM 25 horse power air compressor acquired per paragraph 6 of Declaration of Philip A. Cam in support of Debtor's Motions [ECF No. 125]; and

7. assets identified by an inventory to be conducted.

Exhibit 1 - Page 25 of 85

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 3

# Attachment to Schedule 1.1 (a)

| ITEM | QUANTITY |
|------|----------|
| 10' SHEAR | 2 |
| 12" CHOP SAW | 3 |
| 14" BANDSAW | 3 |
| 16" BANDSAW | 2 |
| 20" BANDSAW | 1 |
| 250 TIG WELDER | 1 |
| 250 STEEL WELDER | 1 |
| 300 Miller Syn-cro wave | 1 |
| 250 Miller WELDER | 2 |
| 252 Miller POWER SOURCE W/ 30A SPOOL GUN | 2 |
| 350P Miller WELDER 1 disabled | 4 |
| 4 1/2" ANGLE GRINDER | 24 |
| 5' SHEAR | 1 |
| 50' AIR HOSE | 44 |
| 50' EXTENSION CORD | 50 |
| 5'X7' STEEL TALBE | 1 |
| 7 1/2" ANGLE GRINDER | 7 |
| 8 LB HAMMER | 1 |
| A-FRAME LIFT | 2 |
| AIR CHISEL | 2 |
| AIR COMPRESSOR  2 working / 2 disabled / | 5 |
| AIR CONDITIONER | 3 |
| AIR DRILL | 6 |
| AIR DRYER | 1 |
| AIR NOZZLE | 30 |
| AIR REGULATOR (PAINT) | 4 |
| AIR RIVET GUN | 4 |
| AIR STAPLER | 4 |
| ANGLE DIE GRINDER | 3 |
| BANDING MACHINE | 1 |
| BELT SANDER | 3 |
| BENCH GRINDER | 3 |
| BENCH VISE | 2 |
| BOAT CART (LARGE) | 7 |
| BOAT CART (SMALL) | 48 |
| BOAT TRAILER CART W/ WRENCHES/IMPACT DRIVER | 1 |
| BONDO HOG | 1 |
| BOW WRAP TEMPLATES | 10 |
| BOX FAN | 2 |
| CART (PAINT DEPARTMENT) | 3 |
| COBRA/ATIC PUSH-PULL WIRE FEEDER | 1 |
| CORD REEL | 3 |

AMRFLX003040

Attachment to Schedule 1.1 (a)

| ITEM | QUANTITY |
|------|----------|
| CORDLESS IMPACT DRIVER 1/4" | 1 |
| CORDLESS IMPACT DRIVER 3/8" | 1 |
| CP-200 W/ 1LB 30A SPOOL GUN   1 disabled | 2 |
| CP-200 W/ 30A SPOOL GUN | 1 |
| CP-302 POWER SOURCE | 1 |
| CUT TABLE | 6 |
| CUTTING TORCH | 1 |
| DA SANDER | 16 |
| DEADBLOW HAMMER | 8 |
| DIE GRINDER | 5 |
| DIE STORAGE RACK (PRESS) | 1 |
| DRIFT BOAT JIG | 2 |
| DRILL BIT SET | 5 |
| DRILL PRESS | 3 |
| DROP LIGHT | 4 |
| DRYING RACKS (PAINT) | 3 |
| ELECTRIC DRILL | 4 |
| ELEVATED BOAT STAND | 4 |
| EXTRUSION STORAGE RACK | 1 |
| FILING CABINETS | 13 |
| FLOOR FAN | 7 |
| FLOOR JACK | 8 |
| FORKLIFT - HYSTER MODEL H110XL | 1 |
| FORKLIFT - TOYOTA MODEL 7FGCU35-BCS | 1 |
| GANTRY CRANE | 1 |
| GENERATOR (102KW) WHITE DIESEL MOTOR | 1 |
| GLUE SPRAYER | 1 |
| GRINDER W/ BUFFING WHEEL | 1 |
| HAND OPERATED CORNER SHEAR | 1 |
| HAND TRUCK | 4 |
| HYDRAULIC BOTTLE JACK | 2 |
| HYDRAULIC PORTA POWER | 3 |
| HYDRAULIC TUBING BENDER | 2 |
| JACK STAND | 70 |
| JET 35 TON PRESS | 1 |
| JIB CRANE | 2 |
| JIG | 9 |
| JIG SAW | 6 |
| LADDERS (2- 4', 2-8', 1-10') | 5 |
| LARGE LONG PLATFORMS W/ STEPS | 5 |
| LARGE | 22 |

AMRFLX00304l

## Attachment to Schedule 1.1 (a)

| ITEM | | QUANTITY |
|---|---|---|
| LARGE STORAGE RACK | | 3 |
| LAYOUT TABLE | | 4 |
| LIFTING CHAIN SET | | 1 |
| LIFTING STRAP | | 15 |
| LODGETOP JIG | | 1 |
| MAN LIFT CAGE (FORKLIFT ATTACHMENT) | | 1 |
| MASKING PAPER ROLLER | | 2 |
| MILLER 200C POWER SOURCE | | 1 |
| MISC STORAGE RACK PARTS | | 1 |
| MK COBRA WELDER | | 2 |
| OFFICE COMPUTER | | 9 |
| OFFICE DESK | | 15 |
| PACIFIC 150 TON BRAKE, CNC W/ BACK GAUGE' Att. to build. | | 1 |
| PACIFIC 600 TON PRESS BRAKE NON CNC Att. to build. | | 1 |
| PAINT BOOTH (LARGE) 19'X44'  Att. to build. | | 1 |
| PAINT BOOTH (SMALL) 15'X25'  Att. to build. | | 1 |
| PAINT GUN | | 5 |
| PAINT MIXING ROOM | | 1 |
| PALLET JACK | | 1 |
| PARTS RACK (PRESS) | | 1 |
| PIPE CLAMP | | 40 |
| PLASMA TABLE FASTCUT CNC 8'X20' (OBSOLETE) | | 1 |
| PNEUMATIC ANGLE GRINDER | | 3 |
| PNEUMATIC LONG BOARD SANDER | | 3 |
| PNEUMATIC SANDER | | 5 |
| PORTABLE PLASMA CUTTER... 1 disabled | | 2 |
| PORTER CABLE LASER LEVEL | | 1 |
| ROLLER | | 1 |
| ROLLER TABLE | | 1 |
| ROLLING LADDER | | 1 |
| ROLLING LIGHT | | 2 |
| ROUTER | | 3 |
| SAWSALL | | 3 |
| SCAFFOLDING | | 1 |
| SEWING MACHINE | | 3 |
| SHOP VAC | | 7 |
| SIDE SUPPORT JIGS | | 8 |
| SMALL TOOL CART | | 6 |
| STACKABLE CHAIRS          plastic | | 50 |
| STAND FAN | | 7 |
| STEEL CHOPSAW | | 1 |
| STEEL SAW | | 18 |

AMRFLX003042

4

Attachment to Schedule 1.1 (a)

| ITEM | QUANTITY |
|---|---|
| STORAGE RACK FOR BOAT SIDES | 5 |
| STORAGE SHELVES | 18 |
| TABLE SAW | 1 |
| TOOL STORAGE CABINET | 6 |
| TRAILER DOLLY | 1 |
| TRAILER STACKER (FORKLIFT ATTACHMENT) | 1 |
| USED TRAILER | 1 |
| VACUUM SHEET METAL LIFTER | 1 |
| VINYL TABLE W/ MATERIAL RACK | 2 |
| VISE GRIP/LOCKING PLIARS | 200 |
| WALLMOUNT FAN | 9 |
| WELDING SCREEN | 14 |
| WORK BENCH / TOOL CART (LARGE) | 4 |
| WORK BENCH / TOOL CART (SMALL) | 6 |
| WORMDRIVE SKILSAW | 4 |
| 2015 Dodge PU 1500 | 1 |
| 2015 Dodge PU Crew Cab | 1 |
| 2004 GMC C5C Tiltbed | 1 |
| 1993 Triple Axle Tommy Trailer | 1 |
| 1989 assembled trailer from old mobile home | 1 |

\* Vehicles owned by Debtor as stated by Mr. Cam and as demonstrated on 2017 Company tax return

\*\*

Exhibit A
Page 62 of 118

Exhibit 1 - Page 29 of 85

# Appendix A to Schedule 1.1(a)

## Photo Reference Sheet

All photo files are on file with Buyer's counsel.

Hose- is meant to include all types of hoses including but not limited to, air, gas, water, electrical, fuel, general rigging

Parts- is meant to include all parts including third party made and Ameriflex made products including, boats, boat accessories, boat options and any other part made for shop equipment or process or in general.

Electrical cords- includes any cord including extension cords, hose reel cords, equipment cords and all include the connections.

WIP- includes work in process and includes Boats, boat parts, boat components, repair, Research and development, prototype and completed parts.

Contents- includes the items contained inside cabinets, drawers or blocked by covers around tables, as well as the visible contents in the photo

Inventory- includes all third party purchased material, raw material, partially completed material, parts and components

Listed equipment- includes all connections, ducting, attachments and accessories, tools, documents used with the piece of listed equipment,

Not listed in photos and also included in requested assets is the mixing room attached to the paint booth.

5825 through 29  Riverhawk Flatbed Tow Truck

5829 Riverhawk white pickup crew cab with boat transport trailer

5830-5833 dodge 1500 white pickup

5834 stairs with walking platforms

5835 Forklift Man Lift

5836-37 Contents of storage area- seats, cushions, racking, equipment, all other contents

5838 air compressor connections and switch

Exhibit 1 - Page 30 of 85

5839-5842 All Jigs

5842 Rolling racking and metal inventory, parts

5843 All contents and inventory

5844 All contents, pallet jack, pallet racking boat inventory

5845 All contents, boat inventory, pallet jack

5846-5847  All contents, plasma table and corresponding equipment, Shear, all connections, metal inventory and parts. Wood table

5848-5849 Leased router table, Jib crane, metal inventory and parts.

5850  Metal desk and cabinet, hand tools, trash cans, cleaning equipment, contents of cabinets and desk, clock and wall mounted equipment

5854  Metal equipment, safety equipment, tape measure, router table equipment (leased) signs, connections

5852 all contents

5853  Leased router table, all contents, racking, metal inventory, part inventory, jib crane, rolling stairs

5854  Jib crane, metal arm for vacuum system on router table, racking, metal inventory, metal parts, stairs

5855 electrical connections, metal bin, stairs, hose

5856  Leased Router model ID

5857 Leased router equipment ID

5858 leased router equipment

5859 trash can, floor fan, signs, fire extinguisher, signs, metal form holders

5860 metal inventory, metal bin

5861  metal rolling racks, chains, racking, metal bin, metal parts, hoist in ceiling, lift attached to hoist

5862 vacuum lift, metal inventory, rolling cart, racking, metal parts, stairs

5863  same as 5862

5864  stairs, racking, boat parts, metal inventory, bins, all contents.

5865 same as 5864

5866 metal inventory and parts, racking, stairs

5867 racking and metal inventory and parts

5868 racking and metal parts,

Exhibit 1 - Page 31 of 85

2

Exhibit A
Page 64 of 118

5869 Racking and metal parts

5870 rolling table, notchers, vertical bandsaw, racking, metal inventory, rolling bins, trash can, wall mounted cabinet, metal inventory and parts rolling metal carts, support stands, all contents, hoses and electrical cords, hand tools,

5871 support stands, power chop saw, vertical hand saw, rolling metal table, circular saw, hand tools, bins, notchers rolling racks all contents, metal parts and inventory

5872 vertical bandsaw, circular sander

5873 Vertical bandsaw JET model JWBS-14CS, stock number 708705, serial number, 02037623

5874 ID for vertical band saw

5875 Circular/ belt sander with metal table, DA/Grinder contents below table, metal parts on wall.

5876 metal wall cabinet, signs, metal inventory, metal parts, desk and shelving, all contents, bin with wood brace, hand tools, sander and table,

5877 notcher, pipe clamps, hoses, metal parts / inventory

5878 power chop saw with table, fans, bin, clamps

5879 ID power chop saw 93596

5880 Metal inventory, metal parks, spill response kit, cabinet and contents, signs, all contents

5881 Rear of Shear

5882 controls for plasma table, plasma table, metal inventory, cords and hoses.

5883 Plasma unit wall mounted with connections, metal support arm, all plasma table equipment and ancillary equipment,

5884 Shear all associated accessories, equipment, and tools

5885 racking, metal inventory, part inventory

5886 rolling cart, metal inventory, metal parks

5887 rolling carts, pallet racking pallets,

5888 racking, metal parts and inventory,

5889 Trash can, fans, racking, metal parts and inventory, power miter saw, all contents

5890 all boat parts and metal, racking

5891 metal racking, metal inventory

5892 racking, metal inventory, bins

5893 racking metal inventory, boat parts

Exhibit 1 - Page 32 of 85

3

5894 racking, metal inventory, boat parts

5895 rolling cart, all contents, rolling carts, boat and trailer, jigs

5896 trailer, stand, boat and trailer

5897 boat carts

5898 boat carts

5899 boat carts

5900 boat carts, boat parts, jigs, contents

5901 Two fork lifts

5902 two fork lifts

5903 two fork lifts

5904 two fork lifts

5905 rolling carts

5906 rolling cart

5907 rolling carts, jigs, metal parts, metal inventory,

5908 cold saw, push broom, all contents

5909 support stand, press, equipment, racking, all contents, push broom

5910 racking, metal inventory, metal parts, rolling caster card, cabinet and contents

5911 wood cabinet with contents, two welders

5912 7 welders, welding hoses, guns, accessories and ancillary equipment, all contents

5913 all welders and welding supplies, equipment, and parts

5914 welders, hoses, guns all parts and pieces, carts

5915 welder

5916 metal cabinet with spill kit and contents

5917 shelving, contents, welding wire, tanks, hand truck, pipe clamps, signs, welding supplies, all contents

5918 large volume gas tank. Wheelbarrow

5919 trash can, metal cabinet with contents, signs, sds sheets and wall mount, boat parts and metal inventory, all contents, fan, all contents of office

5920 Press brake, metal table, overhead lighting, hoists, all connections and switches

Exhibit 1 - Page 33 of 85

4

5921  same as 5920

5922 rear of press brake

5923 jib crane, hoist, chain and hook, lifting strap, racking, bollards, press brake dies,

5924 press  brake dies, racking, metal inventory, boat parts, press brake, all connections

5925 Boat WIP, welding screens, boat cart,

5926 jib crane, metal inventory, metal parts, bollards, all connections, all contents,

5927 rolling cart and contents, clamps, metal table, press brake, dies, all connections, overhead lights

5928  Forklift, propane bottle, all contents, racking, boat parts

5929  Press brake

5930  Fork Lift, boat parts, racking, dies, press brake

5931  Press Brake ID

5932  racking boat parts, metal inventory, bins, fire extinguisher

5933, metal patterns, parts, inventory, racking and hooks

5935 racking, metal inventory, boat parts, power chop saw, patterns, jigs, stool, push brooms, water heater is excluded

5936  racking, rolling table, aluminum stool, bin, yellow racking, metal parts and inventory, jigs, patterns, signs

5937 racking, stool, boat parts, metal inventory, signs

5938  shear, welding screen, all equipment, signs

5939 WIP, boat parts, binders, bollards, , shear, wall mounted metal cabinet and contents, regulators, signs, racking, boat parts, metal inventory, racking

5940  all tools, all contents, clamps, death saws, man eaters, pipe clamps, welder, welding hose and gun and cart, rolling table, shelving and cabinet, hand tools, drill, 2nd welder, welding hose cart and gun, boat parts, metal inventory, welding screen, fans,

5941 miller dynasty 350 welder with cooler, welding screen metal table/stool, boat parts

5942  Welder ID Serial Number MF050300L

5943 welder, cart, water cooler, hoses, welder accessories and equipment

5944 belt sander, metal cabinet and contents, fans, table, WIP fuel  tank, drill press, boat parts and metal inventory, metal stiffeners, all connections and regulators, fire extinguishers, signs, metal stool, all contents

5945  shelving and cabinet, table, tools, clamps, contents of shelving and cabinets, grinders, death saw, man eater, boat parts, metal inventory, welder, desk and contents.

Exhibit 1 - Page 34 of 85

5

Case 17-60837-tmr11    Doc 472    Filed 11/13/18
Case 17-60837-tmr11    Doc 529    Filed 12/14/18

5946 racking and contents, cardboard box with contents, hoses and connections, metal stool

5947-5948 belt sander ID

5949 belt sander, regulators, metal boat parts, red wall mounted cabinet

5950 Drill press, fans, all contents, vise, metal table, welder and connections, regulators, welding hoses, guns and carts

5951 welder, clamps, all contents of shelving, boat parts, shelving

5952 front of welder, jack stands

5953 WELDER ID Serial Number MC380120N

5954 Welder miller 350P, welding hose, gun, cart, regulator, hoses, electrical cords, fans, clamps, metal racking and inventory and parts.

5955 miller serial number MC162453N

5956 pipe clamps, rolling cart, contents of cart, all contents, welder, metal parts, racking, regulators, metal tools, come a longs, circular saw, hand tools, all contents, shop made metal tools

5957 rolling table, boat part, jig, welding screen, welder, hoses and electrical cords

5958 sop made desk, contents of desk, hand tools, clamps, stool, seats, meatal parts, metal inventory, drill, safety equipment, grinder,

5959 metal stool, bin, table, welding screen, trash can, trash can 2, welder, all contents

5960 welder, trash can, welder leads, hoses guns water cooler.

5961 Miller welder

5962 miller welder, trash cans

5963 vertical bandsaw 18 inch. Jet

5964 Jet 18-inch bandsaw

5965 Boat WIP, welding screens, trash cans, metal stands, metal stairs, clamps, welders rolling tables, boat parts, metal inventory, racking

5966 rolling cutting table, welding screen, fans, all contents, jig, boat WIP, red metal cabinet and contents, hoses, electrical cords, regulators, metal hand tools, safety equipment, clamps, infrared heaters

5967 all contents, signs, metal parts and metal inventory, gas regulators, carts, boat WIP, red cabinets, all contents of rack

5968 Welders X 2, metal parts and inventory, fans, racking, infrared heaters, welding screen, fans, all contents

5969 welder ID

Exhibit 1 - Page 35 of 85

6

5970 Red Cabinet and contents, metal racking, metal parts and inventory

5971 miller 350p, regulators, hoses, electrical cords, boat parts and metal inventory, all welder supplies and tools

5972 welder ID

5973 metal desk and contents, chair, clamps, boat parts and metal inventory, metal stool, all contents

5974 welding screen, infrared heaters, all desks and contents in and on desks. All boat parts and metal inventory

5975 boat WIP, jig, metal inventory, boat parts, welding screen

5976 jig, boat WIP, fans, tools, welders, all welding supplies and accessories, regulators, tools, welding screens, infrared heaters, trash cans, all contents.

5977 boat parts, vertical bandsaw, welding screens, forklift, press brakes, welders, all contents

5978 welding screens, boat WIP, jig, infrared heaters, boat parts, metal inventory, jack stands

5979 Boat Parts, jig, trash can, bins, welding screen, stairs, fans electrical boxes, Boat WIP, tools, rolling carts, rolling tables, heaters infrared, tools, drill press, equipment, all contents

5980 Boat Parts, Welding screens, jigs, trash can, bins, stairs rolling carts and tables, tools, equipment, trash can

5981 bins, clamps, trash cans, jigs, boat parts, chop saw and table, metal rack, metal inventory, boat parts, Wood wall, racking, rolling tables, red wall mounted box and contents, power tools, signs, tools,

5982 Boat parts, vertical bandsaw, bin, welding screens, fans, tables, cords, hoses, jack stands, infrared heaters, stairs, welder, fire extinguisher, signs

5983 wood wall divider, rolling table, power tools, grinder, welder, clamps, table, boat parts, electrical cords, metal inventory, red wall mounted cabinet and contents, fans, fire extinguishers, welding screen, connections, regulators, signs, all contents, welding hoses and guns, clock

5984 Clamps, welder, red wall mounted cabinet and contents, power tools, grinder, circular saw, metal inventory, boat parts, table with contents, welding wire, fire extinguisher, tape, regulators and valves, electrical cords, trip cord cover, racking/hooks

5985 Welder UD MF503018N

5986 Roller machine, fan, metal inventory, sander, metal parts and inventory

5987 roller machine, welder, clamps, table and contents

5988 Welder, table, welding screens

5989 welder ID

5990 Welding Screens, clamps, rolling table, safety equipment, rolling table, welder, contents of table

Exhibit 1 - Page 36 of 85

7

5991  Rolling tables, rolling carts, welding screen, vertical bandsaw, boat parts, metal inventory, boat WIP, fans, tools, equipment, trash cans, bins, stairs

5992 Welding Screen, clamps, metal inventory, fans, vertical band saw, boat parts, come alongs, portable lights, electrical cords, hose

5993  Sawzall, power tools, blades, racking, shelving, come alongs, hooks, fans, welder, electrical cords, metal inventory, metal pieces, welder hose, welder gun, welding wire, signs

5994  Welder, chain, hose, regulators, valves, clamps, hoses, welding hose, welding gun, welding wire

5995  Clamps, rolling table, welding screen, rack, circular saw, grinders, power tools, welding cart, welder, infrared heaters

5996  Vertical Band saw, bin, metal parts, metal inventory,

5997 vertical band saw id

5998  Boats WIP Rolling cart/table, clamps, rolling table, jig, step, paint booth, tools, porta power and accessories,  metal inventory, boat parts, welding wire, tools

5999  Rolling tables, stairs, welding screens, tools, power tools, clamps, welding wire, safety equipment, welder, Boat WIP, bins, vertical band saw, hoses, electrical cords, rolling carts, metal inventory, boat parts,  rolling cart, racking, all contents

6000  welding cart, welder, hose, gun, electrical extension cord, grinders, rolling tool cart and contents, miller welder, metal inventory, boat parts, regulators, clip boards, level, racking and hooks, fire extinguisher, pallet racking and contents, clamps.

6001  Rolling cart, clamps, welding screen, metal inventory, tools contents of cart,

6002  Welder, rolling tool cart, welder cart, metal inventory, metal racking, boat parts, metal inventory, fire extinguisher, clip boards, tools, contents of tool cart, level

6003  Metal inventory, pallet racks, clamps, metal parts, fire extinguisher

6004  pallet racking, clamps, metal inventory, boat parts, fans, vacuum

6005  fan, trash can, bollards, metal inventory, boat parts, trash can, electrical switches and connections attached to equipment.

6006  Boat  WIP, stool, jigs, rolling carts with contents, electrical cords, hoses, welding screens

6007  Stairs, welding screens, Boat WIP, boat parts, metal inventory, paint booth, infrared work area heaters, rolling cats/tables

6008 boat parts, bender machine and cart and associated dies, cutting table, paint booth, hoist, stairs

6009  Stairs, rolling cutting table and contents, boat parts, metal inventory, welding screens, fans, bending machine and stand.

Exhibit 1 - Page 37 of 85

Exhibit A
Page 70 of 118

8

6010  Boat WIP, jig, fans, tools, racking, regulators, welders, trash cans, jack stands, stools, tables, equipment, welding screen, infrared heaters, boat parts, metal inventory, signs, cabinets, tools, power tools

6011 Boat WIP, jigs, fans, infrared heaters, come alongs, racking, cabinets, welders, jack stands, stools, trash cans, welding screen, contents, tools, welding accessories, metal inventory, boat parts,

6012  welding screens, clamps, welder, welding hose and gun, hose, metal inventory, boat parts, racking, signs, cords, jack stands

6013 welder, welding hood and gloves, welding hose and gun, gas hose, welding screens

6014 Welder ID MC162454N

6015  Clamps, bollard, jack stands, metal inventory, parts, hoses, cords, regulators

6016  Table with contents, work table, clamps, level, boat parts, metal  inventory, stool, fans, shelf with contents, welder with cart, red wall mounted cabinet with contents, racking power tools, blades, level, face shields, tools, wire, clip board

6017  Welder, welding cart, welding hose and gun, welding wire, all welders, tables, fans, red wall mounted cabinets, clamps, face shields, contents of tables, metal inventory, boat parts, racking, welding screens, ducting, air lines, hoses, extension cords, tools

6018  welding screens, vertical bandsaw, rolling rack with metal contents, rolling table with contents, bins, metal inventory, boat parts, paint booth with ducting, heaters

6019  welders, hoses, guns, wire, carts, fans, signs, rolling tables with contents, clipboards, racking, metal inventory, boat parts, signs, tools

6020  welders and cart, welding hoses and guns, hoses and electrical cords

6021  welder and accessories, rolling table with contents, regulators, red wall cabinet with contents, air lines, extension cords, chairs, electrical connections and switches.

6022  welder ID

6023  Welder ID MG084020U

6024 welders, cart, reel, hoses, welding leads and guns, racking, jigs, boat parts, metal inventory

6025  Welding Screens, boat parts, metal inventory, rolling racks, tables,  heaters, hoses, contents

6026  Tables, racking, welding screens, carts with contents, metal inventory, boat parts, fans, regulators, chair, extension cords, heaters, tools, clock

6027  paint booths and attached mixing room, tables, welding screens, carts, boat WIP

6028  Boat WIP, welding screen, trailers, stairs, heaters, red wall cabinet with contents, shelving, regulators,

6029  Paint booth with ducting and all associated systems

6030  Boat WIP, paint booth, tools, stairs, hoses, filters

6031  Boat WIP, paint booth, tools, jack stands, boat carts, hoses

6032  filters, stands, parts, hoses,

6033  2nd paint booth, jack stands, hoses, barrel,

6034  Paint booth, floor jack, rolling cart with contents

6035  paint booths, trash can, signs, floor jack

6036  Paint booth, rolling stand, racking,

6037  Boat WIP, eye wash station and cart, tools, hanging curtain and tracks, hoses, hooks, trash cans, bins, first aid kits,

6038  Boat WIP, boat carts, hanging curtains, wall mounted cabinets and contents, hoses, cords, tools

6039  Black cabinet with contents, heater and propane tank, metal boxes with foam, contents of shelving, jack stands

6040  Hotsey pressure washer system and acid wash system, all connections an ducting.

6041  acid wash system and tank, hotsey water system, all piping and valves, all ducting

6042  heater, hotsey, equipment, bins, electrical boxes and connections, ducting, electrical panels

6043  same as 6042

6044  all signs, bins, hand pumps, shelving, foam board, contents, cart

6045  Foam Tanks, gas tank, piping and lines with system, heater, shelving, foam accessories

6046 Foam inventory, containers

6047  Boat WIP, hose reels, heaters, boat parts, metal inventory, tables, fans, tanks, trash cans, tools, white boards, racking, signs, floor jacks, boat cats, vacuum, hose lines,

6048  same as 6047

6049  Boat WIP, boat parts, metal inventory, tanks, cabinets with contents, tables, stools, vacuum, racking, hose reel, heaters, hand truck, hoist, jib crane, contents of cardboard boxes

6050  floor jack, water tank and piping, jib crane, hoist, racking, boat parts, metal inventory, cabinets with contents, hand truck, heaters

6051  tools, racking, hoses, metal inventory, boat parts, tools, wall mounted containers with contents, bins, trash cans

6052 cabinets with contents, tables with inventory, hand truck

6053  cabinets with contents, hand truck, water tank and piping and connections, jib crane, hoist, bollards

6054  Boat WIP, boat parts, racking,  inventory, table and contents, racking and contents

6055  hanging curtains, tanks and equipment, jack stands, stands,

6056  fork lift, pallet racking, engines, grey cabinet with contents

All contents of racking,

6057  engines, forklift, pallet racking, contents of pallets and pallet racking

6058  contents of pallets and pallet racking, fork lift, grey cabinet with contents

6059  engines, fork lift

6060  pallet racking with contents

6061  paint booth fire system, rack ladder, hoist cart, signs ducting

6062  hoist with rolling cart, Boat WIP, welding screens, stairs, heaters, fire system and all connections for paint booth, boat carts, boat parts, metal inventory, rolling carts

6063  Boat WIP, heaters, welding screens, shelf and contents, wall mounted cabinets with contents, regulators

6064  Boat WIP, heaters, shelving and contents, hose reels, floor jacks, regulators, signs, fire extinguishers, heaters, contents of pallet racking and shelving.

6065  vise, clamps, contents of shelving and shelving, patterns, metal items on wall, face shield, tools, hose reel, metal attachment to wood counter, white table,

6066  Pallet racking and shelving including contents, foam, stairs, rolls of inventory,

6067   cutting table with contents, boat stands, power tools, sander, upholstery and carpeting and flooring inventory, racking, tables, hose reels, trash cans, cabinets with contents, extension cords, hoses, tools and inventory

6068  wood inventory, jack stands, rolling carts, tables, boat stands, stairs, Boat WIP, hose reels, hoses, electrical cords, inventory and parts, trash cans, heaters

6069  sander, bins, dust collection, racking and tables, inventory, fire extinguisher, metal patterns and items hanging on wall, blades, tools, hose reels, boat parts, metal inventory

6070  Stairs, tables, wood inventory and parts, circular saw, level, pallet racking, carts, trash can, Boat WIP, racking, hoses, electrical cords, jack stands,


6071   pallet racking, wood inventory and parts, hose reels, shelving with contents, table with contents, tools, circular saws, hoses, electrical cords, lighting, jig saw, rolling cart, tool belt, hearing protection, heaters, matts

6072  shelving with contents, hose reels, patterns, hoses and filters, electrical cords, tools, inventory, lighting with rack and shelving, metal items and patterns

Exhibit 1 - Page 40 of 85

11

6073 metal patterns, tools, fire extinguisher, all covering inventory, racking, contents under table, signs

6074 wood inventory, hose reel, pallet rack, tools, face shield, contents of shelving, table with contents, power tools, safety glasses, inventory, clip boards, wood parts, table, shelf with light,

6075 pallet rack, tools, wood inventory and pallets, hose reel and hose, face shield, metal table with contents, wood parts,

6076 Power miter saw and table, inventory of rolls of material and racking, bins, boat parts,

Racking with contents

6077 racking with contents

6078 Wood inventory and parts, rolling carts, hose reels, pallet racking, tools, ladder, racking and contents, boat top parts, stairs

6079 stairs, shelving with contents, foam seats rolls of material, wood bases

6080 Boat WIP, boat carts, racking and hooks with contents, work lighting, shelving with contents, jack stands, boat stands, metal stool, trash cans, stairs, blades

6081 boat WIP, boat stand, boat cart, ladder, cubby with counter and contents, racking with contents, boat parts, boat inventory canvas top parts

6082 Wood and flooring inventory and racking.

6083 boat WIP, stairs, stool, boat cart, boat stand, cubby and counter with contents, power chop saw, work light, racking with contents, hooks with contents

6084 ladder, power miter saws and table with cubbies and contents.

6085 Power miter saw, grinder/brush power unit with light, work light, cubbies and counters with contents, stairs, work table with contents, hooks with contents, blades, straps, clamps, bins

6086 stairs, carpeted box, work light, grinder, power tool with charger, contents of cubbies, work table and contents, racking with contents,

6087 vise, grinder with light, shelving with contents, inventory for top production, work table with contents, hooks and shelf with contents trash can

6088 rack with roll inventory and contents, all inventory, fans, hooks with contents, trash cans, contents of table

6089 stairs, carpeted box, boat WIP, racking with contents, counters with cubbies and contents, power chop saw, clamps, racking with contents, blades, steamer, tool bins with contents

6090 Hand tools, cubbies and counter top with contents, power chop saw, stairs

6091 bin with contents, racking and inventory

6092 fans, face shield, hooks with contents, upholstery/ canvas roll of material, stereo, table with contents on and below it. Trash cans Stand for fan. Boat parts.

Exhibit 1 - Page 41 of 85

6093 Sewing Machine with stand and thread inventory, work table with cubbies and contents,

6094 Roll racking with inventory, cubbies and table with contents, floor jack,

6095 fan, vertical band saw, power chop saw, fire extinguisher, inventory, belt sander and stand, pallet racking with contents, extra blades, fire extinguisher, pallet with contents

6096 fan, pallets with contents, all inventory, pallet racking with contents, seats,

6097 pallet racking with contents

6098 shelving with contents, seats, bulkhead display, pallet racking with contents, rolling carts, pallet with contents, all boat inventory

6099 vertical band saw, trash can, belt sander power miter saw

6100 Grizzly band saw id serial number 10110205

6101 Stickers on Band saw

6102 belt sander and stand, extra blades and rack with contents

6103 power chop saw with table and stand, boat parts, blades, metal inventory

6104 Seat inventory, pallet racking with contents

6105 pallet racking with Springfield inventory and contents, loose contents and inventory, pallet racks and shelving

6106 Boats WIP and completed

6107 Racking, engines, pallet racking, engine carts/racks, wood crates with contents, all loose contents

6108 Wood crates with contents, display board, bulkhead display, loose contents

6109 Wood crates with contents, loose parts and inventory

6110 Pallet racking with contents, wood crates with contents, loose parts and inventory, glass inventory

6111 engine rack and carts, tank, shelving with contents, pallet racking with contents, wood crate with contents, loose contents on shelfing

6112 Boat WIP/Completed, pallet racking with shelving with contents, loose boat parts and inventory on floor and on pallets

6113 stairs, chair, desk with contents, rolling tool box with contents trash can, fans, jack stands,

6114 rolling tool box with contents, stereo counter and shelving with contents, electrical boxes for equipment, tools, fans, chair, loose parts and inventory, boat stands, heater with racking

6115 counter with contents and shelf with contents, boat stands, trash cans, rolling tool cart, fans, vacuum, cubbies with contents

6116 tables with contents, loose boat parts and inventory, matts, hoses, electrical cords, shelves with contents, stereo, fans, heater with rack, trash can, tool boxes, carts, stool.

6117 seat, tempress inventory, seat inventory, metal box inventory, pallet racking with contents

6118 pallet racking with inventory, seat stands, box inventory, stairs, fuel tank, seats

6119 shelving with contents, finished and WIP tanks and boxes, loose inventory, carts, stairs, fuel tanks, seat stands, loose parts and inventory

6120 Electrical cords, cart with counter and contents, power tools, vise work table with contents, stool work counter and shelf with contents, heaters with racks, shelving with contents, cubbies with contents, bins with contents, power tools, sanders, die grinders

6121 stairs, metal inventory, boat part inventory,

6122 rolling rack with counter and contents, jack stands, saw horses, work lighting, rolling tool box, Boat WIP< work table with contents, hose reels, hoses, electrical extension cords, power tools, cocking guns, stereo, contents on counter

6123 Foam blocks, boat parts and inventory, rolling shelving with counter including contents, boat stands, patters,

6124 rolling metal cabinet with contents, pallet racking with contents, loose contents, rigging hose,

6125 pallet racking with contents, seats, hose inventory

6126 reel rack with contents, hose, glass and glass rack, counter with contents, bins with contents, loose contents on ground

6127 Boat WIP, jack stands, stairs, rolling tool box, counters with contents, work lights, bins, hose reels, vacuum, boat parts

6128 Boat WIP, fans, work lighting, counter with contents, vacuum, rolling tool cart with contents, work table with contents, hose reels, hoses, electrical cords, tools

6129 Work tables with contents, vacuums, stairs, boat parts, chairs, fans work lighting, carts

6130 Stairs, tables with contents, vacuum, rolling table

6131 rolling cart with counter and contents, jack stands, stools work table with contents, work lights, heaters, hose reels loose contents

6132 vacuum, tool box with contents, hose reel, chairs, loose contents, work lights

6133 work table with contents, hoses, loose contents, rolling table, chairs

6134 Table with contents, racking with contents, bins and table with contents, loose contents on floor

6135 table with all bins and contents, loose contents on floor, bins on floor with contents, shelving with contents, respond container with contents, buckets

6136 boxes with contents, shelf with contents, bin with contents, metal tools and items hung on wall, Boat WIP, shelving with contents, metal inventory, metal boat parts, belt sander, vertical band saw

6137 Boat WIP, Trailer, Rolling reel cart with contents, bins, trash cans, Shelving and table with contents, loose contents, boat parts

6138 Reel rack with contents, Shelving and counter with contents, loose contents on floor, stairs, hoses, electrical cords, tools, tool box and contents, rolling table/cart

6139 Rolling cart, counters with contents, hoses, carts with contents, fold up tables, stools, hose reels, work lighting

6140 Stairs, Boat WIP, boat parts, jack stands, reels and contents, racking with contents, vacuum, tool boxes with contents, ladder, trash cans, hoses, electrical cords, shelving with contents

6141 wire rack cart with contents, Boat WIP, trash can, bin, tanks, vertical band saw, batteries, white board, fans

6142 Vertical band saw, grinder, polisher drill press all with stands, hoses, wood box, cart with tanks, hoses, electrical cords, fan cover.

6143 Boat WIP, vertical bandsaw, wood box, grinder with stand, shelving with contacts, metal boat parts, racking with contents

6144 vertical band saw delta SN 93K97904 Cat no 28-245

6145 belt sander info

6146 belt sander ID


6147 bench grinder info

6148 Boat WIP, stairs, rack, vacuum, blowers, wire rack with contents, shelving and counters with contents, tool boxes with contents, table with shelving including contents, tools, safety equipment, boat cart, jack stands, hoses

6149 tanks, white board, batteries, sds binder and rack, bulletin board, templates and patterns, loose contents on floor

6150 Fire extinguisher, loose contents, sings, cabinets with drawers including contents, racking with contents,

6151 Ladder, rolling bin stairs, hoses, trash can, boat parts, metal part, boat stand, Boat WIP, signs

6152 Rolling stand and hose, racking with contents, work table with contents, rack with lifting straps, sign, contents under work table

6153 Boat WIP, work table with contents underneath,

6154 cabinets with drawers and contents, contents on top of cabinets, racking including contents, wet floor sign,

6155 Boat WIP, trailer, stool, work lighting mounted to wall, heaters, bubble wrap and rolls of inventory, work table with contents, hoses, cleaners, patters and templates, shelving with contents

Exhibit 1 - Page 44 of 85

15

6156  Stairs, vacuum, work lighting, ladders, table with contents, welded material on left of phot

6157  stand with equipment, work lighting, vacuum, hoses, tools, racking and hooks, power washer, cleaning Tools, racking with plastic wrap

6158  Boat WIP, trailer, engine, shelving with cubbies and all contents, rolling sea, racking and contents, work lights, hoses

6159 work lighting, Boat WIP, engine, trailer, metal box with contents, heater, loose contents

6160  Work table with contents, metal rack with contents, rolling seat, shelving with contents, patters, racking with contents, hoist with rolling stand, loose contents, hoses, stand with picture

6161  Trailer inventory and parts, wood blocks,

6162 racking with contents, tubing, metal inventory and parts

6163 racking with contents, metal tubing

6164  racking with contents, loose metal inventory

6165 racking with contents, saw horses

6166 racking with metal inventory, blocks of concrete, saw horses, metal tables,

6167 Shipping containers, tooling, trailer inventory, tools, hoses, electrical cords, loose contents, hooks with contents, bins

6168 trailer inventory, loose contents, trailer parts, tires wheels, shipping container, roofing system, wood end cap

6169 shipping container, fire extinguisher, roof system, wood back system, trailer, trailer parts and inventory, loose contents, electrical cords, floor jack, hoses, bins

6170  all trailer inventory, trailer parts, wheels tires, corresponding documents

6171  same as 6171

6172  All trailers, jigs

6173 trailers and jigs

6174, trailers, jigs, metal scrap

6175 Metal bins and scrap metal

6176 all contents, trailer, trailer parts, bins, wheels, tires, tools, floor jack

6177 contents of shipping container, saw horses, table, chairs, racking including contents

6178 contents of shipping container

6179 Contents of shipping container, shelving with contents, trailer parts and inventory, chairs, saw horses,

Exhibit 1 - Page 45 of 85

Exhibit A
Page 78 of 118

16

6180  racking with all contents inside shipping container

6181 Sewing machine and other equipment inside shipping container.  All contents of shipping container

6182 Sewing machines, BBQs, racking with contents, wheels with trailer ball, all contents inside shipping container

040197/00001/9464635v1

Exhibit 1 - Page 46 of 85

Exhibit A
Page 79 of 118

17

## Appendix B to Schedule 1.1(a)

Video Summary

All video files are on file with Buyer's counsel.

Video

The descriptions below do not include any personal items that are unique to the individual working in the office such as family photos and collectables.


20181007-100036    All contents, office chairs, office tables with eagle statue, posters and photos with frames, statue of person in boat, book shelves with contents, brochure rack with contents,

At 3 seconds office desk with contents and all chairs, filing cabinets with contents, photos, racks and wall mounted items with contents, printer/scanner/copier, phone, all equipment, contents on top of filing cabinets, bulletin board with contents.  Calculator, boxes with contents,  recycle and trash bins

At 7 seconds, contents of closet

At 10 seconds photo with frame

At 16 seconds, close up of equipment and contents previously specified, including heaters and other contents seen more clearly,

At 17 seconds, desktop computer, monitor, keyboard mouse, rack with files,

At 21 seconds, close up of bookcase and contents, statues and photos with frames


20181007-10011

Office 1   all desks with contents, chairs, scale, clock, computer, printer,

At 1 second  phones, calculator, printer, trash can, equipment,

At 4 seconds second desktop

At 7 seconds desk with contents, hutch with contents, electronics, box with contents, chair, wood cabinet with printer on top with contents,

At 9 seconds, photo and rack and chair

At 12 seconds Phil Cam Office  conference table, chairs, refrigerator,  book shelves with contents, contents in and on top of counter and cabinets,


Exhibit 1 - Page 47 of 85

1

At 13 seconds, filing cabinets against the wall with contents, cabinet with counter and sink and cabinets above all contents on or inside.

At 15 seconds close up of filing cabinets including contents on and inside

At 18 second, kurige coffee machine, refrigerator, bookshelves with contents, standing cabinet with two doors and drawers connected to desk including all contents.

At 19 seconds close up of conference table and chairs

At 22 seconds, full hutch, standing cabinet, return and desk system including all contents inside and on top of surfaces. Monitors, computer, keyboard, mouse, printer, phone, office supplies and equipment, chair, trash cans, desk chair.

At 24 seconds office chairs

At 27 seconds, large conference table with contents on top and chairs, bookcase with contents and TV including its accessories, photo with frame.

At 29 seconds, Whiteboard with supplies and wood sign

At 36 seconds, framed photo, boxes with contents


20181007-10024

Office 2

Filing cabinets with contents, contents on top of filing cabinet, boxes with contents, book shelves with contents

At 5 seconds, fan, trash cans, desk with contents, chair, shelving with contents, monitor, printer, contents on top of desk, return and cabinet with contents, wall mounted items with contents, white boards, three hole punch, calculator, shredder, bulletin board with contents

At 8 seconds chair and filing cabinets with contents,

At 9 through 11 seconds, filing cabinets with contents and contents on top of filing cabinets.

At 12 seconds chair and trash can

At 14 seconds bulletin board with contents, wall mounted items with contents, posted documents, dmv tags, certificates, licenses

At 22 seconds, IT office area, all IT equipment, server, router, internet and phone equipment, printer

At 24 seconds, table, dresser, IT equipment, AC unit, contents of table, label maker, desk with contents, phone, office chair

At 26 seconds, boxes with contents

At 29 seconds, desks, chairs, laptop computers, monitor, printers, contents of desks, bulletin board with contents, map on wall, calculator, trash receptacle, boxes with contents,

Exhibit 1 - Page 48 of 85

2

Case 17-60837-tmr11   Doc 472   Filed 11/13/18
Case 17-60837-tmr11   Doc 529   Filed 12/14/18

At 36 seconds printer, phones, shelving with contents, paper cutter, hole punch, paper, boxes with contents, recycle container, chair with contents, white board with supplies

20181007-10033

Office 3

Desk with contents, desk chair, computer, monitor, keyboard, fan, wall mounted contents, calculator,

At 3 seconds, chair

At 5 seconds, small desk with contents, printer, binders, bulletin board with contents, clipboard with contents, table with contents, file racks with files,

At 8 seconds, table with board with file racks with contents, aluminum box, office chair, bookcase with contents,

At 09 seconds, book case with contents, binders, hanging wall rack with contents,

20181007-10040

Storage Room

Hanger rack with contents, storage totes/trash can with contents, office chair

At 2 seconds, table with contents, chair, boxes with contents, cooler with contents,

At 3 seconds, desk with contents, boxes with contents, cabinet with contents

At 5 seconds cubicles with contents, office chair bagged items with contents, shelf with contents, extension cord

At 8 seconds, wall mounted racks with contents, hard hats, water cooler with water bottles, aluminum racks,

At 10 seconds counter with contents, microwave

At 12 seconds key box with contents

At 14 seconds chairs

20181007-10043

Dodge Ram 3500 with trailer for transporting boats

Exhibit 1 - Page 49 of 85

20181007-10050

Dodge Ram 3500 with Heavy duty trailer

At 4 seconds 2004 GMC tow truck


20181007-10093

Outdoor storage facility

All contents including seat inventory, pallet racking, boxes with contents,

At 10 seconds, heaters, crates with contents, insulation, foam, parts boxes with contents, pallet racking with contents,

At 25 seconds, contents in rear of storage area including boxes with contents, pallet racking with contents

At 40 seconds, heaters


20181007-10123

Dirty Room

Boat parts,

At 1 second fan, heaters, table

At 5 seconds, carts with contents, stools, rolling seats, jack stands, lights, electrical cords

At 9 seconds, tanks, rolling lights/heaters, material against wall, racks and misc. contents,

At 11 seconds, heavy duty material moving trailer

At 12 seconds, cart with spray board

At 18 seconds, rolling racks, ladders, tools, drum with contents

At 20 seconds shelving with contents,

At 23 seconds, rolling carts with contents, drums with contents, trash cans, wipes, air lines,

At 31 seconds hose reel with contents,

At 36 seconds cart with contents, table with contents, dresser with contents, chair and small table

At 37 seconds table with contents air line

At 47 seconds, cabinet with contents, air lines, paint sprayer/pressure pot, hand truck, tank, jack stand,

Exhibit 1 - Page 50 of 85

4

At 56 seconds, yellow rack

At 1:05 upstairs contents, pallet racking with contents, boxes with contents

At 1:10 boxes with contents, pallet jack, transhield product

At 1:12 pallet of fuel cans

At 1:23 cables and boat inventory, aluminum box with contents, cardboard boxes with contents

At 1:26 pallet with boxes with contents,

At 1:27 boat inventory, boxes with contents, bags with contents

At 1:32 boxes with contents, aluminum boxes with contents


20181007-10173

Router table with equipment arm with vacuum

At 9 seconds, operator desk with contents,

At 11 seconds operator desk with contents, associated router equipment

At 14 seconds associated router equipment


20181007-10324

Small office with white board, shelves with contents, boxes with contents,

At 4 seconds bulletin board with contents, form racks with contents, table with contents, fan/heater

At 6 seconds table with contents, office chair

At 8 seconds welder hoods

At 9 seconds shelving with contents

At 11 seconds shelving with contents continued, tools,

At 13 seconds close up of pneumatic cools, death saws,

At 19 seconds, microwave, table and shelving with contents

At 20 seconds, extension cords,

At 21 seconds power tools

At 22 seconds, chair boxes with contents, filing cabinet with contents


20181007-10333

Exhibit 1 - Page 51 of 85

5

Cabinets outside cage with contents and contents on top

At 5 seconds, gray cabinets with contents, clock, signs,

At 10 seconds, trash can, rolling cart with contents, at 11 seconds, fire extinguisher

At 12 seconds, aluminum parts, wheel barrow


20181007-10435

Equipment area

Welding hood, cabinet with contents, material mounted to wall,

At 1 second, tanks and regulators, tool box with contents, counter with shelves with contents,

At 2 seconds, welders with corresponding equipment

At 8 seconds, drill press, sds rack with binder, shelf with contents, light, wall cabinet with contents, heater

At 10 seconds, ridged job box with contents, rack with hoses and cords and all contents, tool box with table, part room with blue bins and contents,

At 12 seconds table with tool box with contents,

At 18 seconds cabinet with contents and aluminum rack with contents

At 20 seconds room with blue bins with all contents, electrical cords and hoses,

At 28 seconds all containers with contents including bins with contents and shelving with contents

At 30 seconds shelving with contents

At 32 seconds white cabinet with contents

At 36 seconds bins with contents and containers with contents, miller product, bagged product hanging on the wall

At 41 seconds all hanging product on the wall, snap on rolling stool with contents

At 42 seconds all contents including boxes with contents

At 45 seconds white cabinet including all contents

At 47 seconds all contents on top of white cabinet

At 55 seconds cabinet with contents, contents on top of cabinet, tanks, ladder, racks with contents mounted to wall

1:02 grinder

1:08 tanks, cart, cutting torch

Exhibit 1 - Page 52 of 85

6

1:10 all wall mounted items including contents

At 1:14 trash can with rolling cart

At 1:16 all wall mounted racking with contents, all wall mounted shelving with contents, face shield, come alongs,

At 1:17 all wall mounted items with contents, boxes with contents,

1:20 table with contents, contents under table, welder with cart,

1:22 power chop saw

1:23 hose reel with contents

1:25 table with contents, eyewash station signs

1:28 table shelving with contents

1:30 heater

1:35 forklift, wall mounted items with contents, straps, belts, hoses, wall mounted cabinets with contents, wall hung wrenches

1:39 heater

1:41 work bench with contents, tool box with contents, wall mounted items with contents

1:42 racking with contents, shelving with contents, broom

1:43 shelving with contents

1:45 stereo

1:53 wall mounted racking with contents, counter with contents, tools hung on wall, blue cabinet with contents

1:55 contents under table, floor jack

1:58 rack with reels and contents, fuel can, contents on floor, rake


20181007-10562

Mixing room

Cabinet with contents

At 4 seconds, trash can

At 5 seconds, wall mounted dispensers with contents and wall mounted containers with contents, posted sheets hung on wall, paint suit

At 6 seconds, wall mounted racking with contents, paint guns, posted literature

Exhibit 1 - Page 53 of 85

At 9 seconds, table with contents, lower paint color cans and shelf all contents,

At 11 seconds, all paint color inventory and shelving

At 12 seconds, all contents, shelf with contents

At 18 seconds white board

At 21 seconds gun cleaner and recycler

At 26 seconds paint shaker

At 40 seconds wall mounted binder with sds sheets, yellow wall mounted rack all contents, binders


20181007-10591

Cage inventory area

Pallet racking with contents, boxes with contents
At 1 second racking with contents

At 3 seconds, chair, containers with contents,

At 5 seconds shelving with contents white board, contents on floor

At 21 seconds desk with contents, rolling cart with contents, shelving with contents

At 26 through 49 seconds shelving with contents, bins with contents, contents on floor

At 49 seconds through 1:03 shelving with contents, boxes with contents, contents on the floor, all contents

At 1:06 through 1:27 all shelving with contents, all contents on the floor, contents on the cart and the cart,

At 1:27 through 2:06 book shelfs with contents, stickers, graphics, containers with contents, bins with contents, vinyl graphics and rolls

2:07 through 2:24 shelving with contents, contents on floor, boxes with contents, wood rack with contents on shelf, steering wheels

2:25 wood shelves/cubbies with contents,

2:27 through 2:36 shelves with contents, wood cubbies/rack with contents, contents on floor

2:37 wood cubbies with contents, contents on the floor, hydraulic steering lines,

2:45 through 3:07 shelving with contents, mercury products, wiring,

3:08 wood cubbies with contents, props, chemicals, doors, shelving with contents

20181007-11025

Continued inventory, pallet racking with contents, bins with contents,

At 8 seconds through 45 seconds shelving with contents, contents on the floor,


50seconds water bottle rack and water bottles,

Shelving with contents, cabinets with contents,

At 53 seconds, contents on top of cabinets

At 56 seconds wall mounted yellow binder rack and binders, contents on floor

1:17 cabinet with contents, safety equipment,

1:34 gray cabinet with tools

1:41 brown cabinet with contents, filters and masks per Brian and Phil Cam

2:04 grinder


20181007-1191

Upholstery area

Racking with seats and contents, foam, boards, patterns,

At 6 seconds, shelving with contents, seats, seat parts, foam, tools,

At 9 seconds table with contents, finished seats, contents on floor

At 11 seconds, work table with contents, hose, book cases with contents, roll of inventory, boxes with contents,

At 15 seconds, steamer

26 seconds sds rack and contents, binder and sheets, rack with material on it, book case with contents, stereo, peg board with contents, patterns, templates, designs,

31 seconds, sewing machine, work table, thread, inventory, clock wall mounted items, peg board with contents,

33 seconds, shelving and table with contents, roll inventory,

35 seconds, seats,

38 seconds, continued inventory on table shelves

41 seconds, heater

Exhibit 1 - Page 55 of 85

Exhibit A
Page 88 of 118

9

46 seconds continued rolled inventory, sewing machine, contents

57 seconds, seat parts and inventory, contents

59 seconds shelving with contents, wall mounted items with contents,

1:15 shelving with seats and contents, contents on floor,


20181007-11242


Inventory continued

Pallet racking with contents

At 28 seconds next set of shelving with contents

1:31 computers


040197/00001/9464608v1

Appendix C to Schedule 1.1(a)

## 2017 Personal Property Owners Report

14-Dec-2016

**Account ID** 20330646

**Business Class** BOAT BUILDER

RIVER HAWK BOATS
AMERIFLEX ENGINEERING LLC
C/O PHILLIP A CAM PRES
1385 ANTELOPE RD
WHITE CITY, OR 97503-1648

**Process Code** FORCE

This is a list of furniture, fixtures, and equipment that has been reported to this office for the above account. Please note any additions and or deletions to the list in the appropriate space provided at the end of this report. If additional space is needed, make an attachment.

Submit this form, and attachments along with the signed 2017 Personal Property Return. Keep a copy for your records.

**Location** 1385 ANTELOPE RD; WHITE CITY, OR 97503    **Tax ID** 20330646    **Code** 0631

### Schedule 1: Leased or Rented Personal Property

| Item # | Lease # | Description | Tax Payer | Agreement Date | Model Year | Purch Year | Qty | Original Cost | Remarks |
|---|---|---|---|---|---|---|---|---|---|
| Lessor Acct | 20281048 | GRAYHAWK LEASING LLC | | | | | | | |
| 352-351 | | VENDING MACHINE | Own | | | 2012 | 1 | 393 | |

### Schedule 2: Non-Inventory Supplies

| General Office | Maintenance | Operating | Spare Parts | Other Non-Inventory |
|---|---|---|---|---|
| 500 | 100 | 500 | 0 | 0 |

### Schedule 5: Other Taxable Personal Property

| Item # | Description | Manufactuer | Model Year | Purch Year | Qty | Cost Each | Purchase Price | Remarks |
|---|---|---|---|---|---|---|---|---|
| 1 | WELDER | | | 2006 | 1 | | | |
| 2 | MISC GRINDERS | | | 2006 | 1 | | | |
| 3 | SHEAR & BRAKE | | | 2006 | 1 | | | |
| 4 | LASER LEVEL | | | 2006 | 1 | | | |
| 6 | TEMPLATES | | | 2006 | 1 | | | |
| 7 | PAINT SHOP TOOLS | | | 2006 | 1 | | | |
| 8 | PRESSURE CUP | | | 2006 | 1 | | | |
| 9 | HARNESS (MERC MARINE) | | | 2006 | 1 | | | |
| 11 | DRILL FIXTURE KIT | | | 2006 | 1 | | | |
| 12 | 3 TON FLOOR JACK (MFD | | | 2006 | 1 | | | |
| 13 | 7" ANGLE POLISHER | | | 2006 | 1 | | | |
| 14 | 2 TON FLOOR JACK | | | 2006 | 1 | | | |
| 15 | COPIER | | | 2006 | 1 | | | |
| 17 | OFFICE FURNITURE | | | 2006 | 1 | | | |
| 18 | LOWE'S (MISC SMALL TOOLS) | | | 2006 | 1 | | | |
| 19 | BIG "R" (MISC SMALL TOOLS) | | | 2006 | 1 | | | |
| 20 | FOSS MFG (TOOLS) | | | 2006 | 1 | | | |
| 22 | EQUIP FROM RH | | | 2006 | 1 | | | |
| 23 | 25' GUN (INDUSTRIAL | | | 2006 | 1 | | | |
| 24 | MISC CLAMPS | EST VALUE | | 2006 | 1 | | | |
| 25 | CHOP SAW | EST VALUE | | 2006 | 1 | | | |
| 26 | BAND SAWS | EST VALUE | | 2006 | 1 | | | |
| 27 | METAL SAW | EST VALUE | | 2006 | 1 | | | |
| 28 | BOAT JIGS | EST VALUE | | 2006 | 1 | | | |
| 29 | FORK LIFT | EST VALUE | | 2006 | 1 | | | |
| 30 | AIR COMPRESSOR | EST VALUE | | 2006 | 1 | | | |
| 31 | SKILL SAWS | EST VALUE | | 2006 | 1 | | | |
| 32 | JIG SAWS | EST VALUE | | 2006 | 1 | | | |
| 33 | AIR DRILL | EST VALUE | | 2006 | 1 | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 34 | IMPACT GUN | EST VALUE | | 2006 | 1 | | | |
| 35 | BOTTLE JACKS | EST VALUE | | 2006 | 1 | | | |
| 36 | HEAT GUNS | EST VALUE | | 2006 | 1 | | | |
| 37 | AIR STAPLER | EST VALUE | | 2006 | 1 | | | |
| 38 | AIR POLISHER | EST VALUE | | 2006 | 1 | | | |
| 39 | HAND SANDERS | EST VALUE | | 2006 | 1 | | | |
| 40 | ROUTER | EST VALUE | | 2006 | 1 | | | |
| 41 | SAND BLASTING GUNS | EST VALUE | | 2006 | 1 | | | |
| 42 | BATTERY CHARGERS | EST VALUE | | 2006 | 1 | | | |
| 43 | JACK STANDS | EST VALUE | | 2006 | 1 | | | |
| 44 | RIVET GUNS | EST VALUE | | 2006 | 1 | | | |
| 45 | BENCH VISES | EST VALUE | | 2006 | 1 | | | |
| 46 | WELDING HOOD | EST VALUE | | 2006 | 1 | | | |
| 47 | PIPE BENDER | EST VALUE | | 2006 | 1 | | | |
| 48 | SERIAL # STAMP SET | EST VALUE | | 2006 | 1 | | | |
| 49 | BUSINESS SIGN | EST VALUE | | 2006 | 1 | | | |
| 50 | PHONE EQUIPMENT | EST VALUE | | 2006 | 1 | | | |
| 51 | FIRE EXTINGUISHER | EST VALUE | | 2006 | 1 | | | |
| 52 | FIRST AID KIT | EST VALUE | | 2006 | 1 | | | |
| 54 | TIME CLOCK-COMPUMATIC | | 2010 | 2010 | 1 | | 250 | |
| 55 | D/A SANDER-MEDFORD | | 2010 | 2010 | 1 | | 67 | |
| 56 | POWER PLANER-HUDSON | | | 2010 | 1 | | 85 | |
| 57 | SEARS SHOP VAC | | 2010 | 2010 | 1 | | 103 | |
| 58 | CAMERA     NIKON S/N | | 2011 | 2011 | 1 | 780 | 780 | |
| 59 | 2  SKILL SAWS   SKILL 77 | | 2011 | 2011 | 2 | 155 | 310 | |
| 60 | GRINDER   MILWAUKEE | | 2011 | 2011 | 1 | 189 | 189 | |
| 61 | PRINTER | HP LASERJET | 2012 | 2012 | 1 | 312 | 312 | CNH 8CD WR 55 |
| 62 | TABLE ROUND BLACK | W — GLASS TOP | | 2012 | 1 | 60 | 60 | USED |
| 63 | LOBBY CHAIRS | 3 BURGANDY | | 2012 | 3 | 10 | 30 | USED  EACH $ 10. |
| 64 | TALBE — CHAIRS (7) | CONFERENCE | | 2012 | 1 | 150 | 150 | USED |
| 65 | TABLE - 4 PRINT CHAIRS | ROUND | | 2012 | 1 | 50 | 50 | USED |
| 66 | FILE CABINETS | 3  BLACK | | 2012 | 3 | 73 | 220 | USED  EACH $ |
| 67 | OFFICE FURNITURE | 2   DESKS — BROWN | | 2012 | 2 | 113 | 225 | USED  EACH $ |
| 68 | OFFICE FURNUITURE | CREDENZA W-HUTCH | | 2012 | 1 | 115 | 115 | USED |
| 70 | GRINDER MW6146-30 | | 2013 | 2013 | 2 | 114 | 228 | |
| 71 | 1TB WD MY PASSPORT | | 2013 | 2013 | 1 | 90 | 90 | |
| 72 | 14' DRY CUT SAW MW6190-20 | | 2013 | 2013 | 1 | 495 | 495 | |
| 73 | MRH TRIPLE HEATER MH45T | | 2013 | 2013 | 1 | 130 | 130 | |
| 75 | COMPUTER | H P  PAVILLION | | 2014 | 1 | 357 | 357 | |
| 76 | COMPUTER - SLIMLINE | H P  PAVILLION | | 2014 | 1 | 500 | 500 | |
| 77 | LAPTOP | H P  17 " | | 2014 | 1 | 480 | 480 | |
| 78 | ALL - IN- ONE  PRINTED | H P | | 2014 | 1 | 200 | 200 | |

Exhibit 1 - Page 58 of 85

Exhibit A
Page 91 of 118

Account ID  20330646

4

PAGES REMOVED PURSUANT TO
NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

If you would like access to these pages,
please contact Buyer's counsel at:

Timothy J. Conway
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
tim.conway@tonkon.com
(503) 802-2027

Buyer's counsel will coordinate with and get approval from
Debtor's counsel prior to providing the removed pages.

## Schedule 1.1(b)—Inventory

All raw materials, supplies, finished goods, metal scrap, parts inventory, prototype inventory, work in progress, boat stickers/vinyl, engines, motors, foam, and other inventory, including without limitation those identified on attached AMRFLX000001, 000002, 002312, 002313, 002323, 002326, 003037, 003038, and 003043-003048, and as set forth in the Photo Reference Sheet and Video Summary.

Exhibit 1 - Page 60 of 85

040197/00001/9438588v2

PAGES REMOVED PURSUANT TO
NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

If you would like access to these pages,
please contact Buyer's counsel at:

Timothy J. Conway
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
tim.conway@tonkon.com
(503) 802-2027

Buyer's counsel will coordinate with and get approval from
Debtor's counsel prior to providing the removed pages.

Exhibit 1 - Page 61 of 85

Exhibit A
Page 94 of 118

## Schedule 1.1(c)—Assumed Contracts and Leases

1. Consistent with the Creditor Plan, to the extent contracts or leases are not identified on Schedule 5.5, Buyer shall have 30 days after receipt of such contract or lease to determine if it shall be assumed and assigned or rejected.

2. Other assumed Contracts:

| Counterparty | Agreement | Date | AMRFLX Document Range | Buyout Exercise Upon Closing |
|---|---|---|---|---|
| Northpoint Commercial Finance LLC | Repurchase Agreement | 12/10/15 (and Program Letter dated 12/11/15) | 2701–2714 | N/A |
| Wells Fargo Bank, as successor to GE Commercial Distribution Finance Corporation and GE Commercial Distribution Finance Canada | Inventory Financing Agreement | 06/28/11 (and Vendor Agreements dated 09/29/08 and 01/12/12) | 2715–2731 and Exhibit 1 to Docket No. 62 in Bankruptcy Case | N/A |
| Marine One Sales and Service Ltd | Dealer Agreement | 11/13/14 | 3535–3551 | N/A |
| 4 Seasons Marine | Dealer Agreement | 07/05/17 | 3836–3851 | N/A |
| A Small Fishing Boat | Dealer Agreement | 03/23/17 | 3852–3866 | N/A |
| Alpine Marine | Dealer Agreement | 03/05/18 | 3867–3882 | N/A |
| American Marine & RV | Dealer Agreement | 01/13/17 | 3883–3897 | N/A |
| American Marine &RV | Dealer Agreement | 01/13/17 | 3898–3912 | N/A |
| Captains Village Marine | Dealer Agreement | 03/06/18 | 3913–3928 | N/A |

Exhibit 1 - Page 62 of 85

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 5

| Counterparty | Agreement | Date | AMRFLX Document Range | Buyout Exercise Upon Closing |
|---|---|---|---|---|
| Dewey's Cook Inlet | Dealer Agreement | 11/30/14 | 3929–3944 | N/A |
| Inlet Marine | Dealer Agreement | 03/26/18 | 3945–3960 | N/A |
| M&P Mercury Sales Ltd. | Dealer Agreement | 06/14/16 | 3961–3975 | N/A |
| Maxxum Boats LLC, dba Maxxum Marine | Dealer Agreement | 10/03/16 | 3977–3991 | N/A |
| Mel's Marine | Dealer Agreement | 10/08/14 | 3992–4007 | N/A |
| Pacific Boatland | Dealer Agreement | 03/26/15 | 4008–4024 | N/A |
| Parker Marine | Dealer Agreement | 11/14/14 | 4025–4041 | N/A |
| WFO Sports LTD, dba Railside Sports & Marine | Dealer Agreement | 12/01/17 | 4042–4055 | N/A |
| Sutter Marine | Dealer Agreement | 12/15/17 | 4056–4070 | N/A |
| The Elephant Boys | Dealer Agreement | 07/30/15 | 4071–4087 | N/A |
| Y Marina | Dealer Agreement | 07/07/16 | 4088–4102 | N/A |
| Y Marina | Dealer Agreement | 07/07/15 | 4103–4118 | N/A |
| CamCo LLC | Consumer Car Loan Agreement | 01/08/16 | 0416–0417 | N/A |
| CamCo, LLC | Equipment Rental Agreement (Miller 350PA Welder) | 11/8/16 (and letter amendment dated Nov. 30, 2016) | 2674–2680 | Yes: $1,200 |
| CamCo, LLC | Equipment Rental Agreement (Miller Dynasty 350 Tig Welder) | 11/8/16 | 2666–2673 | Yes: $1,500 |

Exhibit 1 - Page 63 of 85

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 6

Case 17-60837-tmr11   Doc 529   Filed 12/14/18

| Counterparty | Agreement | Date | AMRFLX Document Range | Buyout Exercise Upon Closing |
|---|---|---|---|---|
| CamCo, LLC | Equipment Rental Agreement (Sullivan-Paletek 50HP Compressor and Air Dryer) | 11/8/16 (and amendment dated 05/21/17) | 2681–2689; 3565 | No |
| CamCo, LLC | Equipment Rental Agreement (Hotsy natural gas pressure washer) | 1/1/17 (and letter amendment dated 1/2517) | 2660–2665 | No |
| CamCo, LLC | Equipment Rental Agreement (CNC router table) | 2/5/17 | 2690–2693 | No |
| Northwest Marine Trade Association | Application & Contract for Exhibit Space (72nd Annual Seattle Boat Show) | 8/23/18 | 4149 | N/A |
| Neil Rogers, dba NR Outdoors | Independent Contractor Agreement | 02/01/18 | Four pages; produced without Bates stamps | N/A |
| Ian Cummer | Manufacturer's Representative Agreement | 07/21/17 | Four pages; produced without Bates stamps | N/A |

Exhibit 1 - Page 64 of 85

0401970001/9438588v2

Exhibit A
Page 97 of 118

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 7

Case 17-60837-tmr11   Doc 472   Filed 11/3/18
Case 17-60837-tmr11   Doc 529   Filed 12/14/18

## Schedule 1.1(d)—Leasehold Improvements

For avoidance of doubt, the following items are included in the Assets being purchased:

1. Press Brakes hard wired to building
2. Shears hard wired to building
3. Paint booths (2) and mixing room hard wired to building; ducting going through to the outside of the building
4. Welders connected to Gas system through installed piping. These pipes are connected to Airgas large volume tank.
5. Hanging Infared Heaters on walls and ceiling.
6. Shelving racking and countertops.
7. Hotsey pressure washer (leased)
8. Router hard wired to building (leased)
9. Lighting mounted to wall for rigging
10. Jib Cranes
11. Racking mounted to floor
12. Electrical Panels and switches for associated equipment
13. Vacuum system for router table
14. Plasma Table hard wired to building
15. Piping connected to air gas large volume tank
16. Fans
17. Fire Extinguishers
18. Wall mounted metal storage boxes and units
19. Wall boards, White Boards Binder shelves and posting boards
20. Non potable water tank
21. Pallet Racking
22. Air Compressors (owned and leased)
23. Signs
24. Document holders wall mounted
25. Cabinets wall mounted
26. Wall mounted spill kits
27. Wall mounted first aid kits
28. Wall mounted plasma unit and accessories for plasma table
29. Ducting for air for paint booths and mixing room
30. Switch panels
31. Hoists
32. Clocks
33. Light support for press brake
34. Regulators for air and or gas
35. Heaters for fab area wall and ceiling mounted
36. Curtains and tracks in wash area
37. Gas pressure regulators

Exhibit 1 - Page 65 of 85

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 8

38. Reclamation tanks and equipment for acid washing
39. Foam Tanks and equipment
40. Paint booth and mixing rooms ansul system
41. Hose reels
42. Connex boxes for trailers and metal roof over them
43. SDS Racks and binders

Exhibit 1 - Page 66 of 85

040197/00001/9438588v2

## Schedule 1.1(e)—Purchase Orders

See attached (AMRFLX003830) for pending boat sales. See attached Appendix D for pending orders for supplies. For avoidance of doubt, any items delivered to Debtor after Closing will be promptly turned over to Buyer.

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 10

PAGES REMOVED PURSUANT TO
NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

If you would like access to these pages,
please contact Buyer's counsel at:

Timothy J. Conway
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
tim.conway@tonkon.com
(503) 802-2027

Buyer's counsel will coordinate with and get approval from
Debtor's counsel prior to providing the removed pages.

SCHEDULE 1.1(g) – INTELLECTUAL PROPERTY

REMOVED PURSUANT TO
NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

If you would like access to these pages,
please contact Buyer's counsel at:

Timothy J. Conway
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
tim.conway@tonkon.com
(503) 802-2027

Buyer's counsel will coordinate with and get approval from
Debtor's counsel prior to providing the removed pages.

## Schedule 1.1(i)—Accounts Receivable

See attached Appendix E as of November 8, 2018.

Exhibit 1 - Page 70 of 85

PAGES REMOVED PURSUANT TO
NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

If you would like access to these pages,
please contact Buyer's counsel at:

Timothy J. Conway
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
tim.conway@tonkon.com
(503) 802-2027

Buyer's counsel will coordinate with and get approval from
Debtor's counsel prior to providing the removed pages.

## Schedule 1.1(k)—Retained Claims

Subject to Section 1.4 of the Agreement, the following claims will be retained by the Reorganized Debtor:

1. Objections to Claims of Professionals
2. Objections to Claims of Pacific Diamond & Precious Metals, Inc. (PDPM), Cajon, LLC (Cajon), and CamCo, LLC (CamCo).
3. Breach of contract, conversion, breach of fiduciary duty claims against PDPM, Philip Cam, Cajon, Brian Cam, and CamCo, including but not limited to a claim based on the purchase of 1385 Antelope Road, White City, Oregon property by CamCo.
4. Equitable subordination and/or recharacterization as capital claims against PDPM and CamCo.
5. Management malfeasance, embezzlement, breach of fiduciary duty claims against Philip Cam and Brian Cam.
6. Any and all objections to claims.
7. Claims for recovery of unauthorized post-petition transfers.
8. Claims based on ownership by the Debtor of leased equipment.
9. Avoidance claims set forth in Chapter 5 of the Bankruptcy Code.

Exhibit 1 - Page 72 of 85

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 15

040197/00001/9438588v2
Exhibit A
Page 105 of 118

Case 17-60837-tmr11   Doc 472   Filed 11/13/18
Case 17-60837-tmr11   Doc 529   Filed 12/14/18

## Schedule 1.2(b)—Pending Customer Orders

See attached (AMRFLX003830) and still awaiting signed dealer order forms/purchase orders.

Exhibit 1 - Page 73 of 85

040197/00001/9438588v2

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 16

Exhibit A
Page 106 of 118    Case 17-60837-tmr11    Doc 472    Filed 11/13/18
Case 17-60837-tmr11    Doc 529    Filed 12/14/18

PAGES REMOVED PURSUANT TO
NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

If you would like access to these pages,
please contact Buyer's counsel at:

Timothy J. Conway
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
tim.conway@tonkon.com
(503) 802-2027

Buyer's counsel will coordinate with and get approval from
Debtor's counsel prior to providing the removed pages.

## Schedule 1.2(c)—Pending Inventory Orders

[Debtor has not yet provided complete information.]

Exhibit 1 - Page 75 of 85

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 17

## Schedule 1.2(d)—Dealer Rebates

None.

Exhibit 1 - Page 76 of 85

## Schedule 1.2(f)—Obligations to Employees

[Debtor has not yet provided this information.]

Exhibit 1 - Page 77 of 85

040197/00001/9438588v2

## Schedule 5.5—List of All Contracts and Leases

All Debtor Contracts are included in the AMRFLX document ranges listed below. There are no written or unwritten amendments, waivers, or other modifications to such Contracts unless expressly identified below.

| Counterparty | Agreement | Date | AMRFLX Document Range |
|---|---|---|---|
| AirGas USA, LLC | Product Supply Agreement/Bulk Product Sale Agreement | 09/03/14 | 2619–2622 |
| Barrett Business Services, Inc. | Agreement for Client Services | Undated | 2623–2645 |
| BRP US Inc. | Program Year 2017 BRP US Inc. OEM Boat Builder Agreement | 07/01/16 | 2646–2659 |
| Hunter Communications | Voice Services Agreement | 11/28/16 | 2694–2700 |
| Wesco Group, Incorporated | Investment Agreement | 10/05/16 | 2732–2736 |
| Northpoint Commercial Finance LLC | Repurchase Agreement | 12/10/15 (and Program Letter dated 12/11/15) | 2701–2714 |
| Wells Fargo Bank, as successor to GE Commercial Distribution Finance Corporation and GE Commercial Distribution Finance Canada | Inventory Financing Agreement | 06/28/11 (and Vendor Agreements dated 09/29/08 and 01/12/12) | 2715–2731 and Exhibit 1 to Docket No. 62 in Bankruptcy Case |
| Phillip Cam | Unwritten lease (2015 Dodge Ram 3500) | Approx. 06/03/15 | None |
| CamCo LLC | Consumer Car Loan Agreement | 01/08/16 | 0416–0417 |

| Counterparty | Agreement | Date | AMRFLX Document Range |
|---|---|---|---|
| Commonwealth Advertising | Invoice, Photo of Boat, RH Aluminum Boats Country Rock Riverhawk Giveaway and Sales Order | 06/30/17, undated, 08/03/17 | 462,463,466–468 |
| Marine One Sales and Service Ltd | Dealer Agreement | 11/13/14 | 3535–3551 |
| 4 Seasons Marine | Dealer Agreement | 07/05/17 | 3836–3851 |
| A Small Fishing Boat | Dealer Agreement | 03/23/17 | 3852–3866 |
| Alpine Marine | Dealer Agreement | 03/05/18 | 3867–3882 |
| American Marine & RV | Dealer Agreement | 01/13/17 | 3883–3897 |
| American Marine &RV | Dealer Agreement | 01/13/17 | 3898–3912 |
| Captains Village Marine | Dealer Agreement | 03/06/18 | 3913–3928 |
| Dewey's Cook Inlet | Dealer Agreement | 11/30/14 | 3929–3944 |
| Inlet Marine | Dealer Agreement | 03/26/18 | 3945–3960 |
| M&P Mercury Sales Ltd. | Dealer Agreement | 06/14/16 | 3961–3975 |
| Maxxum Boats LLC, dba Maxxum Marine | Dealer Agreement | 10/03/16 | 3977–3991 |
| Mel's Marine | Dealer Agreement | 10/08/14 | 3992–4007 |
| Pacific Boatland | Dealer Agreement | 03/26/15 | 4008–4024 |
| Parker Marine | Dealer Agreement | 11/14/14 | 4025–4041 |
| WFO Sports LTD, dba Railside Sports & Marine | Dealer Agreement | 12/01/17 | 4042–4055 |
| Sutter Marine | Dealer Agreement | 12/15/17 | 4056–4070 |
| The Elephant Boys | Dealer Agreement | 07/30/15 | 4071–4087 |
| Y Marina | Dealer Agreement | 07/07/16 | 4088–4102 |
| Y Marina | Dealer Agreement | 07/07/15 | 4103–4118 |
| CamCo, LLC | Equipment Rental Agreement (Miller 350PA Welder) | 11/8/16 (and letter amendment dated Nov. 30, 2016) | 2674–2680 |
| CamCo, LLC | Equipment Rental Agreement (Miller Dynasty 350 Tig Welder) | 11/8/16 | 2666–2673 |

Exhibit 1 - Page 79 of 85

| Counterparty | Agreement | Date | AMRFLX Document Range |
|---|---|---|---|
| CamCo, LLC | Equipment Rental Agreement (Sullivan-Paletek 50HP Compressor and Air Dryer) | 11/8/16 (and amendment dated 05/21/17) | 2681–2689; 3565 |
| CamCo, LLC | Equipment Rental Agreement (Hotsy natural gas pressure washer) | 1/1/17 (and letter amendment dated 1/2517) | 2660–2665 |
| CamCo, LLC | Equipment Rental Agreement (CNC router table) | 2/5/17 | 2690–2693 |
| Northwest Marine Trade Association | Application & Contract for Exhibit Space (72nd Annual Seattle Boat Show) | 8/23/18 | 4149 |
| Neil Rogers, dba NR Outdoors | Independent Contractor Agreement | 02/01/18 | Four pages; produced without Bates stamps |
| Ian Cummer | Manufacturer's Representative Agreement | 07/21/17 | Four pages; produced without Bates stamps |

## Schedule 5.6—Litigation

None, other than:

- Dewhurst dispute referenced in AMRFLX003395–003407
- Cordukes dispute summarized in AMRFLX004119–004136

Exhibit 1 - Page 81 of 85

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 23

## Schedule 5.8—Boat Sale Log

See attached AMRFLX003793-003829.

Exhibit 1 - Page 82 of 85

040197/00001/9438588v2

PAGES REMOVED PURSUANT TO
NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

If you would like access to these pages,
please contact Buyer's counsel at:

Timothy J. Conway
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
tim.conway@tonkon.com
(503) 802-2027

Buyer's counsel will coordinate with and get approval from
Debtor's counsel prior to providing the removed pages.

## Schedule 5.11(c)—Employee Roster

[Debtor has not yet provided this information.]

Exhibit 1 - Page 84 of 85

Ameriflex Engineering
Agreement for Sale and Purchase of Business Assets
Schedules—Page 25

SCHEDULE 5.12(b) – TANGIBLE PERSONAL PROPERTY

REMOVED PURSUANT TO
NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

If you would like access to these pages,
please contact Buyer's counsel at:

Timothy J. Conway
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
tim.conway@tonkon.com
(503) 802-2027

Buyer's counsel will coordinate with and get approval from
Debtor's counsel prior to providing the removed pages.